UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| JOHN ANTHONY CASTRO | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | C.A. No. 1:23-cv-00405-JJM-PAS |
| | : | |
| SECRETARY OF STATE GREGG AMORE; | : | |
| And DONALD JOHN TRUMP | : | |
| Defendants | : | |

**DEFENDANT DONALD JOHN TRUMP'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS MOTION TO DISMISS
PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

**I.    INTRODUCTION**

Plaintiff does not have standing. A sister court in this circuit, the New Hampshire District Court, recently found that this same Plaintiff does not have standing to bring these same claims. *See Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023). Moreover, outside of two conclusory sentences,[1] Plaintiff advances *no* argument in his "Verified" Response to President Trump's Motion ("Response") to rebut Defendant's arguments regarding standing. This effectively waives the argument and is woefully insufficient to meet Plaintiff's burden to show this Court has subject matter jurisdiction.

The remainder of Plaintiff's Response is nothing more than a loose collection of non-sequiturs. Plaintiff's Response seeks to manufacture a timing-based distinction to avoid political question concerns. But this distinction appears nowhere in and defies the clear logic of the cited caselaw.

---

[1] Which read: "Plaintiff John Anthony Castro is a Republican Primary Write-In Candidate in the State of Rhode Island, which does not require any filing.[footnote omitted] As such, Plaintiff has standing to bring this civil action." ECF No. 9, Response at 9.

In addition, Plaintiff seeks to conflate questions of who has standing with questions of whether Section 3 provides a self-executing cause of action. This is an irrelevant digression.

While indulging in drawn out non sequiturs, Plaintiff completely ignores the substance of several additional dispositive arguments, effectively conceding them for purposes of evaluating a motion to dismiss. For example, Plaintiff also does not rebut that Section Three does not apply to President Trump or his conduct as alleged in the Complaint.

President Trump therefore requests that the Complaint be dismissed for lack of jurisdiction and/or for failure to state a claim under Fed. R. Civ. P. 12(b).

## II.    LEGAL ARGUMENT

### A.    PLAINTIFF LACKS STANDING

Plaintiff's Response does not even attempt to rebut the Motion's standing argument, effectively conceding this dispositive argument for purposes of the Motion. Perhaps this is because three federal courts have already held in cases brought by this very same Plaintiff that his allegations are insufficient to confer Article III standing—including one that ruled within the past week. *See Castro v. Trump*, Case No. 23-80015-CIV-CANNON (S.D. Fl. June 26, 2023), cert. denied, Case No. 23-117, __ S. Ct. __, 2023 WL 6379034 (Oct. 2, 2023); *Castro v. FEC*, Civil Action No. 22-2176 (RC), 2022 WL 17976630 (D.D.C. Dec. 6, 2022); *Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023). Additionally, four other federal courts have rejected similar actions brought by individual voters based on a lack of standing. *See Caplan v. Trump*, Case # 23-cv-61628-ROSENBERG (S.D. Fla. Aug. 31, 2023); *Schaefer v. Trump et al.*, Case No. 23-cv-1451 JLS (BLM), 2023 WL 6798507 (S.D. Cal. Oct. 13, 2023) (CM/ECF No. 6); *Sladek v. Trump*, Case No. 1:23-cv-02089-LTB-SBP (D. Colo. Oct. 18, 2023) (CM/ECF No. 12); and *Clark v. Weber*, Case No. 2:23-cv-07489-DOC-DFM (C.D. Cal. Oct. 20, 2023) (CM/ECF No. 35).

Moreover, what little information Plaintiff does provide confirms that his complaint is nothing more than a generalized grievance. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992) ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Plaintiff notes "Rhode Island is 1 of only 8 states that do not require write-in candidates to formally file paperwork with the state's election authorities." ECF No. 9, Response at 9 n.17. This effectively means *any* person in the country can be considered a "write-in candidate," and that a "write-in candidate" is no different than every other person in the country.

Plaintiff fails to allege facts sufficient to establish any of the required showings for Article III standing. The Complaint's highly attenuated claim of injury—that President Trump's presence on the 2024 ballot deprives Plaintiff of the political support he needs to win the Republican Party's nomination for the next President of the United States—strains way too far. That a vote *may* change in the future is insufficient to establish an injury-in-fact for purposes of standing. *See Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 11 (D.N.H. Oct. 27, 2023) ("[Castro's] claimed injury is also speculative, as it depends on what voters and contributors—independent, third parties—<u>may</u> do if Trump's name is not listed on the New Hampshire primary ballot. Castro provides no evidence that any Trump supporter would support Castro under that circumstance. . . . An injury based on speculation about the decisions of independent actors does not confer standing."). Plaintiff lacks standing, therefore this Court lacks subject matter jurisdiction over his claim.

**B.    THE COMPLAINT PRESENTS A NONJUSTICIABLE POLITICAL QUESTION, WITH PLAINTIFF'S ATTEMPTED DISTINCTIONS BEING NON-SEQUITURS**

"[T]he vast weight of authority has held that the Constitution commits to Congress and the electors the responsibility of determining matters of presidential candidates' qualifications." *Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 10-11 (D.N.H. Oct. 27, 2023) (footnote omitted). These courts were not fooled, as Plaintiff implies, by a "play on semantics" or "sanctionable frivolity" regarding the political question doctrine. *See* ECF No. 9 at 2. Rather, these decisions acknowledge the clear constitutional commitment of a candidate's qualifications to Congress, not the federal courts. President Trump's Motion identifies the constitutional underpinnings committing the issue to Congress and cites assorted caselaw recognizing that this issue mandates a textbook application of the political question doctrine.

In his Response, Plaintiff identifies no authority whatsoever supporting the exercise of subject matter jurisdiction here. Instead, Plaintiff offers a series of distinctions to the cases cited in President Trump's Motion. These distinctions are ultimately meaningless.

First, Plaintiff asserts that this issue has not been committed to a political branch because "the Electoral College Act no longer allow[s] for objections based on qualifications." ECF No. 9 at 7. But this conflates the *Constitution's commitment of the issue to Congress* (which triggers the political question doctrine) with *how Congress chooses to act on it* (which is the political question itself). *See generally Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 15 n.27 (D.N.H. Oct. 27, 2023) ("Castro is correct that the Electoral Count Act was revised in 2022 . . . but, to the extent that he is arguing that this amendment limited the grounds for objections, that does not appear to be the case.")*.*

Moreover, Plaintiff ignores the other constitutional provisions that commit the issue of qualification to Congress. For example, Section 3 of the Fourteenth Amendment gives Congress

4

authority to remove any disability under that section. U.S. Const. amend. XIV, § 3. The Twentieth Amendment contemplates procedures and *congressional* action in the event that an unqualified President-elect takes office. *See* U.S. Const. amend. XX, § 3. The Twenty-Fifth Amendment provides, "*Congress shall decide the issue*" of Presidential incapacity. U.S. Const. amend. XXV (emphasis added). And the Constitution gives *Congress* (and Congress alone) the authority to remove the President from office. *See* U.S. Const. art. I, § 2, cl. 5. Congress's amendments to the Electoral College Act do not erase the political question posed here.

Second, Plaintiff emphasizes that the political question doctrine was an alternative, dicta holding in cases brought to disqualify then-candidates Barack Obama and John McCain. *See Kerchner v. Obama*, 669 F. Supp. 2d 477, 483 at n.5 (D.N.J. 2009), *aff'd*, 612 F.3d 204 (3d Cir. 2010); *Berg v. Obama*, 586 F.3d 234 (3d Cir. 2009); *Grinols v. Electoral College*, No. 2:12-cv-02997-MCE-DAD, 2013 WL 2294885, at *5–7 (E.D. Cal. May 23, 2013); *Robinson v. Bowen*, 567 F. Supp. 2d 1144 (N.D. Cal. 2008). "If these conclusions were dicta, it does not necessarily follow that they were wrong." *Fouts v. Maryland Cas. Co.*, 30 F.2d 357, 359 (4th Cir. 1929). The fact that similar lawsuits suffered *multiple* jurisdictional defects—the same defects presented here—does not support Plaintiff's position.

Third and finally, Plaintiff claims that the political question doctrine "applies only after the major political parties hold their conventions and submit their nomination paperwork to the state for placement on the general ballot." ECF No. 9 at 3. There is simply no support for this distinction. Plaintiff claims "Courts have held" that this distinction applies, but he cites to none. *Id.* at 6. None of the political question cases cited above explicitly, or implicitly, tie the application of the doctrine to whether the action is filed before or after party conventions.

Rather, these decisions recognize that a candidate's qualifications for office are committed

to Congress—and Congress alone—without temporal limitation, up to, and even after, the election. *See, e.g.*, *Grinols*, 2013 WL 2294885, at *4 ("[W]hether President Obama may legitimately run for office and serve as President[] is a political question that the Court may not answer"); *Robinson*, 567 F. Supp. 2d. at 1147 ("Judicial review—if any—should occur only after the electoral and Congressional processes have run their course.").

Plaintiff's purported distinctions to the universe of caselaw dedicating candidate qualifications to Congress, rather than the federal courts, are unsupported and unavailing. President Trump, therefore, requests that the Complaint be dismissed with prejudice pursuant to Rule 12(b)(1) under the political question doctrine.

**C.  SECTION THREE OF THE FOURTEENTH AMENDMENT IS NOT SELF-EXECUTING AND PLAINTIFF'S CLAIMS TO THE CONTRARY IS AHISTORICAL**

As set forth in detail in President Trump's Motion, Section Three is not self-executing; it requires an act of Congress to effectuate in federal court. *See* ECF No. 8-1 at 7-10. Were individual plaintiffs, individual secretaries of state, or individual federal courts vested authority to enforce Section Three in the absence of Congressional authorization, a patchwork of 51 state and district election laws would cause an intractable crisis.

Plaintiff's argument in rebuttal is flatly wrong. Plaintiff claims that the "1870 Enforcement Act was created to grant individuals [*i.e.*, law enforcement] that otherwise did not have a direct injury . . . to remove public officials holding office in violation of Section Three." ECF No. 9 at 8. In other words, according to Plaintiff, Section Three was always self-executing and actionable by any aggrieved private party—but Congress enacted the Enforcement Act to give that same authority to district attorneys, too.

This argument conflates questions of who has standing with questions of whether Section 3 provides a private right of action. It is also ahistorical. The Fourteenth Amendment itself provides

that "*Congress* shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5 (emphasis added). One year after the Fourteenth Amendment's ratification, the Chief Justice of the Supreme Court, riding circuit, rejected an attempt to disqualify a sitting judge under Section Three by a petitioner who had recently been sentenced by that judge. *In re Griffin*, 11 F.Cas. 7 (C.C.Va. 1869). The Chief Justice denied the petition, holding that Section Three "clearly requires legislation in order to give effect to it," that it is "beyond reasonable question" that Section Three is "to be made operative . . . by legislation of congress in its ordinary course," and that to allow petitioner to enforce it himself would unleash "manifold evils." *Id*. One year later, Congress enacted the Enforcement Act, which reads, "[I]t shall be the duty of the district attorney of the United States . . . to proceed against a [violator of Section Three] . . . and to prosecute the same to the removal of such person from office."

At this time, there is no implementing legislation that executes Section Three. The original Enforcement Act was codified as 13 Judiciary ch. 3, sec. 563 and later recodified into 28 Judicial Code 41—but in 1948, Congress repealed 28 U.S.C. § 41 in its entirety. *See* Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 993; see also Act of June 25, 1948, ch. 645, § 2383, 62 Stat. 683, 808. More recent efforts to enact a cause of action under Section Three have died in Congress. See H.R. 1405, 117th Cong. 2021.

Plaintiff's revisionism is entitled to no credence. Section Three is not self-executing, and Plaintiff fails to state a plausible claim to the contrary. President Trump, therefore, requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### D.    PLAINTIFF'S CLAIMS ARE NOT RIPE

Plaintiff's Response on this point is devoid of substance. The Motion highlights that ripeness is necessary because courts should not be required to resolve "contingent future events

that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). The Motion explains that Section Three prohibits individuals from holding office. It does not, however, prohibit individuals from inclusion on the ballot, being nominated, or being elected. ECF No. 8-1 at 11-12.

In other words, whether President Trump will hold office is a contingent future event that may not occur at all. Plaintiff's Complaint is therefore not ripe. Plaintiff retorts that this is "split[ting] hairs," and, remarkably, that "[c]ourts need not wait for an injury to happen." ECF No. 9 at 11. Plaintiff next guesses at actions Trump might take in office, which does not inform the issue here in any way. Plaintiff's claims are not ripe.

## E.    PLAINTIFF FAILS TO ADDRESS PRESIDENT TRUMP'S REMAINING BASES FOR DISMISSAL, WHICH EACH REMAIN INDEPENDENTLY DISPOSITIVE

President Trump also moved to dismiss the Complaint because (i) Section Three does not apply to the President of the United States and (ii) there is no plausible allegation that President Trump engaged in any conduct proscribed by Section Three. *See* ECF No. 8-1 at 10-11, 14-26.

The fact that Section Three applies neither to President Trump nor his alleged conduct is well supported by the text and history of Section Three itself. Plaintiff offers no substantive rebuttal to these arguments. His failure to do so constitutes a waiver that permits this Court to dismiss on the "uncontroverted bases asserted." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *see also, e.g., United States v. Dreyer*, 804 F.3d 1266, 1277 (9th Cir. 2015) ("Generally, an appellee waives any argument it fails to raise in its answering brief."); *Jeffrey C. v. Kijakazi*, Case No. 3:22-cv-79-SI, 2023 WL 4760603, at *3 n.2 (D. Or. Jul. 26, 2023) (applying waiver principles to district court pleadings and noting even a "conclusory statement is insufficient to preserve the Commissioner's arguments on appeal.").

These unrebutted arguments doom Plaintiff's case. Even if this Court were to decline to

enforce a waiver due to Plaintiff's *pro se* status (which it should not do),[2] his failure to address these arguments shines a spotlight on his substantive failure to state a claim.

### Section Three does not apply to President Trump

Section Three applies to "officer[s] of the United States" who have "taken an oath . . . to support the Constitution." U.S. Const. amend. XIV, § 3. Both the Constitution itself and judicial interpretations of it distinguish between "officers of the United States" and the President—and the former does not include the latter. *See* ECF No. 8-1 at 16 (citing *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 497–98 (2010); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, n.3 (2020)). And while some officers of the United States take the oath described in Section Three, the President does not. *See id.* at 26–27. Thus, Section Three does not apply to President Trump, and Plaintiff's failure to establish that it does is fatal.

### President Trump's conduct does not implicate Section Three.

Nor does Section Three apply to President Trump's alleged conduct. Section Three proscribes those who "have engaged in insurrection or rebellion against [the United States], or given aid or comfort to the enemies thereof." U.S. Const. amend. XIV, § 3. There is no plausible allegation that President Trump did either of those things. *See* ECF No. 8-1 at pgs. 19-26. Because Plaintiff cannot plausibly allege any conduct violative of Section Three, Plaintiff re-writes Section Three to say what it does not. Plaintiff, in his Response, fails to address any of the several ways

---

[2] Although in the context of litigation Plaintiff seeks to portray himself as a *pro se* plaintiff entitled to special solicitude, in his day-to-day life he depicts himself rather differently—as a practicing lawyer who holds two law degrees and heads an international tax firm. *See* https://www.castroandco.com/staff-profiles/john-anthony-castro-j-d-ll-m/ ("John Anthony Castro is the managing partner of Castro & Co. Dr. Castro earned his Master of Laws (LL.M.) in International Taxation from Georgetown University Law Center in Washington, DC. Dr. Castro also earned a Doctor of Jurisprudence (J.D.) from UNM School of Law.… Dr. Castro is listed on each and every return submitted by Castro & Co. and AiTax as a Third-Party Designee, which authorizes him to practice federal tax law in all 50 states as well as the 68 countries with which the U.S. has income and estate tax treaties.…")).

Lest there be any misunderstanding, the undersigned counsel do not vouch for Plaintiff's status as a lawyer—he does not appear ever to have been admitted to any state bar—but that is how he holds himself out to the public. He should not be allowed to wear one costume in public and a different one when he thinks it advantages him here.

he misreads Section Three. Ignoring both the text, and the meaning, of the provision Plaintiff seeks to enforce here does not give rise to a plausible claim for relief. President Trump, therefore, requests that the Complaint be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.

### III.    <u>CONCLUSION</u>

For all the reasons set forth herein and in the Motion, each of which are independently dispositive of this case, President Trump requests that the Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b).

Respectfully submitted,
Defendant Donald John Trump,
By his Attorney,

***/s/Gregory P. Piccirilli, Esquire #4582***
2 Starline Way #7
Cranston, RI 02921
Telephone No.: (401) 578-3340
Gregory@splawri.com

### CERTIFICATE OF SERVICE

I hereby certify that, on November 2, 2023, I caused the foregoing to be served on parties of record via this Court's Electronic Case Filing system.

*/s/Gregory P. Piccirilli*