DATE FILED: September 6, 2023 1:00 PM
CASE NUMBER: 2023CV32577

| DISTRICT COURT, DENVER, COLORADO<br>1437 Bannock Street, Room 256<br>Denver, CO 80202 | |
|---|---|
| **PETITIONER: Norma Anderson et al.**<br><br><br>**RESPONDENT: Jena Griswold et al.** | ☐ COURT USE ONLY ☐<br><br>**Case No: 23CV32577**<br><br>Courtroom: 259 |
| **ORDER OF REASSIGNMENT** | |

This case is hereby reassigned to Courtroom 209 from Courtroom 466, due to the recusal of the Honorable Judge Mark T. Bailey. Parties are instructed to contact Courtroom 209 for any pending matters.

DATED this 6th day of September, 2023.

BY THE COURT:

_____
Christopher J. Baumann
Chief Judge

**Minute Orders**

**Case Number:** 2023CV032577

**Case Type:** Injunctive Relief

**Case Caption:** Anderson, Norma et al v. Griswold In Her Official Capacity As Col, Jena et al

**Division:** 209

**Judicial Officer:** Sarah Block Wallace

**Court Location:** Denver County - District

Order Date: 09/08/2023

JUDGE SARAH WALLACE ORDER: CASE REMOVED TO US DISTRICT COURT. /DMS

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

DATE FILED: September 12, 2023 3:38 PM
CASE NUMBER: 2023CV32577

I, the undersigned, Clerk of the
United States District Court for the
District of Colorado, do certify that
the foregoing is a true copy of an
original document remaining on file
and record in my office.
WITNESS my hand and SEAL of said
Court this day of *Sep 12, 2023*
JEFFREY P. COLWELL
By   **s/T. Vo, Deputy Clerk**
Deputy

Civil Action No. 23-cv-02291-PAB

NORMA ANDERSON,
MICHELLE PRIOLA,
CLAUDINE CMARADA,
KRISTA KAFER,
KATHI WRIGHT, and
CHRISTOPHER CASTILIAN,

      Petitioners,

v.

JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and
DONALD J. TRUMP,

      Respondents.

---

## ORDER

---

This matter comes before the Court on Petitioners' Unopposed Motion to Remand [Docket No. 15] and Petitioners' Unopposed Motion for Expedited Consideration of Motion to Remand [Docket No. 16].

Petitioners initiated this action in the District Court for Denver County, Colorado, on September 6, 2023 ("state court case"). Docket No. 8; Docket No. 15 at 3; Docket No. 15-1 at 2. Respondent Donald Trump removed the case to this Court on September 7, 2023. Docket No. 1. The notice of removal states that the "Denver District Court docket does not contain a return of service for Jena Griswold, . . . and to undersigned's knowledge the Secretary has not been served." *Id.* at 5, ¶ 14. Mr. Trump attached a state court docket sheet to the notice of removal that did not show

that Jena Griswold, the Colorado Secretary of State, had been served.  Docket No. 1-1.

The notice of removal does not allege that Secretary Griswold consented to removal.

Docket No. 1.

On September 8, 2023, petitioners filed a motion to remand the case to state

court.  Docket No. 15.  The remand motion states that Secretary Griswold was served

on September 6, 2023.  *Id.* at 3.  The motion attaches a state court docket sheet

showing that Secretary Griswold executed a waiver of service, which was filed in the

state court case at 3:42 p.m. on September 6, 2023.  *Id.*; Docket No. 15-1 at 2.  The

notice of removal was filed the next day, on September 7, 2023.  Docket No. 1.  On

September 12, 2023, Secretary Griswold filed a response to petitioners' motion to

remand stating that she "supports the remand to state court."  Docket No. 27 at 1.

Mr. Trump removed the case under 28 U.S.C. § 1441(a).  Docket No. 1 at 1.

Section 1446(b)(2)(A) of Title 28 states that, "[w]hen a civil action is removed solely

under section 1441(a), all defendants who have been properly joined and served must

join in or consent to the removal of the action."  28 U.S.C. § 1446(b)(2)(A).  The Tenth

Circuit has held that "lack of unanimity is a procedural defect clearly established by

statute as precluding removal."  *Harvey v. Ute Indian Tribe of the Uintah & Ouray Rsrv.,*

797 F.3d 800, 805 (10th Cir. 2015) (citing 28 U.S.C. § 1446(b)(2)(A)); *see also Huffman*

*v. Saul Holdings Ltd. P'shp*, 194 F.3d 1072, 1077 (10th Cir. 1999) ("The failure to

comply with the[ ] express statutory requirements for removal can fairly be said to

render the removal 'defective' and justify a remand." (quoting *Snapper, Inc. v. Redan,*

171 F.3d 1249, 1253 (11th Cir. 1999))).

Case No. 1:23-cv-02291-PAB   Document 29   filed 09/12/23   USDC Colorado   pg 3 of 4
Case 1:23-cv-00405-JJM-PAS   Document 13-1   Filed 11/02/23   Page 5 of 282 PageID
#: 242

On September 12, 2023, Mr. Trump filed his response to petitioners' motion to remand, wherein he seeks to "withdraw" his Notice of Removal and indicates that he does not object to a remand of this matter to state court.  Docket No. 28 at 1, 3, ¶¶ 2, 6. In his response, Mr. Trump claims that he did not need Secretary Griswold's consent to remove this matter because she is a nominal party.  *Id*. at 1, ¶ 2.  While it is true that a "federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy," *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980), petitioners' first claim, which is brought against Secretary Griswold, makes it clear that the Secretary is not a nominal party.  The first claim alleges that:

> As part of her duties "[t]o supervise the conduct of primary" and "general . . . elections in this state," [Colo. Rev. Stat.] § 1-1-107(1)(a), the Secretary is "responsible for ensuring the qualifications of candidates for statewide and federal elections," including presidential candidates, *Hassan v. Colorado*, 870 F. Supp. 2d 1192, 1195 (D. Colo. 2012), *aff'd*, 495 F. App'x 947 (10th Cir. 2012) [unpublished] (Gorsuch, J.) (upholding the Secretary's exclusion of a constitutionally ineligible presidential candidate from the ballot)[.]

Docket No. 8 at 105, ¶ 436.  The first claim further alleges that "[a]ny action by the Secretary to provide ballot access to a presidential primary candidate who fails to meet all constitutional qualifications for the Office of President is an 'impropriety,' [Colo. Rev. Stat.] § 1-4-1204(4), and 'a breach or neglect of duty or other wrongful act,' *id*. § 1-1-113(1)."  *Id*. at 106, ¶ 442.  Thus, petitioners focus their first claim on Secretary Griswold's alleged statutory duty to ensure that candidates for federal elections in Colorado have the necessary qualifications.  Moreover, as Mr. Trump's response to petitioners' motion notes, Secretary Griswold is the person who will make the decision to "allow[ ] or disallow[ ] Trump's name on the ballot."  Docket No. 28 at 2, ¶ 3.

Secretary Griswold is therefore not a nominal party and her consent to removal was therefore required.

Because Secretary Griswold accepted service before Mr. Trump removed the case and she did not join in or consent to removal, the Court finds that removal was defective under 28 U.S.C. § 1446(b)(2)(A).  Therefore, it is

**ORDERED** that Petitioners' Unopposed Motion to Remand [Docket No. 15] and Petitioners' Unopposed Motion for Expedited Consideration of Motion to Remand [Docket No. 16] are **GRANTED**.  It is further

**ORDERED** that this case is remanded to the District Court for Denver County, Colorado, where it was filed as Case No. 2023CV032577.  It is further

**ORDERED** that this case is closed.

DATED September 12, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO | |
| Court Address: | |
| 1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED: September 13, 2023 6:38 PM |
| **Plaintiff(s)** NORMA ANDERSON et al. | CASE NUMBER: 2023CV32577 |
| v. | |
| **Defendant(s)** JENA GRISWOLD IN HER OFFICIAL CAPACITY et al. | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2023CV32577 |
| | Division: 209        Courtroom: |
| **Order re Notice to Set** | |

The Court is in receipt of the Plaintiffs' Notice to Set. The Court will set a status conference once it receives proof that both Defendants have been served.

Issue Date: 9/13/2023

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

| | |
|---|---|
| DISTRICT COURT<br>CITY & COUNTY OF DENVER, COLORADO<br>1437 Bannock Street, Room 256<br>Denver, Colorado 80202 | DATE FILED: September 14, 2023 4:33 PM<br>CASE NUMBER: 2023CV32577 |
| **Plaintiff**: **NORMA ANDERSON, ET AL,**<br><br>v.<br><br>**Defendant:   JENA GRISWOLD, ET AL.** | **Case Number: 2023CV32577**<br><br>**Courtroom:**  209 |
| **DELAY REDUCTION ORDER** ||

All civil courtrooms are on a delay reduction docket.

**IF AN ATTORNEY OR PRO-SE PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE.  THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(B)(2).**

A.      In all civil actions, the following deadlines must be met:

1.      **Service of Process:**  Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after filing the complaint. After **63 days**, the Court may dismiss the action against any defendant for whom proof of service has not been filed.

2.      **Default:**  Motions for judgment must be filed within **14 days** after default has occurred and must comply with C.R.C.P. 121 § 1-14.  Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Servicemembers Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

3.      **Trial Setting:**  The Responsible Attorney, as defined in C.R.C.P. 16(b)(2), must file and serve a Notice to Set the case for trial and complete the trial setting no later than **14 days** from the date the case is at issue.  Counsel may call the courtroom to set trials only on Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. until noon.

4.  **<u>Continuances</u>:** Continuances of trials are disfavored, and continuances of trial are even less likely to be granted if the trial cannot be reset within a year of the filing date of the action. Accordingly, if you schedule your trial toward the end of the one-year period, you should assume that you will not be able to obtain a continuance of the trial.

5.  **<u>Cases filed under C.R.C.P. 16:</u>**

    a)  **<u>Case Management Conference</u>:**  The notice to set trial must also include a notice to set a Case Management Conference to be held no later than **<u>49 days</u>** after the case is at issue.  Counsel may call the courtroom to set case management conferences only on Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. until noon.

    b)  **<u>Proposed Case Management Order</u>:**  At least **<u>7 days</u>** before the Case Management Conference, the parties must file a proposed Case Management Order.

    c)  **<u>Waiver of Case Management Conference</u>:**  If all parties are represented by counsel, a joint request to waive the case management conference may be included in the proposed Case Management Order.  Unless such a request has been granted, counsel must appear for the case management conference.

6.  **<u>Cases filed under C.R.C.P. 16.1:</u>**

    **<u>Certificate of Compliance</u>:**  Not later than **<u>49 days</u>** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h).  No Case Management Order or Case Management Conference is required.

B.  Additionally, in all civil actions, the following provisions apply:

1.  **<u>Service of this Order</u>:**  The Plaintiff or Responsible Attorney must send a copy of this Order to all other parties who enter their appearance.

2.  **<u>Related Cases</u>:**  An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) form, available in Room 256 of the City and County Building or online at:

https://www.courts.state.co.us/userfiles/file/Information_Regarding_Related_Cases_Form(1).doc

2

Date: September 14, 2023

BY THE COURT:

Sarah B. Wallace
District Court Judge

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202<br><br>**Plaintiff(s)** NORMA ANDERSON et al.<br>v.<br>**Defendant(s)** JENA GRISWOLD IN HER OFFICIAL CAPACITY et al. | DATE FILED: September 14, 2023 4:04 PM<br>CASE NUMBER: 2023CV32577 |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2023CV32577 |
| | Division: 209        Courtroom: |
| **Order Re COLORADO REPUBLICAN STATE CENTRAL COMMITTEES MOTION TO INTERVENE** | |

The Court is in receipt of the Colorado Republican State Central Committees' Motion to Intervene. It is the Court's understanding that the Plaintiffs and Defendant Trump do not oppose the Motion but Defendant Griswold may oppose it.

To the extent that Defendant Griswold opposes the Motion to Intervene, she should be prepared to discuss the bases for that opposition at the status conference on Monday September 18 at 10 am. If she does not oppose the Motion, she should file a notice of consent prior to the status conference.

Issue Date: 9/14/2023

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

| DISTRICT COURT OF THE 2ND JUDICIAL DISTRICT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202<br>(303) 606-2300 | DATE FILED: September 14, 2023 4:35 PM<br>CASE NUMBER: 2023CV32577 |
|---|---|
| **Plaintiff: NORMA ANDERSON, ET AL**<br><br>v.<br><br>**Defendant(s): JENA GRISWOLD, ET AL.** | ▲COURT USE ONLY▲<br><br>**Case Number: 2023CV32577**<br><br>**Division:** 209 |
| **PRE-TRIAL ORDER** | |

## A.    ALTERNATIVE DISPUTE RESOLUTION

The Court will not issue a separate ADR order at this time, but parties may contact the Court Clerk at any time if they wish to have an ADR order entered, provided all parties or counsel for the parties are included in the communication.

## B.    DUTY TO CONFER[1]

Colo. R. Civ. P. 121 § 1-15(8) states that "moving counsel and any self-represented party shall confer with opposing counsel and any self-represented parties before filing a motion." Rule 121 § 1-15(8) requires the parties to identify and attempt to resolve emerging issues before engaging in motions practice. The duty to confer requires counsel to confer in good faith either by telephone, in person, email, or in writing with any party who might potentially oppose the relief requested. A single unanswered email or phone call is insufficient to comply with the rule. The Court expects the parties to have made (or at least attempted) follow-up in their conferral. (E.g., if a voicemail is left, it must be followed by a second attempt to confer in the form of an additional telephone call or voicemail).

The word "shall" in Rule 121 § 1-15(8) is a mandatory requirement. Before filing a motion, the moving party must confer with any potentially opposing party, as detailed above. "If no conference has occurred, the reason why, including all efforts to confer, shall be stated." The reason why no conference has occurred must be explained in substantive detail, and a lack of conferral with be excused only under unusual or extraordinary circumstances. On one end of the spectrum, it will not be acceptable for the moving party to make a single phone call, leave a voicemail requesting conferral, and submit a corresponding motion shortly thereafter without the

---

[1] The Court finds Colorado District Court Judges Frederick Gannett and Juan Villasenor and United States District Court Magistrate Judge Boland's interpretation of the conferral requirement persuasive and attributes the following discussion to them.

required conferral. On the other hand, the Court will not allow a moving party to be hamstrung by an opposing party if the moving party has made numerous attempts to confer by leaving messages and there is no timely return communication. The Court will evaluate whether parties have satisfied the duty to confer on a case-by-case basis.

The Court also reads Rule 121 § 1-15(8) as applying to *pro se* parties in the same manner as it applies to any attorney entering an appearance before the Court.

## C.    MOTIONS

1. DO NOT, UNDER ANY CIRCUMSTANCES, COMBINE PLEADINGS (i.e., Defendant's Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment). IF YOU DO, YOUR PLEADING MAY BE STRICKEN *SUA SPONTE.*

2. Plan ahead as "forthwith" motions are discouraged. Due to the electronic filing system, filings are not received by this division at the same time they are filed. If the filing is an emergency and needs immediate attention from the Court, please contact the courtroom clerk and alert them of the filing. However, please note that your emergency may not be considered the Court's emergency.

3. The Court interprets C.R.C.P. 121, § 1-15 to require the moving party to give the non-moving party(s) at least two business days to respond before the moving party files the motion.

4. The parties shall comply with the formatting requirements of C.R.C.P. 10 for every motion.

5. A motion will be followed by a response, and a reply unless this Court has eliminated a reply or other pleading pursuant to C.R.C.P. 121. No other pleadings relating to a given motion will be accepted for filing unless court order permits.

6. The requirements of C.R.C.P. 121 § 1-15 concerning the content of briefs will be strictly enforced. **Except as otherwise outlined in this order, all motions and briefs are limited to 10 pages in length.** Should a party wish to exceed the Court's limit, the party shall seek court approval before filing the motion.

7. The requirements of C.R.C.P. 121 § 1-15 concerning the time for filing motions will be strictly enforced. Extensions of the deadlines are strongly discouraged because they make it unlikely that the motions will be ruled on in advance of trial. The Court may, if appropriate, expedite the briefing schedule.

8. Once motions are at issue, they will be ruled upon as the Court's docket permits, usually without a hearing. Motions hearings will be set so as not to interfere with the conduct of other trials.

| MOTIONS FOR SUMMARY JUDGMENT (C.R.C.P. 56) |
|---|

9. **Summary Judgment Motions pursuant to C.R.C.P. 56 shall be filed at least 91 days (13 weeks) before trial.**

    a.  Motion, Page Limits, and Exhibits
This deadline and these procedures contemplate filing a single motion for summary judgment by a party. This deadline applies to any motion under C.R.C.P. 56, even if designated as a cross-motion for summary judgment or motion for determining a question of law. The page limits outlined in C.R.C.P. 121 § 1-15(1)(a) apply. However, the case caption, signature block, certificate of service, and attachments will not count toward the page limit.

    b.  Exhibits
Exhibits attached to a motion for summary judgment, a response in opposition or a reply must follow the following format. Defendant must label his/her/its exhibits by letters: A, B, C, etc. If Defendant needs to attach more than 26 exhibits, Defendant may instead number his/her/its exhibits starting at 501, 502, 503, etc. Plaintiff must designate his/her/its exhibits by numbers: 1, 2, 3, 4, etc.

When filing any exhibits in support of, or opposition to, a motion, the party must label the exhibit and include its title so that the description appears in the register of actions. For example: "Ex. A, John Smith Decl." "Ex. 3, Sales Contract." "Ex. F, Plaintiff Depo."

Voluminous exhibits are discouraged on summary judgment.

    c.  Motion Format
***Facts Section.*** The moving party must use the following format: the movant must create a section of the motion titled "Statement of Undisputed Material Facts" and must set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law. The movant must avoid adding unnecessary adjectives or adverbs to his or her material facts. In general, the Court finds such descriptors vague and unhelpful to adjudicate summary judgment motions.

Each separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes that fact. General references to pleadings, depositions, or documents are insufficient if the document is over one page in length. A "specific reference" means the title of the document (e.g., "Exhibit A, Pl. Depo.") and a specific paragraph or page and line number; or, if the document is attached to the motion, the paragraph or page and line number.

***Legal Argument Section.*** For each claim for relief or defense as to which judgment is requested, the motion must: (a) identify which party has the burden of proof; (b) identify each element that must be proved; (c) for each identified element, identify the material undisputed facts that prove that element and the pinpoint location in the filed record; or

(d) if the respondent has the burden of proof, identify the elements which the movant contends the respondent cannot prove (with reference to the record).

d.  Response Format

***Facts Section.*** Any party opposing the motion for summary judgment must create a section of the response titled "Response to Statement of Undisputed Material Facts," and must respond by deeming the facts "undisputed," "disputed," or "undisputed for purposes of summary judgment." Each response must be made in separate paragraphs numbered to correspond to movant's paragraph numbering. A "disputed" response must address the fact as tendered by the movant, not a fact that the non-movant wishes had been tendered. Proper responses to a "disputed" fact should be limited to an argument that (1) the particular parts of materials in the record don't establish the absence or presence of a genuine dispute; or (2) the movant cannot produce admissible evidence to support the fact. The response must be accompanied by a brief factual explanation to support the dispute.

**If the non-movant fails to properly address the other party's assertion of fact as required here, the Court generally will consider the fact undisputed for purposes of the motion.**

If the party opposing the motion believes that there are additional disputed (or undisputed) facts which it has not adequately addressed in the submissions made in the facts section, the party must create a separate section of the response titled "Statement of Additional Disputed (or Undisputed) Facts," and must set forth in simple, declarative sentences, separately numbered and paragraphed, each additional material undisputed/disputed fact which undercuts movant's claim that it is entitled to judgment as a matter of law. Each separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes the fact or at least demonstrates that it is disputed/undisputed.

***Legal Argument Section.*** The response must utilize the same format for each claim/defense as set forth above: (a) if the respondent disputes the statement of the burden of proof on necessary elements, it must identify such as disputed and must provide supporting legal authority. (b) If the movant has the burden of proof, the respondent must identify all elements for which there are disputed material facts, as well as provide a brief explanation of the reason(s) for the dispute and specific references to supportive evidence in the record appendix. Stipulation to facts not reasonably in dispute is highly encouraged. (c) If the respondent has the burden of proof, for each element identified by the movant as lacking proof, the respondent should identify the facts and their location in the record that establish that element.

e.  Reply Format

***Facts Section.*** At the beginning of the reply, the movant must list the facts that are undisputed and disputed by their respective paragraph number.

The movant must create a section titled "Reply Concerning Undisputed Facts" and must include any **factual** reply regarding the facts asserted in its motion to be undisputed, supported by specific references to material in the record. The reply will be made in

separate paragraphs numbered according to the motion and the opposing party's response.

The movant must create a section titled "Response Concerning Disputed Facts" to respond to those facts claimed to be in dispute, and either admit that the fact is disputed or supply a brief factual explanation for its position that the fact is undisputed, accompanied by a specific reference to material in the record which establishes that the fact is undisputed. The movant's response to undisputed fact must be done in paragraphs numbered to correspond with the opposing party's paragraph numbering.

*Legal Argument Section*. The movant must respond to the legal arguments made by the respondent and must not raise new issues.

Finally, legal argument is not permitted in the factual sections of the motion/response/reply and should be reserved for the legal argument section(s) of the documents. If, for example, a party believes that an established fact is immaterial, that argument must go in the legal argument section, and the fact should be admitted. If, on the other hand, a party believes that the reference to material in the record does not support the claimed fact, that fact may be disputed accompanied by a brief *factual* argument made under these procedures.

## MOTIONS – EXPERT TESTIMONY

10. **Motions challenging expert testimony pursuant to C.R.E. 702 must be filed at least 70 days (10 weeks) before trial unless a different time is permitted by court order.** C.R.C.P. 16(c). Motions shall include the following: (1) identification of the expert witness and separately state each opinion/testimony the moving party seeks to exclude; (2) a response for each opinion/testimony with the specific foundational challenge made to the opinion/testimony, e.g., relevancy, sufficiency of facts and data, methodology. C.R.E. 702 and 703; and, (3) indication of whether an evidentiary hearing is requested, explain why such a hearing is necessary, and specify the time needed for the evidentiary hearing (assuming time is divided equally between the parties).

The Court in its discretion may set a hearing to determine the admissibility of the challenged opinions under the Colorado Rules of Evidence.

## MOTIONS IN LIMINE

11. **Motions *in limine* shall not exceed 5 pages and must be filed at least 35 days prior to trial unless a different time is permitted by court order.** C.R.C.P. 16(c). Responses shall be filed no more than **7 days** after the motion is filed, unless a different time is permitted by court order. No replies shall be allowed.

| **OTHER PRETRIAL MOTIONS** |
| --- |

12. **Other pretrial motions must be filed at least 42 days before trial unless a different time is permitted by court order.** Responses shall be filed **14 days** after the filing of the motion unless a different time is permitted by court order. No replies shall be allowed.

## D.    DISCOVERY

1.  Failure to disclose or insufficient/untimely disclosure of any document, exhibit or opinion is undertaken at your own risk. Similarly, delaying discovery until the eve of deadlines and/or trial is undertaken at your own risk. Do not procrastinate in the preparation of your case.

2.  **NO WRITTEN DISCOVERY MOTIONS WILL BE ACCEPTED.** The Court will address *ALL* discovery disputes with a discovery hearing (in-person) instead of by formal written motions. A "discovery dispute" means a disagreement involving issues arising under C.R.C.P. 16, 16.1, 26, 30, 31, 33, 34, 35, 36, 37, and 45. The purpose of this procedure is to ensure an expedited and inexpensive resolution of discovery disputes. The following procedures will be in effect in this case:

    a.  If there is a discovery dispute, counsel are expected to confer in a meaningful way to try to resolve it. This means in writing, by telephone or in person. An exchange of emails is not sufficient.

    b.  If counsel cannot resolve the dispute, they shall contact one of the clerks for this court during setting times (Tuesday, Wednesday & Thursday from 10 am – 12 noon) at 303-606-2393. If counsel cannot agree on a date the Court will set the hearing date.

    c.  The dispute will be argued and resolved at the hearing, or taken under advisement with a prompt ruling by the Court. The parties shall file a one-page, concise identification of the discovery issues in dispute (with citations) and provide a copy of any legal authority that might be helpful to the Court, at least 2 days before the hearing. The discovery issues shall be laid out clearly and explain the legal and factual justifications for an objection. This shall be done in lieu of filing a written motion and response. DO NOT file any written motion, attachments, etc. unless the Court requests it.

    d.  If a dispute occurs during a deposition, please call the clerk of this courtroom at the above number and advise them about the nature of the dispute. The Court will address the dispute as quickly as possible, based upon the Court's availability.

## E.    EXPERTS

1.  Disclosure of expert opinions must comply with C.R.C.P. 26(a)(2). As set out in Comment 21 to C.R.C.P. 26, detailed expert disclosures "facilitate the trial, avoid delays, and enhance the prospect for settlement."

2.  Retained Experts shall be limited to testifying on direct examination about matters disclosed in reasonable detail in the written expert disclosures.

3. For non-retained experts (including treatment providers), the Court strictly construes the requirement in C.R.C.P. 26(a)(2)(b)(ii)(a). Non-retained expert disclosures must include "a complete description of all opinions to be expressed and the basis and reasons therefor." This is required regardless of whether the expert's opinions formed during treatment are stated in a party's medical records. A boilerplate statement that the treatment provider "will testify about the plaintiff's medical records and their impact on the plaintiff's treatment" does not meet this requirement.

4. Disputes over the adequacy of expert disclosures should be raised at the time of disclosure.

## F.    CASE MANAGEMENT ORDER

1. The recently amended provisions of C.R.C.P. 16 and 16.1 concerning presumptive and modified case management orders will apply.

2. At the same time as the Notice to Set Trial is filed, the Responsible Attorney shall file a notice to set a Case Management Conference as required in C.R.C.P. 16(d)(1), to be held no later than 49 days after the case is at issue, and shall provide notice of the conference to all parties.

3. Not later than 42 days after the case is at issue and at least 7 days before the Case Management Conference, the parties shall file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections.

4. If all parties are represented by counsel, no later than 35 days after the case is at issue, counsel may file a proposed Case Management Order in compliance with C.R.C.P. 16(b) and may jointly request the Court to dispense with a Case Management Conference.

5. If the parties cannot agree on a modified case management order, they shall submit a draft order identifying the areas of disagreement. The Court will decide the disputed matters and will issue a Case Management Order promptly.

6. The parties shall contact the clerk of this court at (303) 606-2393 during setting times (Tuesday, Wednesday & Thursday from 10 am – 12 noon) to schedule a case management conference if they think one will be helpful.

7. Cases Filed Under C.R.C.P. 16.1: Not later than 49 days after the case is at issue, the Plaintiff (or Responsible Attorney) shall file a Certificate of Compliance as required under C.R.C.P. 16.1(h). No Case Management Order or Case Management Conference is required.

## G.    TRIAL SETTING

Continuances will NOT be granted as a matter of course, even if stipulated. Continuances will be granted only for good cause shown. Contested motions for continuance will likely be decided on the first day of trial unless ripe at least **7 days** before trial.

## H.   TRIAL MANAGEMENT ORDER

1. Plaintiff's counsel shall prepare and submit a Trial Management Order ("TMO") no later
   than **28 days** before the date of trial.

## I.   TRIAL PREPARATION

1. A Pre-trial Conference is not scheduled by the Court automatically. The parties may contact
   the clerk of this Court at any time if they wish to schedule a Pre-trial Conference in this
   matter. Unless good cause is shown to hold the conference closer to trial, the Pre-trial
   Conference shall be held no later than **7 days** before trial.

2. The FTR shall be the official record in this case, absent an agreement to use a freelance court
   reporter. Counsel and any party appearing *pro se* shall decide if a retained court reporter will
   be used. Review and comply with the 2nd Judicial District Chief Judge Directive 2011-1 and
   attached policy regarding Court Reporters.

3. Any Trial Briefs must be filed no later than **7 days** before trial and shall not exceed 5 pages.
   In lieu of a trial brief, a party may file a list of case and statutory authority upon which the
   party intends to rely.

4. **Witness Lists**. A correctly spelled list of the probable witnesses who may be called. In
   addition to listing the names of the witnesses, the list shall also specify the witnesses' titles or
   degrees and employment (e.g., Dr. John Smith, M.D., Children's Hospital) if applicable.

5. **Joint Order of Proof**. Counsel **shall confer** and prepare a joint order of proof which
   identifies each counsel's good-faith estimate of the order in which witnesses will be
   presented and the time required for direct and cross-examination of each witness.

6. **The witness lists and order of proof shall be filed no later than 7 days before the
   commencement of trial.**

7. **Exhibits.**
   a. The parties must prepare a comprehensive Index of Exhibits and note those exhibits
      which are stipulated. Authenticity of exhibits shall be deemed stipulated to unless an
      objection is filed **14 days** before trial.

   b. Counsel shall stipulate to admissibility of exhibits where appropriate to reduce use of
      Court and, if applicable, jury time. Each exhibit in the index should be accompanied by a
      number, Plaintiffs shall use numbers 1-999 and Defendants shall use numbers 1,000-
      1,999. If there are multiple Plaintiffs or multiple Defendants the parties shall designate
      the exhibit number range each party will use.

   c. All exhibits must be pre-marked with the number or letter identification, along with the
      case number. On the day of trial, counsel shall have in their possession at least four
      complete sets of all exhibits (either paper or electronic): one copy for the judge, one copy
      for witnesses, and copies for counsel.

    d.   The parties shall exchange any demonstrative exhibits **7 days** before the first day of trial.

    e.   Unless the Court orders otherwise, on or before the trial date, the parties must submit ALL of their exhibits, and/or images of large or demonstrative exhibits, through the E-Filing system. Parties should anticipate that there are exhibits such as negotiable instruments where the original paper document may need to be tendered to the Court. Images of these exhibits shall also be filed through the E-Filing system. *See* CJD 11-01 ¶ VI. Submission of exhibits shall be in substantial compliance with Paragraph V, of Chief Justice Directive 11-01. *See id.* ¶ V. Any violation of this Order regarding the submission of exhibits will be subject to sanctions including contempt of Court under C.R.C.P. 107.

    f.   Copies of a draft of list of exhibits and witnesses must be exchanged at least **42 days** before trial, as required by C.R.C.P. 16(f)(2). Other orders concerning exhibits may be entered as necessary.

**8. Depositions**
    a.   If any party wishes to use depositions in place of live testimony, C.R.C.P. 16(f)(3)(VI)(D) shall be complied with.

    b.   The parties must provide the Court with a single copy of the deposition transcript with the designations and cross designations indicated, **7 days** before trial.

    c.   All objections shall be filed with the designations and shall include a specific Rule of Evidence supporting the objection.

    d.   The same rules apply to written, videotape, and DVD depositions alike.

9.   If a party needs any form of audio/visual equipment, the party(s) is responsible for providing it. This includes extension cords and power surge strips

10.  **Interpreters.** If any party or witness requires an interpreter which the Court is required to provide under CJD 06-03 (as amended, May 2016), you must notify the courtroom clerk for Courtroom 209 of the need for the interpreter, the language needed and the anticipated date and length of testimony of the witness who is English Language Deficient **not less than 35 days before trial.** Failure to do so may result in the Court's inability to schedule an interpreter and, if so, the witness will not be permitted to testify.

## J.   JURY INSTRUCTIONS

1.   Attorneys are required to meet and confer in good faith, preferably in person, regarding jury instructions. The Court has already prepared the following instructions: 3:1, 3:4, 3:8, 3:9, 3:12, 3:14, 3:15, 3:16, 4:1, 4:2, 4:2A, 5:1 and 5:6. Counsel for the plaintiff is required to submit a joint proposed initial draft of the final jury instructions directly to the court via e-mail to the Court's law clerk (02courtroom209@judicial.state.co.us) no later than 7 days prior to the scheduled trial. By initial draft, the Court means a single document that includes the instructions the Court has already prepared, the instructions to which all parties have stipulated, and any additional or disputed instructions of any party, as discussed below.

2. Please note: the Court does not need, nor will it accept, basic introductory or closing instructions, oaths, admonitions, lengthy annotations, or similar instructions.

3. Counsel shall submit instructions using the following order: opening instructions; 2:1 claims and defenses; basic evidentiary instructions; instructions relating to the plaintiff's claims; instructions relating to defenses; damages; definitions; closing instructions.

4. Unless a stipulation can be reached, counsel for both parties shall be responsible for submitting their own version of a proposed 2:1 instruction under the "Claims of the Parties" instruction. The Court will either choose between those submitted instructions or prepare its own.

5. If counsel cannot agree on the wording of other instructions then both counsel shall submit instructions defining applicable stipulations, claims, standards of proof, affirmative defenses, damages, and special definitions under the appropriate sections.

6. Additional instructions may be submitted. However, the Court does not favor, and rarely gives, special instructions patterned after caselaw; any such instructions shall be submitted separately via e-mail, accompanied by a brief statement of authority, in compliance with the requirements for the initial draft. All proposed instructions must be organized in substantial compliance with the format utilized by the Court. If either counsel has an objection to a submitted instruction, the nature of the objection shall be briefly stated on the initial draft submitted to the Court, along with a brief statement of authority.

7. The Court shall prepare proposed verdict forms that conform to the proposed instructions.

8. All instructions must be submitted through the E-Filing system in editable format. *See* CJD 11-01 ¶ VII. Accordingly, two editable documents comprising the proposed jury instructions must be E-Filed **7 days** before trial: (1) one document of stipulated instructions (without CJI and/or case citations), and (2) one document of disputed instructions (with CJI and/or case citations). The set of instructions provided to the jury as well as a party's tendered instructions that have been rejected by the Court shall be uploaded in the E-Filing system.

9. The Court will conduct a conference on the instructions during breaks, over the lunch hour, or at the end of the day. Counsel and/or parties shall be prepared, with case citations, to discuss the disputed instructions at the time of the conference. The goal is to have a completed set of instructions ready for the jury as soon as the presentation of evidence is concluded.

## K.    JUROR NOTEBOOKS (If Applicable)

Each trial juror will be provided with a juror notebook. We will provide the notebooks, unless an oversize notebook is needed, in which case the parties must provide them. We will prepare general information and juror question forms, but the parties must prepare the remainder of the contents. Each page must be three-hole punched in advance so it can be placed in a notebook. Each party must file its materials with courtroom staff *in person* no later than 3:00 p.m. on the

Thursday before the first day of trial. The person bringing the materials to court must be prepared to place the material into the notebooks. Each party must supply an original and eight copies of the following:

1. **Exhibit Lists**. A list of exhibits whose admissibility is stipulated or not subject to reasonable dispute.

2. **Exhibits or Excerpts of Exhibits**. Copies of stipulated exhibits may be put in the juror notebooks. If exhibits are lengthy, stipulated excerpts may be used with my permission. The parties should bring to trial eight (three hole-punched) copies of any exhibit not stipulated to; copies will be placed in the notebook if and when the exhibit is admitted.

3. **Glossary of Terms**. If there are any scientific or other specialized terms which will be used repeatedly, those should be set forth, with an agreed-upon definition. If the parties have a legitimate dispute about the definition of any term, just the term should be listed.

## L.      JURY SELECTION (If Applicable)

1. Each side will have a maximum of 20 minutes for *voir dire*, unless additional time is requested and permitted in advance of the first day of trial. In multi-party cases, time must be divided between all parties on the side(s) of the case.

2. The Court will ask some basic questions before counsels' *voir dire*. If there are questions all parties believe the should ask during its *voir dire*, such questions should be submitted to the Court at least **7 days** before trial.

3. *Voir dire* will be conducted from the lectern.

4. Typically, an alternate juror is selected. The Court will advise counsel on the first day of trial how the alternate will be designated. The Court prefers that the alternate be allowed to deliberate, but a final decision will be made before the venire arrives for trial.

5. Peremptory challenges are to be made against the presumptive panel.

6. Typically, challenges for cause will be exercised at the bench upon the conclusion of all parties' *voir dire*. Peremptory challenges will be announced orally in open Court *by counsel*.

## M.      CONDUCT OF TRIAL

1. **Scheduling/Use of Time**
   a. The trial day will start at 8:30 a.m. and end at 5:00 p.m. We will take a morning and an afternoon break of 15 to 20 minutes each. Lunch will run for approximately 1 hour within the timeframe of noon to 1:30 p.m. Adjustments to this schedule may be made for good cause shown or upon order of the Court.

   b. Counsel and parties will be in court by 8:00 a.m. on each day of trial. This allows time for setup and preparation before beginning each trial day. It also provides an opportunity for counsel to discuss anything outside the presence of the jury before the trial day begins.

    c. Jurors (if applicable) are the most important people in the decision-making process; their time is more valuable than ours. Witnesses must be scheduled so that no lengthy gaps occur in testimony. If there is a lengthy delay in one side's presentation of evidence, the Court will likely exercise its discretion and require the other side to begin the presentation of evidence. Proper concern for the jury's time is generally more important than the order in which evidence is presented.

    d. Counsel and the Court will spend a few minutes at the end of each trial day (after the jury has been excused) discussing what will occur the next day, including what witnesses are scheduled and how much time each witness is expected to take.

2. **Opening Statements**. Each side will have a maximum of 20 minutes for its opening statement. In multiple-party cases, this time must be divided between the parties. Additional time may be permitted for good cause shown.

3. **Questioning of Witnesses**.
    a. Generally, questioning will be done from the podium unless permission is granted to approach the witness or the bench.

    b. Redirect may be limited or disallowed. The Court generally does not allow re-cross. Prior to questioning, counsel should ask to approach for a bench conference should a re-cross be sought.

    c. Juror questions will be permitted when all other questions have been asked. Jurors will submit written questions on forms which the Court will place in the juror notebooks. As required, the Court will make a determination on whether the question will be asked after a bench conference as to any question(s). Counsel may ask *brief* follow-up questions after juror questions have been asked, but only as to issues raised by the jurors' questions.

4. **Objections**.
    a. Make objections professionally: be brief, concise and specific.

    b. Speaking objections are not permitted.

    c. Do not automatically respond to an objection; if I want a response to an objection before ruling on it, I will ask for one.

5. **Closing Arguments**. Each side will have 20 minutes for closing argument. In multiple-party cases, this time must be divided between the parties. Additional time may be permitted for good cause shown.

6. **Miscellaneous**.
    a. Parties must remain at counsel table while court is in session.

    b. Counsel must use surnames.

    c.  No food is permitted in the courtroom; water is permitted at counsel table.

    d.  Please turn off (or silence) all electronic devices before coming into court.

**N.    GENERAL RULES**

1.  If this Order conflicts with any Pre-Trial Order that was issued previously **THIS ORDER** will supersede.

2.  Any reference in this Order to "counsel" includes *pro se* parties.

3.  The parties are to **notify the Court within 24 hours of settlement or resolution of the case. This should be accomplished by both calling the Courtroom at its main number of 303-606-2393 AND e-filing a notice of settlement. All documents confirming settlement shall be filed not later than 28 days from the date of settlement,** unless otherwise ordered by the Court.

4.  Unless all parties agree on the record that exhibits need not be maintained, the following procedure will be followed:

    a.  When the trial or hearing is concluded, each party will withdraw any exhibits or depositions which that party marked or admitted.

    b.  Each party will maintain in its custody the withdrawn exhibits and depositions without modification of any kind until 63 days after the time for the need of such exhibits for appellate or other review purposes has expired, unless all parties stipulate otherwise on the record or in writing. It will be the responsibility of the withdrawing parties to determine when the appropriate time period has expired.

5.  This is a *CIVIL* division. Counsel will treat jurors, parties, witnesses, me, my staff, and each other with professionalism, courtesy and respect at all times. This applies not only to the actual trial, but to all aspects of the case, including discovery and motions practice, and includes what is written as well as what is said.

<div align="center">

**DISCOVERY PROTOCOL**

</div>

Counsel are reminded that all discovery responses shall be made in the spirit and with the understanding that the purpose of discovery is to elicit facts and to get to the truth. The Rules of Civil Procedure are directed toward securing a just, speedy and inexpensive determination of every action. The discovery process shall not be employed to hinder or obstruct these goals, nor to harass, unduly delay or needlessly increase the cost of litigation.

**WRITTEN DISCOVERY**

These discovery protocols shall be considered as part of the responsibility of parties and counsel to comply with the Rules of Civil Procedure relating to discovery.

1. The parties should refrain from interposing repeated boilerplate type objections such as "overbroad, unduly burdensome, vague, ambiguous, not reasonably calculated to lead to the discovery of admissible evidence" and other similar objections. In the event any such objections are made, they shall be followed by a clear and precise explanation of the legal and factual justification for raising such an objection. Additionally, if the objecting party otherwise responds to the discovery request but does so subject to or without waiving such an objection, that party shall describe with reasonable specificity the information which may be available, but which is not being provided as a result of the objection raised.

2. When a responding party claims not to understand either a discovery request or the meaning of any words or terms used in a discovery request, that party shall, within fourteen (14) days of receiving the discovery request, seek clarification of the meaning from counsel who served the discovery. A failure to seek such clarification shall be considered a violation of this Order for Discovery Protocol.

3. A discovery response which does not provide the information or material requested but promises to do so at some point in the future will be treated as the equivalent of no response unless the party so responding provides a specific reason for the information not being produced as required by the Rules of Civil Procedure, and also provides a specific date by which such information will be produced.

4. A response to a discovery request that does not provide the information or material requested but rather states that the party is continuing to look for or search for such information or material will be treated as the same as no response, unless that party provides a clear description of where such information or material is normally located, who is normally in custody of such information or material, where the party has searched, the results of the search, as well as the identity of all persons who have engaged in such a search. The responding party shall also provide a clear explanation of the ongoing search and a specific date by which the search will be complete.

5. Whenever a party objects to discovery based upon a claim of attorney/client privilege, work product protection, or any other privilege or protection, that party shall produce a detailed privilege/protection log that includes at least the following for each such item for which privilege is claimed:

   a. The information required by C.R.C.P. 26(b)(5);

   b. The date of the information or material;

   c. All authors and recipients; and

   d. The specific privilege or protection which is claimed.

The proponent of the privilege has the burden of establishing that privilege. Failure to comply with this paragraph 5 and Order for Discovery Protocol will constitute a waiver of the claimed privilege.

**DEPOSITIONS**

1. Depositions shall be conducted in compliance with the Colorado Rules of Civil Procedure.

2. During all depositions, counsel shall adhere strictly to C.R.C.P. 30(d) (1) and (3). No objections may be made, except those which would be waived if not made under C.R.C.P. 32(d)(3)(B) (errors, irregularities), and those necessary to assert a privilege, to enforce a limitation on evidence directed by the Court, or to present a C.R.C.P. 30(d)(3) motion (to terminate a bad faith deposition). Objections to form shall be stated: "Objection as to form." Any further explanation is inappropriate and prohibited unless specifically requested by the attorney asking the question.

3. There shall be no speaking objections. It is inappropriate and prohibited for an attorney, during the course of questioning, to advise a witness to answer, "if you know," or "if you remember." It is similarly prohibited for an attorney during questioning to advise a witness not to speculate. All such questions shall be considered speaking objections. All deponent preparation shall be conducted prior to the commencement of the deposition and shall not take place during the course of the deposition.

4. It is appropriate for the deponent to request clarification of a question. However, it is not appropriate for counsel to do so.

5. A deponent and an attorney may not confer during the deposition while questions are pending. Similarly, neither a deponent nor counsel for a deponent may interrupt a deposition when a question is pending or a document is being reviewed, except as permitted by C.R.C.P. 30(d) (1).

6. Counsel shall refrain from excessive objections that have the purpose or effect of disrupting the flow of questioning or the elicitation of testimony.

7. Counsel may instruct the deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the Court, or to present a motion under C.R.C.P. 30(d)(3). Whenever counsel instructs a witness not to answer a question, counsel shall state on the record the specific reason for such an instruction, the specific question, part of a question or manner of asking the question upon which counsel is basing the instruction not to answer the question.

8. Violations of these Discovery Protocols will result in the Court limiting or prohibiting additional discovery in the case.

DATED: September 14, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

# Minute Orders

**Case Number:** 2023CV032577

**Division:** 209

**Case Type:** Injunctive Relief

**Judicial Officer:** Sarah Block Wallace

**Case Caption:** Anderson, Norma et al v. Jena Griswold In Her Official Capacity et al

**Court Location:** Denver County - District

---

Order Date: 09/18/2023

JUDGE SARAH B. WALLACE. CTRM 209. FTR 10:03. STAT. ATP ERIC OLSON, MARIO NICOLAIS, MARTHA TIERNEY, SEAN GRIMSLEY, AND JASON MURRAY ATD FOR TRUMP, SCOTT GESSLER AND JUSTIN NORTH; FOR GRISWOLD, MICHAEL KOTLARCZYK ATI ROBERT KITSMILLER AND MICHAEL MELITO COURT GRANTS THE MOTION TO INTERVENE. COURT HEARS ARGUMENT ON THE MOTION FOR AN EXPEDITED CASE MANAGEMENT CONFERENCE. COURT SETS 5-DAY HEARING TO BEGIN ON 10/30/2023. COURT ORDERS THAT INITIAL MOTIONS TO DISMISS ARE FILED BY 09/22/2023; RESPONSES DUE 09/29/2023; REPLIES DUE BY 10/06/2023. ALL OTHER MOTIONS TO DISMISS SHOULD BE FILED BY 09/29/2023; RESPONSES DUE BY 10/06/2023; REPLIES DUE BY 10/13/2023. PARTIES SHOULD COORDINATE THEIR ARGUMENTS TO REDUCE THE AMOUNT BEING FILED CONCERNING THESE MOTIONS. TO THE EXTENT THE COURT FEELS THE ARGUMENTS MADE IN THE MOTIONS TO DISMISS WOULD BEST BE DECIDED AT THE HEARING, THE COURT WILL RESERVE ITS RULING UNTIL THAT TIME. PARTIES SHOULD WORK TOGETHER TO CREATE A PROPOSED SET OF DEADLINES THAT WILL GOVERN THE CASE. ANY DISAGREEMENTS WILL BE ADDRESSED AT THE STATUS CONFERENCE SET FOR 9:00 ON 09/22/2023. /CAS

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

</td><td></td></tr>
<tr><td>

**Petitioners:**
NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN

**v.**

**Respondents:**
JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

</td><td>

**Δ COURT USE ONLY Δ**

Case No.: 2023CV32577

Division: 209

</td></tr>
</table>

DATE FILED: September 18, 2023 8:32 AM
CASE NUMBER: 2023CV32577

**ORDER RE: REQUEST FOR EXPANDED MEDIA COVERAGE**

**THIS MATTER** comes before the Court on Cable News Network's ("CNN") Request for Expanded Media Coverage, filed on September 15, 2023. The Court, having reviewed the Request and otherwise being sufficiently advised, hereby FINDS and ORDERS as follows:

## STANDARDS FOR AUTHORIZING COVERAGE

Pursuant to Chapter 38, Rule 3(a)(2) of the Colorado Court Rules,

In determining whether expanded media coverage should be permitted, a judge shall consider the following factors:
(A) Whether there is a reasonable likelihood that expanded media coverage would interfere with the rights of the parties to a fair trial;
(B) Whether there is a reasonable likelihood that expanded media coverage would unduly detract from the solemnity, decorum and dignity of the court; and
(C) Whether expanded media coverage would create adverse effects which would be greater than those caused by traditional media coverage.

## ANALYSIS

CNN requests expanded media coverage of the Status Conference in this case, currently scheduled for September 18, 2023. CNN's request is limited to recording the Webex proceedings.  The Court finds expanded media coverage is appropriate in this case, so long as CNN strictly adheres to all the parameters outlined in Chapter 38, Rule 3 of the Colorado Court Rules. The Court expects full compliance with all applicable restrictions and notes this Order authorizes expanded media coverage **only** of the Status Conference in this case.

In accordance with Chapter 38, Rule 3(a)(4),

A judge may restrict or limit expanded media coverage as may be necessary to preserve the dignity of the court or to protect the parties, witnesses, or jurors. A judge may terminate or suspend expanded media coverage at any time upon making findings of fact that: (1) rules established under this Rule or additional rules imposed by the judge have been violated; or (2) substantial rights of individual participants or rights to a fair trial will be prejudiced by such coverage if it is allowed to continue.

Therefore, the Court may further restrict and/or revoke the expanded media coverage authorized in this case.

Accordingly, the Court hereby **GRANTS** CNN's Request for Expanded Media Coverage of the Status Conference in this case, subject to the terms and conditions of Chapter 38, Rule 3 of the Colorado Court Rules and this Order.

DATED: September 18, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**

1437 Bannock Street
Denver, CO 80202

</td><td></td></tr>
</table>

| | |
|---|---|
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |

DATE FILED: September 18, 2023 9:34 AM
CASE NUMBER: 2023CV32577

**ORDER RE: REQUEST FOR EXPANDED MEDIA COVERAGE**

    **THIS MATTER** comes before the Court on Lawfare's Request for Expanded Media Coverage, filed on September 17, 2023. The Court, having reviewed the Request and otherwise being sufficiently advised, hereby FINDS and ORDERS as follows:

## STANDARDS FOR AUTHORIZING COVERAGE

    Pursuant to Chapter 38, Rule 3(a)(2) of the Colorado Court Rules,

    In determining whether expanded media coverage should be permitted, a judge shall consider the following factors:
(A) Whether there is a reasonable likelihood that expanded media coverage would interfere with the rights of the parties to a fair trial;
(B) Whether there is a reasonable likelihood that expanded media coverage would unduly detract from the solemnity, decorum and dignity of the court; and
(C) Whether expanded media coverage would create adverse effects which would be greater than those caused by traditional media coverage.

## ANALYSIS

Lawfare requests expanded media coverage of the Status Conference in this case, currently scheduled for September 18, 2023. Lawfare's request is limited to recording the Webex proceedings.  The Court finds expanded media coverage is appropriate in this case, so long as Lawfare strictly adheres to all the parameters outlined in Chapter 38, Rule 3 of the Colorado Court Rules. The Court expects full compliance with all applicable restrictions and notes this Order authorizes expanded media coverage **only** of the Status Conference in this case.

In accordance with Chapter 38, Rule 3(a)(4),

A judge may restrict or limit expanded media coverage as may be necessary to preserve the dignity of the court or to protect the parties, witnesses, or jurors. A judge may terminate or suspend expanded media coverage at any time upon making findings of fact that: (1) rules established under this Rule or additional rules imposed by the judge have been violated; or (2) substantial rights of individual participants or rights to a fair trial will be prejudiced by such coverage if it is allowed to continue.

Therefore, the Court may further restrict and/or revoke the expanded media coverage authorized in this case.

Accordingly, the Court hereby **GRANTS** Lawfare's Request for Expanded Media Coverage of the Status Conference in this case, subject to the terms and conditions of Chapter 38, Rule 3 of the Colorado Court Rules and this Order.

DATED: September 18, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

**GRANTED BY COURT**
**09/21/2023**

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1427 Bannock Street, Room 256<br>Denver, Colorado 80202 | DATE FILED: September 21, 2023 9:15 AM<br>CASE NUMBER: 2023CV32577<br><br>*Sarah B Wallace*<br><br>**SARAH BLOCK WALLACE**<br>**District Court Judge**<br>▲ COURT USE ONLY ▲ |
| **Plaintiff(s):** Anderson, et al.<br><br>**Defendant(s):** Griswold, et al. | |
| Applicant Attorney: Benjamin Paul Sisney<br>Address: 201 Maryland Avenue, NE<br>Washington, DC, 20002<br>Phone Number: (202) 546-8890<br>Fax Number: (202) 546-9309<br>Email: bsisney@aclj.org<br>Atty. Reg. #: DC Bar No. 1044721<br><br>Sponsoring Attorney: Michael Melito<br>Address: MELITO LAW, LLC<br>1875 Lawarence St., Ste. 730<br>Denver, Colorado 80202<br>Phone Number: (303) 813-1200<br>Fax Number:<br>Email: Melito@melitolaw.com<br>Atty. Reg. #: CO Bar No. 36059 | Case No: 23CV32577<br><br>Division: 209 |
| **OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING PRO HAC VICE ADMISSION** | |

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, *Benjamin Paul Sisney* of the Law Firm of *the American Center for Law and Justice, of Washington, D.C.*, moves for pro hac vice admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, *Benjamin Paul Sisney* states and shows the Court the following:

1. Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2. *Benjamin Paul Sisney*, of the Law Firm of *the American Center for Law and Justice*, is a member in good standing of the Bar in the State of

*Washington, D.C.   Benjamin Paul Sisney* is assigned attorney registration or bar admission numbers 1044721 in Washington, D.C.

3. *Benjamin Paul Sisney* has also been licensed in the following jurisdictions: Oklahoma and Virginia, under the following admission number(s) OK 21816, and VA 98019.

4. *Benjamin Paul Sisney* is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

<center>*or*</center>

~~_____[Name of Applicant Attorney] has been publicly disciplined, placed under an order of disability, or has had a request for pro hac vice admission denied or revoked in the following jurisdictions: _____(state the jurisdiction, the date of transfer to disability, the date of discipline, the date of the denial or revocation, or pro hac vice admission, the nature of the violation and the discipline imposed or the reason for the denial or revocation of pro hac vice admission).~~

5. *Benjamin Paul Sisney* has not previously sought pro hac vice admission in Colorado.

<center>*or*</center>

~~_____[Name of Applicant Attorney] has been admitted pro hac vice in the following Colorado cases in the preceding five years: _____ (state the date, case name, and case number all other matters in Colorado in which pro hac vice admission has been sought and whether admission was granted or denied).~~

6. *Benjamin Paul Sisney* acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure and other court rules, and that he/she has read such rules and will follow such rules.

7. *Michael Melito,* CO Bar No. 36059, is a member in good standing of the Bar of the State of Colorado.

8. *Michael Melito* will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9.  The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

*Attorneys for Petitioners*
Eric R. Olson
Sean C. Grimsley
Jason C. Murray
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
303-535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com

Jonathan E. Maier
Nikhel Suresh Sus
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
202-408-5565
jmaier@citizensforethics.org
nsus@citizensforethics.org

Mario Daniel Nicolais, II
KBN Law LLC
7830 West Alameda Avenue, Suite 103-301
Lakewood, CO 80226
720-773-1526
mario@kbnlaw.com

Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, CO 80203
303-356-4870
mtierney@tierneylawrence.com

***Attorneys for Respondent Donald Trump***
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

***Attorneys for Respondent Colorado Secretary of State***
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Benjamin P. Sisney* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Benjamin P. Sisney*'s qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Benjamin P. Sisney* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 14ᵗʰ day of September, 2023.

Benjamin Paul Sisney
DC Bar No. 1044721
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC

***Attorneys for Respondent Donald Trump***
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

***Attorneys for Respondent Colorado Secretary of State***
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Benjamin P. Sisney* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Benjamin P. Sisney*'s qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Benjamin P. Sisney* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 14th day of September, 2023.

Benjamin Paul Sisney
DC Bar No. 1044721
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St. Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice  Admission
was sworn to or affirmed and signed by _Michael, Melito_____ *[Name of*
*Sponsoring Attorney and Registration No.]* this _14th__ day of _September_, 20_23_

_Christa Lundquist_

*[Notary Public]*

My commission expires _July 22, 2026_

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by _Benjamin Paul Sisney_

*[Name of Applicant Attorney and Registration No.]* this 14 day of September 2023

_____
*[Notary Public]*

My commission expires: 04/30/2025

**GRANTED BY COURT**
**09/21/2023**

DATE FILED: September 21, 2023 9:15 AM
CASE NUMBER: 2023CV32577

*Sarah B. Wallace*

**SARAH BLOCK WALLACE**
District Court Judge

▲ COURT USE ONLY ▲

DISTRICT COURT, CITY AND COUNTY OF
DENVER, STATE OF COLORADO
1427 Bannock Street, Room 256
Denver, Colorado 80202

**Plaintiff(s):** Anderson, et al.

**Defendant(s):** Griswold, et al.

Applicant Attorney: Jay Alan Sekulow
Address: 201 Maryland Avenue, NE
Washington, DC, 20002
Phone Number: (202) 546-8890
Fax Number: (202) 546-9309
Email: sekulow@aclj.org
Atty. Reg. #: DC Bar No. 496335

Sponsoring Attorney: Michael Melito
Address: MELITO LAW, LLC
1875 Lawarence St., Ste. 730
Denver, Colorado 80202
Phone Number: (303) 813-1200
Fax Number:
Email: Melito@melitolaw.com
Atty. Reg. #: CO Bar No. 36059

Case No: 23CV32577

Division: 209

**OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING PRO HAC VICE ADMISSION**

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, *Jay Alan Sekulow* of the Law Firm of *the American Center for Law and Justice, of Washington, D.C.*, moves for pro hac vice admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, *Jay Alan Sekulow* states and shows the Court the following:

1. Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2. *Jay Alan Sekulow*, of the Law Firm of *the American Center for Law and Justice*, is a member in good standing of the Bar in the State of

*Washington, D.C.* *Jay Alan Sekulow* is assigned attorney registration or bar admission number 496335 in Washington, D.C.

3. *Jay Alan Sekulow* has also been licensed in the following jurisdiction: Georgia, under the following admission number 634900.

4. *Jay Alan Sekulow* is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

<div align="center">or</div>

~~_____ [Name of Applicant Attorney] has been publicly disciplined, placed under an order of disability, or has had a request for pro hac vice admission denied or revoked in the following jurisdictions: _____ (state the jurisdiction, the date of transfer to disability, the date of discipline, the date of the denial or revocation, or pro hac vice admission, the nature of the violation and the discipline imposed or the reason for the denial or revocation of pro hac vice admission ).~~

5. *Jay Alan Sekulow* has not previously sought pro hac vice admission in Colorado.

<div align="center">or</div>

~~_____ [Name of Applicant Attorney] has been admitted pro hac vice in the following Colorado cases in the preceding five years: _____ (state the date, case name, and case number all other matters in Colorado in which pro hac vice admission has been sought and whether admission was granted or denied).~~

6. *Jay Alan Sekulow* acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure and other court rules, and that he has read such rules and will follow such rules.

7. *Michael Melito*, CO Bar No. 36059, is a member in good standing of the Bar of the State of Colorado.

8. *Michael Melito* will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9.    The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

*Attorneys for Petitioners*
Eric R. Olson
Sean C. Grimsley
Jason C. Murray
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
303-535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com

Jonathan E. Maier
Nikhel Suresh Sus
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
202-408-5565
jmaier@citizensforethics.org
nsus@citizensforethics.org

Mario Daniel Nicolais, II
KBN Law LLC
7830 West Alameda Avenue, Suite 103-301
Lakewood, CO 80226
720-773-1526
mario@kbnlaw.com

Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, CO 80203
303-356-4870
mtierney@tierneylawrence.com

***Attorneys for Respondent Donald Trump***
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

***Attorneys for Respondent Colorado Secretary of State***
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Jay Alan Sekulow* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Jay Alan Sekulow's* qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Jay Alan Sekulow* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 14th day of September, 2023.

Jay Alan Sekulow
DC Bar No. 496335
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St., Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

## VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by _Michael Melito_ _[Name of Sponsoring Attorney and Registration No.]_ this _14th_ day of _September_ 20_23_.

_Christa Lundquist_
[Notary Public]

My commission expires: _July 22, 2026_

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St., Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice  Admission
was sworn to or affirmed and signed by Michael Melito                   [Name  of
Sponsoring Attorney and Registration No.] this 14th day of September, 2023

Christa Lundquist
[Notary Public]

My commission expires: July 22, 2026

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by _____

Jay Alan Sekulow, DC Bar #496335, this ___14 th___ day of Sept, 20 23 .

_____
[Notary Public]

My commission expires: March 16, 2026

**GRANTED BY COURT**
09/21/2023

| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO 1427 Bannock Street, Room 256 Denver, Colorado 80202 | DATE FILED: September 21, 2023 9:15 AM CASE NUMBER: 2023CV32577 *Sarah B Wallace* **SARAH BLOCK WALLACE** District Court Judge ▲ COURT USE ONLY ▲ |
|---|---|
| **Plaintiff(s):** Anderson, et al. **Defendant(s):** Griswold, et al. | |
| Applicant Attorney: Jordan A. Sekulow Address: 201 Maryland Avenue, NE Washington, DC, 20002 Phone Number: (202) 546-8890 Fax Number: (202) 546-9309 Email: jordansekulow@aclj.org Atty. Reg. #: DC Bar No. 9941680 Sponsoring Attorney: Michael Melito Address: MELITO LAW, LLC 1875 Lawarence St., Ste. 730 Denver, Colorado 80202 Phone Number: (303) 813-1200 Fax Number: Email: Melito@melitolaw.com Atty. Reg. #: CO Bar No. 36059 | Case No: 23CV32577 Division: 209 |

**OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING PRO HAC VICE ADMISSION**

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, *Jordan A. Sekulow* of the Law Firm of *the American Center for Law and Justice, of Washington, D.C.*, moves for pro hac vice admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, *Jordan A. Sekulow* states and shows the Court the following:

1.  Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2.  *Jordan A. Sekulow*, of the Law Firm of *the American Center for Law and Justice*, is a member in good standing of the Bar in the State of

*Washington, D.C. Jordan A. Sekulow* is assigned attorney registration or bar admission number 991680 in Washington, D.C.

3. <u>N/A</u>   [Name of Applicant Attorney] has also been licensed in the following jurisdiction(s):            (States), under the following admission number(s)            .

4. *Jordan A. Sekulow* is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

<div align="center">or</div>

~~_____ [Name of Applicant Attorney] has been publicly disciplined, placed under an order of disability, or has had a request for pro hac vice admission denied or revoked in the following jurisdictions: _____ (state the jurisdiction, the date of transfer to disability, the date of discipline, the date of the denial or revocation, or pro hac vice admission, the nature of the violation and the discipline imposed or the reason for the denial or revocation of pro hac vice admission).~~

5. *Jordan A. Sekulow* has not previously sought pro hac vice admission in Colorado.

<div align="center">or</div>

~~_____ [Name of Applicant Attorney] has been admitted pro hac vice in the following Colorado cases in the preceding five years: _____ (state the date, case name, and case number all other matters in Colorado in which pro hac vice admission has been sought and whether admission was granted or denied).~~

6. *Jordan A. Sekulow* acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure and other court rules, and that he has read such rules and will follow such rules.

7. *Michael Melito*, CO Bar No. 36059, is a member in good standing of the Bar of the State of Colorado.

8. *Michael Melito* will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9.  The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

*Attorneys for Petitioners*
Eric R. Olson
Sean C. Grimsley
Jason C. Murray
Olson Grimsley Kawanabe Hincheliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
303-535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com

Jonathan E. Maier
Nikhel Suresh Sus
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
202-408-5565
jmaier@citizensforethics.org
nsus@citizensforethics.org

Mario Daniel Nicolais, II
KBN Law LLC
7830 West Alameda Avenue, Suite 103-301
Lakewood, CO 80226
720-773-1526
mario@kbnlaw.com

Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, CO 80203
303-356-4870
mtierney@tierneylawrence.com

*Attorneys for Respondent Donald Trump*
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

*Attorneys for Respondent Colorado Secretary of State*
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Jordan A. Sekulow* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Jordan A. Sekulow's* qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Jordan A. Sekulow* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 14th day of September, 2023.

Jordan A. Sekulow
DC Bar No. 991680
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St., Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

## VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by _Michael Melito_ *[Name of Sponsoring Attorney and Registration No.]* this __14th__ day of _September_ 20 23

_Christa Lundquist_
*[Notary Public]*

My commission expires: _July 22, 2026_

```
CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026
```

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St., Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by _Michael Melito_ _[Name of Sponsoring Attorney and Registration No.]_ this _14th_ day of _September_, 2023

_Christa Lundquist_
_[Notary Public]_

My commission expires: _July 22, 2026_

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by Jordan A. Sekulow, DC Bar #991680. this _____ 14 th _____ day of Sept , 2023

_____
(Notary Public)

My commission expires: March 16, 2026

**GRANTED BY COURT**
**09/21/2023**
DATE FILED: September 21, 2023 9:15 AM
CASE NUMBER: 2023CV32577

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1427 Bannock Street, Room 256<br>Denver, Colorado 80202 | *Sarah B Wallace*<br>**SARAH BLOCK WALLACE**<br>District Court Judge<br><br>▲ COURT USE ONLY ▲ |
| **Plaintiff(s):** Anderson, et al.<br><br>**Defendant(s):** Griswold, et al. | |
| Applicant Attorney: Nathan J. Moelker<br>Address: 201 Maryland Avenue, NE<br>Washington, DC, 20002<br>Phone Number: (202) 546-8890<br>Fax Number: (202) 546-9309<br>Email: nmoelker@aclj.org<br>Atty. Reg. # :VA Bar No. 98313<br><br>Sponsoring Attorney: Michael Melito<br>Address: MELITO LAW, LLC<br>1875 Lawarence St., Ste. 730<br>Denver, Colorado 80202<br>Phone Number: (303) 813-1200<br>Fax Number:<br>Email: Melito@melitolaw.com<br>Atty. Reg. #: CO Bar No. 36059 | Case No: 23CV32577<br><br>Division: 209 |
| **OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING PRO HAC VICE ADMISSION** | |

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, *Nathan J. Moelker* of the Law Firm of *the American Center for Law and Justice, of Washington, D.C.*, moves for pro hac vice admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, *Nathan J. Moelker* states and shows the Court the following:

1. Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2. *Nathan J. Moelker*, of the Law Firm of *the American Center for Law and Justice,* is a member in good standing of the Bar in the State of

*Virginia.*    Nathan J. Moelker is assigned attorney registration or bar admission numbers 98313 in Virginia.

3. *Nathan J. Moelker* has not been licensed in other state jurisdictions.

4. *Nathan J. Moelker* is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

<center>~~or~~</center>

~~_____ [Name of Applicant Attorney] has been publicly disciplined, placed under an order of disability, or has had a request for pro hac vice admission denied or revoked in the following jurisdictions: _____ (state the jurisdiction, the date of transfer to disability, the date of discipline, the date of the denial or revocation, or pro hac vice admission, the nature of the violation and the discipline imposed or the reason for the denial or revocation of pro hac vice admission).~~

5. ~~_____ [Name of Applicant Attorney] has not previously sought pro hac vice admission in Colorado.~~

<center>~~or~~</center>

~~_____ [Name of Applicant Attorney] has been admitted pro hac vice in the following Colorado cases in the preceding five years: _____ (state the date, case name, and case number all other matters in Colorado in which pro hac vice admission has been sought and whether admission was granted or denied).~~

6. *Nathan J. Moelker* acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure and other court rules, and that he has read such rules and will follow such rules.

7. *Michael Melito,* CO Bar No. 36059, is a member in good standing of the Bar of the State of Colorado.

8. *Michael Melito* will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9. The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

***Attorneys for Petitioners***
Eric R. Olson
Sean C. Grimsley
Jason C. Murray
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
303-535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com

Jonathan E. Maier
Nikhel Suresh Sus
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
202-408-5565
jmaier@citizensforethics.org
nsus@citizensforethics.org

Mario Daniel Nicolais, II
KBN Law LLC
7830 West Alameda Avenue, Suite 103-301
Lakewood, CO 80226
720-773-1526
mario@kbnlaw.com

Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, CO 80203
303-356-4870
mtierney@tierneylawrence.com

*Attorneys for Respondent Donald Trump*
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

*Attorneys for Respondent Colorado Secretary of State*
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Nathan J. Moelker* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Nathan J. Moelker*'s qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Nathan J. Moelker* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 14th day of September, 2023.

Nathan J. Moelker
VA Bar. No. 98313
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC

***Attorneys for Respondent Donald Trump***
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

***Attorneys for Respondent Colorado Secretary of State***
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Nathan J. Moelker* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Nathan J. Moelker*'s qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Nathan J. Moelker* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 14ᵗʰ day of September, 2023.

Nathan J. Moelker
VA Bar. No. 98313
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC

1875 Lawrence St., Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission
was sworn to or affirmed and signed by _Michael Melito_ _[Name of
Sponsoring Attorney and Registration No.]_ this _14th_ day of _September_ 2023

_Christa Lundquist_
[Notary Public]

My commission expires: _July 22, 2026_

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission
was sworn to or affirmed and signed by _____
*[Name of Applicant Attorney and Registration No.]* this 1 day of Sept. 2023

_____
*[Notary Public]*

My commission expires: 9/30/2027

```
Kirk Gregory Leeuwrik
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES SEPTEMBER 30, 2027
REGISTRATION NUMBER: 8065867
```

<table>
<tr><td colspan="2">

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

</td></tr>
<tr><td>

**Petitioners:**
NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN


**v.**


**Respondents:**
JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

**and**

**Intervenor:**
COLORADO REPUBLICAN STATE CENTRAL COMMITTEE

</td><td>

**Δ COURT USE ONLY Δ**

Case No.: 2023CV32577

Division: 209

</td></tr>
</table>

DATE FILED: September 21, 2023 1:57 PM
CASE NUMBER: 2023CV32577

## ORDER GRANTING AND DENYING REQUESTS FOR EXPANDED MEDIA COVERAGE

**THIS MATTER** comes before the Court on Requests for Expanded Media Coverage, filed by Lawfare, Courthouse News Service ("Courthouse News"), American Center for Law & Justice ("ACLJ"), The Denver Post, and Associated Press ("AP"). The Court, having reviewed the Requests and otherwise being sufficiently advised, hereby FINDS and ORDERS as follows:

## STANDARDS FOR AUTHORIZING COVERAGE

Pursuant to Chapter 38, Rule 3 of the Colorado Court Rules, the Court may authorize expanded media coverage of Court proceedings subject to certain guidelines.

Chapter 38, Rule 3(a)(1)(E) defines "media" as "any news gathering or reporting agency and the individual persons involved, and includes newspapers, radio, television, radio and television networks, news services, magazines, trade papers, in-house publications, professional journals, or any other news reporting or news gathering agency whose function it is to inform the public or some segment thereof."

Pursuant to Chapter 38, Rule 3(a)(2) of the Colorado Court Rules,

In determining whether expanded media coverage should be permitted, a judge shall consider the following factors:
(A) Whether there is a reasonable likelihood that expanded media coverage would interfere with the rights of the parties to a fair trial;
(B) Whether there is a reasonable likelihood that expanded media coverage would unduly detract from the solemnity, decorum and dignity of the court; and
(C) Whether expanded media coverage would create adverse effects which would be greater than those caused by traditional media coverage.

## ANALYSIS

Lawfare, Courthouse News, The Denver Post, and AP request expanded media coverage of the Status Conference in this case scheduled for September 22, 2023. Lawfare, Courthouse News, The Denver Post, and AP's request is limited to recording the Webex proceedings. The Court finds expanded media coverage is appropriate for Lawfare, Courthouse News, The Denver Post, and AP in this case, so long as they strictly adhere to all the parameters outlined in Chapter 38, Rule 3 of the Colorado Court Rules. The Court expects full compliance with all applicable restrictions and notes this Order authorizes expanded media coverage **only** of the Status Conference scheduled for September 22, 2023 in this case.

In accordance with Chapter 38, Rule 3(a)(4),

A judge may restrict or limit expanded media coverage as may be necessary to preserve the dignity of the court or to protect the parties, witnesses, or jurors. A judge may terminate or suspend expanded media coverage at any time upon making findings of fact that: (1) rules established under this Rule or additional rules imposed by the judge have been violated; or (2) substantial rights of individual participants or rights to a fair trial will be prejudiced by such coverage if it is allowed to continue.

Therefore, the Court may further restrict and/or revoke the expanded media coverage authorized in this case.

ACLJ also requests expanded media coverage of the Status Conference in this case scheduled for September 22, 2023. However, ACLJ does not appear to be "media" as defined by Chapter 38, Rule 3(a)(1)(E) of the Colorado Court Rules. This means they are ineligible for a grant of expanded media coverage in this matter.

Accordingly, the Court hereby **GRANTS** Lawfare, Courthouse News, The Denver Post, and AP's Requests for Expanded Media Coverage of the Status Conference scheduled for September 22, 2023 in this case, subject to the terms and conditions of Chapter 38, Rule 3 of the Colorado Court Rules and this Order. The Court also **DENIES** ACLJ's Request for Expanded Media Coverage for the reasons stated above. The Court will be granting no further requests for expanded media coverage for the September 22, 2023 Status Conference as it is now less than 24 hours before the hearing.

DATED: September 21, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

**Minute Orders**

| | |
|---|---|
| **Case Number:** 2023CV032577 | **Division:** 209 |
| **Case Type:** Injunctive Relief | **Judicial Officer:** Sarah Block Wallace |
| **Case Caption:** Anderson, Norma et al v. Jena Griswold In Her Official Capacity et al | **Court Location:** Denver County - District |

Order Date: 09/22/2023

JUDGE SARAH B. WALLACE. CTRM 209. FTR 9:00. STAT. ATP ERIC OLSON, MARTHA TIERNEY, MARIO NICOLAIS, AND SEAN GRIMSLEY ATD FOR GRISWOLD, MICHAEL KOTLARCZYK; FOR TRUMP, SCOTT GESSLER, GEOFFREY BLUE, AND JUSTIN NORTH; FOR CRSCC, ROBERT KITSMILLER AND MICHAEL MELITO COURT DISCUSSES EXPANDED MEDIA COVERAGE REQUESTS WITH THE PARTIES. COURT SETS ORAL ARGUMENT ON THE SLAPP MOTION FOR 1:30 ON 10/13/2023. COURT ORDERS THAT PTFS DISCLOSE THEIR WITNESS LIST ON 09/29/2023; DEFS SHOULD DISCLOSE THEIR WITNESS LIST ON 10/09/2023; PARTIES HAVE UNTIL 10/23/2023 TO SUPPLEMENT THEIR WITNESS LIST AND PROVIDE A JOINT ORDER OF PROOF. THE ORIGINAL WITNESS LISTS SHOULD PROVIDE ENOUGH DETAIL AS TO WHAT THE WITNESSES WILL TESTIFY TO SO THAT PARTIES CAN MAKE A REQUEST FOR DEPOSITIONS. COURT DENIES REQUEST FOR EXPERT DEPOSITIONS; REPORTS SHOULD BE FULSOME AS EXPERTS WILL NOT BE ALLOWED TO TESTIFY TO ANYTHING OUTSIDE OF THE EXPERT REPORTS. PTFS WILL IDENTIFY EXPERTS AND SUBJECT MATTER BY 09/25/2023; DEFS SHALL IDENTIFY EXPERTS AND SUBJECT MATTER BY 10/13/2023. PTFS WILL PROVIDE EXPERT REPORTS BY 10/06/2023; DEFS SHALL PROVIDE EXPERT REPORTS BY 10/27/2023. PTFS WILL PROVIDE PRELIMINARY EXHIBITS ON 10/06/2023; DEFS WILL PROVIDE PRELIMINARY EXHIBIT LISTS ON 10/16/2023; PARTIES WILL EXCHANGE FINAL EXHIBIT LISTS ON 10/23/2023. PARTIES SHOULD PROVIDE A LIST OF STIPULATED AND A LIST OF NON-STIPULATED EXHIBITS PER PARTY BY 10/23/2023. MOVING PARTY SHOULD PROVIDE THE COURT WITH A COURTESY COPY OF THE MTDS WITH EXHIBITS WHEN THEY ARE FULLY BRIEFED. COURT ORDERS THAT PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW BE FILED BY 11/08/2023. COURT ORDERS THAT A BRIEFING ON THE REMAINING EVIDENTIARY ISSUES BE PROVIDED BY EACH PARTY BY 10/20/2023; RESPONSES DUE BY 10/27/2023. COURT ORDERS THAT 702 MOTIONS BE FILED BY 10/16/2023; RESPONSES DUE BY 10/27/2023. PTFS WILL BE ALLOWED TO MAKE 702 OBJECTIONS AT THE HEARING. COURT DENIES REQUEST FOR AMICUS BRIEFS. COURT ENTERS THE PROTECTIVE ORDER SUBMITTED BY PTFS WITH MODIFICATIONS. /CAS

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock St.
Denver, CO 80203

</td><td>

DATE FILED: September 22, 2023 4:31 PM
CASE NUMBER: 2023CV32577

</td></tr>
<tr><td>

**Petitioners:**
NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN,

**v.**

**Respondents:**
JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and
DONALD J. TRUMP,

**and**

**Intervenor:**
COLORADO REPUBLICAN STATE CENTRAL COMMITTEE.

</td><td>

▲ **COURT USE ONLY** ▲

Case Number: 2023CV032577

Division/Courtroom: 209

</td></tr>
<tr><td colspan="2" align="center">

**PROTECTIVE ORDER**

</td></tr>
</table>

A.      Whereas, Petitioners have brought this lawsuit to prevent the Secretary of State from putting Donald J. Trump on the presidential primary ballot in Colorado because he is not qualified to hold office under Section 3 of the 14th Amendment to the United States Constitution;

B.      Whereas, Respondent Trump, and Intervenor Colorado Republican Party, dispute Petitioners' allegations and oppose the relief sought by Petitioners;

C.      Whereas, this Court intends to conduct these proceedings in an orderly and peaceful manner, with respect for all litigants, witnesses, and counsel, and seeks to ensure that all participants here, including Petitioners, Respondents, Intervenors, their counsel, and all witnesses, can participate freely and without experiencing any threats, harassment, or acts of intimidation.

Therefore, the Court issues the following Order:

1. No party, including counsel for that party, shall take any action against any other party, counsel for such other party, or any witness that could reasonably be construed as a threat, intimidation, or act of harassment intended to coerce, compel, or adversely influence any such party, counsel, or witness from fully and freely participating in these legal proceedings.

2. No party, or counsel for such party, shall engage in any conduct that could reasonably be construed as causing any party, counsel, or witness to, in good faith, fear for their personal safety or the safety of their family.

3. No party, or counsel for such party, may make, issue, or cause to be issued any statement to the media or in public settings, including through social media, that pose a substantial likelihood of material prejudice to this case. This prohibition extends to any party or counsel causing surrogates to make such statements on their behalf.

4. This prohibition prevents no one, or their attorneys or agents from (a) quoting or referring without comment to public records, (b) announcing the scheduling or result of any stage in the judicial process, (c) requesting assistance in obtaining evidence, or (d) announcing without further comment that any party disagrees with the claims made by other parties.

5. To the extent that any party, or counsel for such party, violates this Protective Order by engaging in any conduct described in paragraphs 1-4 above, this Court shall have the power to enter any order that it deems necessary to cure any such violations of this Protective Order, or to prevent any further violations of this Protective Order.

6. This Court's power under paragraph 5, above, shall include, but not be limited to: (1) holding in contempt of court any party or counsel who commit any such violations; (2) ordering the payment of monetary sanctions; (3) imposing evidentiary or issue sanctions; (4) any combination of the above; and (5) any other remedy which is fair, just and appropriate to effectuate the spirit and intent of this Protective Order.

DATED: September 22, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED: October 2, 2023 2:58 PM<br>CASE NUMBER: 2023CV32577 |
| **Plaintiff(s)** NORMA ANDERSON et al.<br>v.<br>**Defendant(s)** JENA GRISWOLD IN HER OFFICIAL CAPACITY et al. | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2023CV32577 |
| | Division: 209          Courtroom: |
| **Order Re Court requests after reviewing pleadings filed on September 29, 2023** | |

The Court is in receipt of Petitioners' responses to the first tranche of Respondent Trump's motions to dismiss as well as Respondent Trump's third motion to dismiss. The Court has the following requests:

(1) Because Respondent previewed his arguments in the third motion to dismiss in his Special Motion to Dismiss, the Petitioners' previewed their responses but "reserve[d] additional arguments for later briefing". It would easiest for the Court if Petitioners respond to all arguments in their response to the third motion to dismiss so the Court has all responsive arguments in one place. This is true even if some of the arguments are duplicated.

(2) The Court requests that Respondent Trump address in his reply in further support of the Special Motion to Dismiss the question of whether the Special Motion to Dismiss is now moot given that the Petitioners have withdrawn their claim for declaratory judgment.

(3) The Court requests that Respondent Trump advise the Court whether he desires to intervene in the C.R.S. Sec. 1-1-113 action. The Court further requests that the Secretary of State and the Colorado Republican Party state their positions on any potential intervention of Respondent Trump.

(4) The Court requests that all Parties submit a short statement as to whether the Court must rule on the C.R.S. Sec. 1-1-113 within 48 hours after the close of the hearing commencing on October 30, 2023. C.R.S.A. Sec. 1-4-501.

Finally, if at any point the Parties believe a status conference is advisable, please contact chambers.

Issue Date:  10/2/2023

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

GRANTED BY COURT
10/03/2023
DATE FILED: October 3, 2023 4:09 PM
CASE NUMBER: 2023CV32577

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

▲ COURT USE ONLY ▲

DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO
1427 Bannock Street, Room 256
Denver, Colorado 80202

**Plaintiff(s):** Anderson, et al.

**Defendant(s):** Griswold, et al.

Applicant Attorney: Andrew J. Ekonomou
Address: 201 Maryland Avenue, NE
Washington, DC, 20002
Phone Number: (202) 546-8890
Fax Number: (202) 546-9309
Email: aekonomou@outlook.com
Atty. Reg. #: GA Bar No. 242750

Sponsoring Attorney: Michael Melito
Address: MELITO LAW, LLC
1875 Lawarence St., Ste. 730
Denver, Colorado 80202
Phone Number: (303) 813-1200
Fax Number:
Email: Melito@melitolaw.com
Atty. Reg. #: CO Bar No. 36059

Case No: 23CV32577

Division: 209

**OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING PRO HAC VICE ADMISSION**

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, *Andrew J. Ekonomou* of the Law Firm of *the American Center for Law and Justice, of Washington, D.C.*, moves for pro hac vice admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, *Andrew J. Ekonomou* states and shows the Court the following:

1. Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2. *Andrew J. Ekonomou*, of the Law Firm of *the American Center for Law and Justice,* is a member in good standing of the Bar in the State of

*Georgia.    Andrew J. Ekonomou* is assigned attorney registration or bar admission number 242750 in Georgia.

3.   _N/A_____ *[Name of Applicant Attorney]* has also been licensed in the following jurisdiction(s): _____ *(States)*, under the following admission number(s) _____.

4.   *Andrew J. Ekonomou* is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar or had any request for pro hac vice admission denied or revoked.

~~or~~

~~_____ *[Name of Applicant Attorney]* has been publicly disciplined, placed under an order of disability, or has had a request for pro hac vice admission denied or revoked in the following jurisdictions: _____ *(state the jurisdiction, the date of transfer to disability, the date of discipline, the date of the denial or revocation, or pro hac vice admission, the nature of the violation and the discipline imposed or the reason for the denial or revocation of pro hac vice admission ).*~~

5.   *Andrew J. Ekonomou* has not previously sought pro hac vice admission in Colorado.

~~or~~

~~_____ *[Name of Applicant Attorney]* has been admitted pro hac vice in the following Colorado cases in the preceding five years: _____ *(state the date, case name, and case number all other matters in Colorado in which pro hac vice admission has been sought and whether admission was granted or denied).*~~

6.   *Andrew J. Ekonomou* acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure and other court rules, and that he has read such rules and will follow such rules.

7.   *Michael Melito,* CO Bar No. 36059, is a member in good standing of the Bar of the State of Colorado.

8.   *Michael Melito* will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9.    The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

***Attorneys for Petitioners***
Eric R. Olson
Sean C. Grimsley
Jason C. Murray
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
303-535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com

Jonathan E. Maier
Nikhel Suresh Sus
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
202-408-5565
jmaier@citizensforethics.org
nsus@citizensforethics.org

Mario Daniel Nicolais, II
KBN Law LLC
7830 West Alameda Avenue, Suite 103-301
Lakewood, CO 80226
720-773-1526
mario@kbnlaw.com

Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, CO 80203
303-356-4870
mtierney@tierneylawrence.com

**Attorneys for Respondent Donald Trump**
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

**Attorneys for Respondent Colorado Secretary of State**
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Andrew J. Ekonomou* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Andrew J. Ekonomou's* qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Andrew J. Ekonomou* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 22nd day of September, 2023.

Andrew J Ekonomou
GA Bar No. 242750
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St., Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice  Admission
was sworn to or affirmed and signed by _Michael Melito_____ *[Name  of
Sponsoring Attorney and Registration No.]* this __27th__ day of _September_, 20_23_

*[Notary Public]*

My commission expires:

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission
was sworn to or affirmed and signed by <u>Andrew J. Ekonomou, GA Bar #242750</u>
this 22nd day of September, 2023.

_____
[Notary Public]

My commission expires: March 16, 2026

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO**<br>1437 Bannock St.<br>Denver, CO 80203 | **GRANTED BY COURT**<br>**10/04/2023**<br>DATE FILED: October 4, 2023 10:57 AM<br>CASE NUMBER: 2023CV32577<br><br>_Sarah B Wallace_<br>**SARAH BLOCK WALLACE**<br>**District Court Judge** |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN,<br><br>v.<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and<br>DONALD J. TRUMP,<br><br>and<br><br>**Intervenor:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE. | |
| | **▲ COURT USE ONLY ▲** |
| | Case Number: 2023CV032577<br><br>Division/Courtroom: 209 |

## PROPOSED ORDER GRANTING PETITIONERS' MOTION FOR LEAVE TO SUPPRESS CERTAIN FILINGS

**THIS MATTER** comes before the Court for ruling on Petitioners' Motion for Leave to Suppress Certain Filings. The Court, having reviewed the motion and associated filings, hereby GRANTS Petitioners' Motion for Leave to Suppress Certain Filings.

All those filings made in this case before the hearing date (currently set for October 30, 2023) that contain the identity of witnesses or sensitive information that could be used to identify witnesses, where they live, or where they work should be filed as suppressed until the parties agree on a redacted version with that information redacted. The parties shall then file the redacted version publicly. Like the earlier protective order, this order is entered so that witnesses can participate freely and without experiencing any threats, harassment, or acts of intimidation.

This order includes Petitioners' Opposition to Respondent Trump's Anti-SLAPP Motion to Dismiss and accompanying exhibits; those filings are to be suppressed.

Entered this _____ day of _____, 2023.

BY THE COURT:

_____

District Court Judge

**GRANTED BY COURT**
**10/05/2023**

DATE FILED: October 5, 2023 10:51 AM
CASE NUMBER: 2023CV32577

*Sarah B Wallace*

**SARAH BLOCK WALLACE**
District Court Judge

| | |
|---|---|
| **DISTRICT COURT**<br>**CITY AND COUNTY OF DENVER,**<br>**COLORADO**<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Phone: (303) 606-2300 | |
| **NORMA ANDERSON, MICHELLE PRIOLA,**<br>**CLAUDINE CMARADA, KRISTA KAFER,**<br>**KATHI WRIGHT,** and **CHRISTOPHER**<br>**CASTILIAN,**<br>　　　　**Petitioners,**<br><br>v.<br><br>**JENA GRISWOLD,** in her official capacity as<br>Colorado Secretary of State, and **DONALD J. TRUMP**<br>　　　　**Respondents**. | **▲ COURT USE ONLY ▲** |
| *Attorneys for Respondent Donald J. Trump:*<br>Scott E. Gessler (28944), sgessler@gesslerblue.com<br>Geoffrey N. Blue (32684), gblue@gesslerblue.com<br>Gessler Blue LLC<br>7350 E. Progress Place, Suite 100<br>Greenwood Village, CO 80111<br>Tel. (720) 839-6637 or (303) 906-1050 | Case Number:<br>2023CV32577<br><br>Division: |
| **PRESIDENT DONALD J. TRUMP'S UNOPPOSED MOTION TO**<br>**INTERVENE** | |

| |
|---|
| **Conferral under C.R.C.P. 121§ 15-8**<br><br>Petitioners do not oppose the relief requested, and undersigned counsel has conferred with counsel for the Colorado Secretary of State, who does not oppose the relief requested. |

Following Petitioners' abandonment of Count II in their claim for relief, as well as their representation that Count I is not brought against Respondent Donald J. Trump, President Trump seeks to intervene in this matter

## I.    President Trump has the right to intervene.

Colorado Rule of Civil Procedure 24 provides that an applicant has the right to intervene when 1) a statute confers on the applicant the right to intervene, or 2) when the applicant has such an interest in the outcome of the proceeding and the proceeding may impair or impede his ability to protect that right and none of the other parties would adequately represent the applicant's interests.[1] Sections 1204 and 113 do not explicitly "confer on the applicant" the right to intervene, so the focus of this motion is on subsection 2.

The Court must grant President Trump's motion if he satisfies three elements: (1) President Trump has a significantly protectable interest relating to the property or transaction that is the subject of the action; (2) President Trump is situated such that the disposition of the action may as a practical matter impair or impede the party's ability to protect that interest; and (3) President Trump's interest is not represented adequately by existing parties.[2] Courts construe Rule 24 liberally "to allow, whenever possible and compatible with efficiency and due process, issues related to the same transaction to be

---

[1] C.R.C.P. 24(a).

[2] *Diamond Lumber, Inc. v. H.C.M.C., Ltd.*, 746 P.2d 76, 78 (Colo. App. 1987) ("All three elements of the rule, i.e., a property interest, an impairment in the ability to protect it, and inadequate representation, must be present in order to intervene.").

resolved in the same lawsuit and at the trial court level."[3] Because the federal intervention rule is identical to Colorado's, Colorado courts look to those rules to aid in determining a motion such as this one.[4] "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention."[5] "The legal concept of intervention is based upon the natural right of a litigant to protect himself from the consequences of an action against one in whose cause he has an interest, or by the result of which he may be bound."[6]

A.    This motion is timely.

Before the Court can review the three elements set forth in *Diamond Lumber*, it must first determine if the motion to intervene is timely.[7] "The determination of the timeliness of a motion to intervene is a matter which rests within the sound discretion of the trial court, which must weigh the lapse of time in light of all the circumstances of the case, including

---

[3] *Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23, 26 (Colo. 2001).

[4] *Warne v. Hall*, 373 P.3d 588, 592 (Colo. 2016) ("[W]e have always considered it preferable to interpret our own rules of civil procedure harmoniously with our understanding of similarly worded federal rules of practice."); *Roosevelt v. Beau Monde Co.*, 384 P.2d 96, 101 (Colo. 1963) ("Rule 24 is a duplicate of the same numbered Federal rule, which rule has been construed in many Federal cases").

[5] *San Juan Cnty. v. United States*, 503 F.3d 1163, 1193 (10th Cir. 2007) (*en banc*).

[6] *Grijalva v. Elkins*, 287 P.2d 970, 972 (Colo. 1955).

[7] *Diamond Lumber, Inc.*, 746 P.2d at 78.

3

whether the applicant was in a position to seek intervention at an earlier stage in the case."[8] There is no doubt that President Trump's motion is timely. First, President Trump was (and currently is) a respondent in this action from the beginning. Petitioners named President Trump in the Petition, and President Trump accepted service. It was not until Petitioners abandoned Count II of their Claim for Relief that President Trump could arguably be considered a non-party.

Second, President Trump, and not the Secretary, has been defending this action since its inception. He removed it to federal court. He disputed Petitioners' efforts to remand the case. He took the lead for Respondents in the two status conferences. He filed three separate motions to dismiss in the past 10 days. By granting this Motion expeditiously, the Court can keep the same schedule it set at those status conferences.

In essence, President Trump intervened within days of Petitioners' initiating this matter. As such he has intervened timely.

B.     President Trump has a legally protectable interest relating to this matter.

The Petitioners seek to affect President Trump's status as a candidate for president. Indeed, it is *only* President Trump who has a legally protectable interest at the heart of this action. The Secretary is merely a nominal defendant in this action. Because the threshold for

---

[8] *Law Offices of Andrew L. Quiat v. Ellithorpe*, 917 P.2d 300, 303 (Colo. App. 1995); *Lattany v. Garcia*, 140 P.3d 348, 350 (Colo. App. 2006).

finding the requisite legally protected interest is not high,[9] it is easy for this Court to find that President Trump has a protectable interest here.

Colorado takes a "flexible approach" to this issue, and "the interest requirement should not be viewed formalistically."[10] The Tenth Circuit has further explained that, "[s]uch impairment or impediment need not be 'of a strictly legal nature,'" and a court "'may consider any significant legal effect in the applicant's interest and [we are] not restricted to a rigid res judicata test.'"[11] "[T]he interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[12]

Petitioners attempt to prevent President Trump for running for President. The right to run for office is a protected First Amendment right under the United States Constitution.[13] Further, Petitioners ask this Court to impose penalties on President Trump

---

[9] *O'Hara Grp. Denver, Ltd. v. Marcor Hous. Sys., Inc.*, 595 P.2d 679, 687 (Colo. 1973) ("The existence of the interest of a proposed intervenor should be determined in a liberal manner").

[10] *Feigin*, 19 P.3d at 29.

[11] *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. U.S. Dep't of Interior*, 100 F.3d 837, 844 (10th Cir. 1996) (quoting *Nat. Res. Def. Council, Inc. v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)).

[12] *O'Hara Grp. Denver, Ltd.*, 595 P.2d at 687 (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969)).

[13] *Ostrowski v. Doe*, 2016 U.S. Dist. LEXIS 28402, No. 3:14-CV-429, *16 (M.D. Pa. March 7, 2016).

for exercising his First Amendment rights. Both of these First Amendment rights are protected and require this Court to grant President Trump's motion to intervene. Even setting aside President Trump's constitutional protections, President Trump certainly meets the lower bar of a "significantly protectable interest" in running for office sufficient to satisfy Colorado's liberal approach to the interest requirement.[14]

C.    <u>Disposition of this matter may adversely impact President Trump's interest in running for President.</u>

The Tenth Circuit has emphasized that "the question of impairment is not separate from the question of existence of an interest."[15] Moreover, "the Rule refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature."[16] "'To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. *This burden is minimal.*'"[17]

Petitioners aim to prevent President Trump from running for President. Without his intervention, it is very likely that President Trump's interest in running for President will be

---

[14] *Donaldson v. United States*, 400 U.S. 517, 531, 91 S. Ct. 534, 27 L. Ed. (1971); *O'Hara Grp.*, 595 P.2d at 687.

[15] *Natural Res. Def. Council v. United States Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978).

[16] *Id.*

[17] *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997)) (emphasis added).

denied. That is quintessentially an impairment of his interest to do so.[18] Accordingly, President Trump meets this "minimal" burden to show that disposition of this matter may adversely affect President Trump's interest to run for President.

> D.    The Secretary is antagonistic to President Trump's interests in this case and will not adequately represent his interests.

"Inadequacy of representation is shown if there is proof of collusion between the representative and an opposing party, if the representative has or represents some interest adverse to that of the petitioner, or fails because of nonfeasance in his duty of representation."[19] "Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate."[20] This minimal burden should be further reduced when it is the government whose ability to adequately represent the potential intervenor's interest is in question.[21] "[A] presumption of adequate representation arises when an applicant for intervention and an existing party have the same ultimate objective in the litigation," but the Tenth Circuit has "held this presumption rebutted by the fact that the public interest the

---

[18] *Feigen*, 19 P.3d at 30 ("An intervenor's interest is impaired if the disposition of the action in which intervention is sought will prevent any future attempts by the applicant to pursue his interest").

[19] *Denver Chapter Colo. Motel Ass'n v. Denver*, 374 P.2d 494, 495-96(Colo. 1962).

[20] *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *See Nat'l Farm Lines v. ICC*, 564 F.2d 381, 383 (10th Cir. 1977).

[21] *See Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1254-55 (10th Cir. 2001).

government is obligated to represent may differ from the would-be intervenor's particular interest."[22]

The Secretary is adverse to President Trump. She has made efforts to appear impartial in this matter, but her own words belie her impartiality. In her well-publicized commentary to national media, the Secretary has not hidden her contempt for President Trump, her belief that he both instigated and engaged in an insurrection on January 6, 2023, and he should be barred from running for re-election. For instance, in her victory speech when she won reelection last year, Secretary Griswold stated that President Trump tried to steal the election, is a liar, and is a threat to our Democracy:

> The former president of the US in his thwarted effort to steal the presidency has opened a new chapter in the history of the United States. The use of conspiracies and lies incited an insurrection at the US Capital in hopes of stopping the peaceful transfer of power on July 6 [sic].[23]

On August 19, 2023, the Secretary stated, "I[i]t's a novel situation, as all of this has been, given the former president tried to steal the 2020 election, and his assault on democracy has not stopped." On September 6, 2023, she issued a press release in which she stated that

---

[22] *Id.* at 1255; *see Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (1972) (holding that a union member's interest was not adequately represented by the Secretary of Labor because the Secretary had a "duty to serve two distinct interests, which are related, but not identical" to that of the individual union member and that of the general public); *Nat'l Farm Lines v. I.C.C.*, 564 F.2d 381, 384 (10th Cir. 1977) ("We have here also the familiar situation in which the governmental agency is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible. The cases correctly hold that this kind of a conflict satisfies the minimal burden of showing inadequacy of representation.").

[23] Secretary Jena Griswold Victory Speech (Nov. 8, 2022), https://www.youtube.com/watch?v=A5nojN1eA-4, last visited Oct. 2, 2023.

President Trump incited "the January 6th insurrection and attempt[ed] to overturn the 2020 Presidential Election."[24]

Also on September 6, Politico published an article in which she is quoted as saying, "This is an unprecedented situation. We've never had a president incite an insurrection and attack our democracy like this."[25] As did Colorado Newsline, with a quote from the Secretary stating, "Look, Donald Trump tried to steal the 2020 election, it was a blatant attack on the United States and the American people. It's a blatant attack on the fundamental right to vote."[26] In other words, the Secretary has taken a strong stand that President Trump 1) incited an insurrection; 2) is disqualified from being President; and 3) is a danger to democracy in the United States.

Furthermore, at every step in the litigation the Secretary has proven herself to be aligned with the Petitioners. For example, she supported Petitioner's *Motion to Remand* this matter to state from federal court, she supports Petitioner's use of Sections 113 and 1204,

---

[24] Ex. A, Press Release (June 6, 2023), https://www.sos.state.co.us/pubs/newsRoom/pressReleases/2023/PR20230906AccessBallot.html, last visited accessed Oct. 2, 2023.

[25] Ex. B, Zach Montellaro, *Constitutional debate over Trump's eligibility to run more extensive than realized*, Politico (Sept. 6, 2023), https://www.politico.com/news/2023/09/06/colorado-14amendment-trump-00114339, last visited Oct. 2, 2023.

[26] Ex. C, Young, Quentin, *Lawsuit seeks to bar Trump from presidential ballot in Colorado,* Colorado NewsLine (Sept. 6, 2023), https://coloradonewsline.com/2023/09/06/lawsuit-bar-trump-colorado/, last visited Oct. 2, 2023.

she has joined Petitioners in opposing discovery, and she has joined Petitioners efforts to dismiss President Trump's *Special Motion to Dismiss*. This, despite her claims that she has not taken a position in the litigation. But even her self-proclaimed non-position in this matter shows that she does not adequately represent President Trump's interest.

## Conclusion

President Trump is entitled to intervene in this matter. This case is about his right to run for President and his right to speak. The Petitioners directly attack those two rights. The Secretary is plainly antagonistic to President Trump and will not adequately represent his interests.

FOR THESE REASONS, the court should grant President Donald J. Trump's Unopposed Motion to Intervene and also grant Donald J. Trump all such further relief as is just, proper or appropriate.

Respectfully submitted this 4th day of October 2023,

GESSLER BLUE LLC

s/ *Geoffrey N. Blue*
Geoffrey N. Blue

s/ *Scott E. Gessler*
Scott E. Gessler

**Certificate of Service**

I certify that on this 4th day of October 2023, the foregoing was electronically served via e-mail or CCES on all parties and their counsel of record.


By: _____*s/ Joanna Bila*_____
    Joanna Bila, Paralegal

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: October 10, 2023 2:30 PM<br>CASE NUMBER: 2023CV32577 |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP<br><br>**and**<br><br>**Intervenors:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |
| **ORDER RE: ANTI-SLAPP EVIDENTIARY ISSUES** | |

This matter is before the Court *sua sponte*.

At the Court's September 22, 2023, hearing the Court specifically ordered the Petitioners to outline why the evidence attached to the anti-SLAPP response was admissible. The Petitioners did just that in Appendix 1. The Court further ordered then-Respondent Donald J. Trump to respond to any evidence attached to the anti-SLAPP response that he believed was inadmissible. Instead, now-Intervenor Trump simply noted in a footnote the following:

> President Trump will be filing, next week, motions *in limine* and Rule 702 motions to prohibit inadmissible evidence that Petitioners seek to introduce. He also will

object at the hearing to the introduction of evidence not addressed in those motions as well. Those are all incorporated herein by reference.

This is not workable. First, the motion *in limine* briefing is meant to cover any evidence that was not used in the anti-SLAPP response. It is not meant to cover evidence that the Petitioners included in their response to the anti-SLAPP motion. This is because the motion *in limine* briefing will not be complete until October 27, 2023, the last business day before the October 30, 2023, hearing. This will not leave the Court ample time to review all the evidentiary issues in this case prior to the October 30, 2023 hearing. Second, the Petitioners have provided Intervenor Trump with information as to why they believe the evidence referenced in their anti-SLAPP response is admissible. Therefore, Petitioners are also entitled to know Intervenor Trump's position on why the evidence is inadmissible by the deadline the Court already provided.

The Court therefore orders Intervenor Trump to respond to Appendix 1 on or before October 13, 2023. The Court further advises that the motions *in limine* should address all foreseeable evidentiary issues other than those related to the anti-SLAPP response. The Court does not intend to address for the first time during the October 30, 2023 hearing evidentiary issues that could been flagged and briefed in advance.

DATED: October 10, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**

1437 Bannock Street
Denver, CO 80202

**Petitioners:**
NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN

**v.**

**Respondents:**
JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

**and**

**Intervenors:**
COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP

</td><td>

DATE FILED: October 11, 2023 4:09 PM
CASE NUMBER: 2023CV32577

**Δ COURT USE ONLY Δ**

Case No.: 2023CV32577

Division: 209

</td></tr>
<tr><td colspan="2">

**ORDER RE: DONALD J. TRUMP'S SPECIAL MOTION TO DISMISS PURSUANT TO C.R.S. § 13-20-1101(3)(a)**

</td></tr>
</table>

This matter comes before the Court on Donald J. Trump's Special Motion to Dismiss brought pursuant to C.R.S. § 13-20-1101.

## I.     **PROCEDURAL BACKGROUND**

1.     On September 6, 2023, Petitioners filed their Verified Petition under C.R.S. §§ 1-4-1204, 1-1-113, 13-51-105 and C.R.C.P. 57(a). Petitioners alleged two claims

1

for relief.  First, they asserted a claim against Respondent Griswold pursuant to C.R.S. § 1-4-1204 and § 1-1-113.  Second, they requested declaratory relief against both Respondent Griswold and then-Respondent Trump.  The declaratory relief requested included a declaration that then-Respondent Trump was not constitutionally eligible for the office of presidency.

2.    On September 22, 2023, then-Respondent Trump filed a Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101(3)(a).  In that motion, then-Respondent Trump argued that "this lawsuit" is subject to Colorado's anti-SLAPP statute because Petitioners' claims all stem from protected speech or the refusal to speak, and that because the speech concerned election fraud and a hard-fought election, they are the epitome of public issues.  Trump further argued that Petitioners were unable to establish a reasonable likelihood of success on their claims.  As a result, argued then-Respondent Trump, the Court must dismiss the claims.

3.    Also on September 22, 2023, then-Respondent Trump separately moved to dismiss Petitioners' claims.  Specifically, Trump argued: (1) Petitioners may not litigate constitutional claims in a C.R.S. § 1-1-113 proceeding; (2) the C.R.S. § 1-4-1204 claim was not ripe; (3) C.R.S. § 1-4-1204 does not provide grounds to use the Fourteenth Amendment to bar candidates; and (4) there is no standing on the declaratory judgment claim because there is no particularized or concrete injury.

4.    On September 29, 2023, the Petitioners responded to then-Respondent Trump's Motion to Dismiss.  In that Response, the Petitioners agreed to dismiss the declaratory judgment claim.

5.      Also on September 29, 2023, the Petitioners responded to then-Respondent Trump's Special Motion to Dismiss.  In that Response, they argued: (1) because Petitioners concede their declaratory judgment claim, Trump does not have standing to bring an anti-SLAPP motion; (2) anti-SLAPP procedures do not apply to a C.R.S. § 1-1-113 proceeding; (3) Petitioners' claim is exempt from the anti-SLAPP statute under the public interest exemption and (4) if the anti-SLAPP procedure applies, there is a reasonable likelihood that the Petitioners will prevail on the claim.

6.      Also on September 29, 2023, Respondent Griswold filed an omnibus response to the motions to dismiss.  In that Response, and relative to then-Respondent Trump's Special Motion to Dismiss, Respondent Griswold argued, in part, the anti-SLAPP motion is incompatible with C.R.S. § 1-1-113 proceedings.

7.      On October 5, 2023, the Court granted Trump's motion to intervene.

8.      On October 6, 2023, the Petitioners filed a stipulation of dismissal of the declaratory judgment claim.

9.      On October 6, 2023, Intervenor Trump filed a reply in further support of his Special Motion to Dismiss.

**II.    LEGAL FRAMEWORK**

**A. The Anti-SLAPP Statute**

In 2019, the Colorado General Assembly enacted C.R.S. § 13-20-1101 (the "Anti-SLAPP Statute").  Given the recent enactment of this statute, appellate courts in Colorado have minimally addressed its application in cases brought within this state.  However, other states—California in particular—have longstanding "anti-SLAPP"

statutes and thus a developed jurisprudence concerning their use.  The Court notes that Colorado's statute is nearly identical to California's statute, except the California statute requires a plaintiff to show a "probability" of prevailing on his or her claim to overcome a special motion to dismiss while Colorado's requires a showing of "a reasonable likelihood" of prevailing.  *Cf.* Cal. Civ. Proc. Code § 425.16.  As such, cases from California appellate courts interpreting their statute are particularly helpful in resolving the present Motion.  *See Stevens v. Mulay*, 2021 WL 1300503, at *4 (D. Colo. Feb. 16, 2021) ("Colorado's anti-SLAPP law is, in fact, copied nearly verbatim from California's anti-SLAPP law . . .  [t]herefore, the Court, as do the parties, primarily looks to California law for persuasive authority as to the interpretation of Colorado's statute, to the extent necessary.").  The Court observes that "anti-SLAPP" statutes "provid[e] a special procedure for striking meritless, chilling causes of action at the earliest possible stages of litigation."  *Lefebvre v. Lefebvre*, 131 Cal.Rptr.3d 171, 174 (Ct. App. 2015).

Anti-SLAPP laws serve a limited purpose—to dismiss frivolous claims targeting constitutional rights.  These laws were enacted specifically to combat "Strategic Lawsuits Against Public Participation" (*i.e.* "SLAPP").  They are intended to enable courts to dismiss frivolous cases brought with the intent to chill a person's constitutional rights.  *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1160 (Cal. 2019).  They provide a procedural mechanism invoked in limited circumstances early in a case for the purpose of dismissing meritless claims; they do not bar meritorious claims.  *See Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016) ("The Anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or

speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.") (emphasis original).

Colorado enacted its anti-SLAPP statute to prevent the "abuse of the judicial process." C.R.S. § 13-20-1101(1)(a).  An additional purpose of the anti-SLAPP statute is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law." C.R.S. § 13-20-1101(1)(b).  However, the statute expressly requires courts to simultaneously "protect the rights of persons to file meritorious lawsuits for demonstrable injury." *Id.*

Under the statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue is subject to a special motion to dismiss . . ." C.R.S. § 13-20-1101(3)(a).  An "act of [a] person in furtherance of [a] person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue" as that phrase is used in the statute shall be referred to herein as a "protected act."  The statute states that protected acts include:

    (I)    Any written or oral statement or writing made before a legislative, executive, or judicial proceeding or any other official proceeding authorized by law;

    (II)    Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body or any other official proceeding authorized by law;

(III)  Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or

(IV)  Any other conduct or communication in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

C.R.S. § 13-20-1101(2)(a).

There are several exemptions to the Colorado anti-SLAPP statute. Relevant to this motion, C.R.S. § 13-20-1101(8)(a) provides, in pertinent part:

This section does not apply to:

(II)  Any action brought solely in the public interest or on behalf of the general public if all of the following conditions exist:

(A) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney fees, costs, or penalties does not constitute greater or different relief for purposes of this subsection (8)(a)(II)(A);

(B) The action, if successful, would enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons; and

(C) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter.

Importantly, C.R.S. § 13-20-1101(9) provides "if any trial court denies a special motion to dismiss on the grounds that the action or cause of action is exempt pursuant to subsection (8) of this section, the appeal provisions in subsection (7) of this section do not apply," meaning there is no right to immediate appeal if one of the exemptions to the anti-SLAPP statute applies.

6

The public interest exemption is, itself, subject to certain exceptions. C.R.S. § 13-20-1101(8)(b) provides that the public interest exemption does not apply to:

(I)     any publisher, editor, reporter, or other person connected with or employed by a newspaper, magazine, or other periodical publication, or by a press association or wire service, or any person who has been so connected or employed; or a radio or television news reporter or other person connected with or employed by a radio or television station, or any person who has been so connected or employed; or any person engaged in the dissemination of ideas or expression in any book or academic journal while engaged in the gathering, receiving, or processing of information for communication to the public; or

(II)    any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including but not limited to a motion picture, television program, or an article published in a newspaper or magazine of general circulation.

A special motion to dismiss requires a reviewing court to engage in a two-step process. First, the moving party must make a prima facie showing that the claim at issue arises from activity protected by the "anti-SLAPP" law. C.R.S. § 13-20- 1101(3)(a); *see also Tamkin v. CBS Broad., Inc.*, 122 Cal.Rptr.3d 264, 271 ( Ct. App. 2011). The moving defendant must then demonstrate that the acts upon which the plaintiff's claim is based were taken in furtherance of the defendant's right of petition or free speech under the federal or state constitution. *Lefebvre*, 131 Cal.Rptr.3d at 174. However, before engaging in the two-step analysis, a court must consider any claims by the plaintiff that a statutory exemption applies. *See San Diegans for Open Government v. Har Construction, Inc.*, 192 Cal.Rptr.3d 559, 567 (Ct. App. 2015).

## B. Election Code

The Colorado Secretary of State is charged with the duty to "supervise the conduct of primary, general, congressional vacancy, and statewide ballot issue elections" and to "enforce the provisions of [the election] code." C.R.S. § 1-1-107. When a dispute regarding the application and enforcement of the Election Code arises, C.R.S. § 1-1-113 is implicated. This statute provides in part:

> (1) When any controversy arises between any official charged with any duty or function under this code and any candidate, or any officers or representatives of a political party, or any persons who have made nominations or when any eligible elector files a verified petition in a district court of competent jurisdiction alleging that a person charged with a duty under this code has committed or is about to commit a breach or neglect of duty or other wrongful act, after notice to the official which includes an opportunity to be heard, upon a finding of good cause, the district court shall issue an order requiring substantial compliance with the provisions of this code. The order shall require the person charged to forthwith perform the duty or to desist from the wrongful act or to forthwith show cause why the order should not be obeyed. The burden of proof is on the petitioner.

CR.S. § 1-1-113 is the "exclusive method for the adjudication of controversies arising from a breach or neglect of duty or other wrongful act that occurs prior to the day of an election." C.R.S. § 1-1-113(4). After the filing of a "verified petition" by a registered elector and "notice to the official which includes an opportunity to be heard," if a court finds good cause to believe that the election official "has committed or is about to commit a breach or neglect of duty or other wrongful act," it "shall issue an order requiring substantial compliance with the provisions of [the Election Code]." C.R.S. § 1-1-113(1).

C.R.S. § 1-4-1204 was added to the Election Code in 2016. Section 1-4-1204(1) provides that "[n]ot later than sixty days before the presidential primary election, the secretary of state shall certify the names and party affiliations of the candidates to be placed on any presidential primary election ballots." Each candidate must be "seeking the nomination for president of a political party as a bona fide candidate for president of the United States pursuant to political party rules and [must be] affiliated with a major political party that received at least twenty percent of the votes cast by eligible electors in Colorado at the last presidential election." C.R.S. § 1-4-1204(1)(b). Section 1-4-1204(4) expressly incorporates section 1-1-113 for challenges "to the listing of any candidate on the presidential primary ballot." Such challenges "must be . . . filed with the district court in accordance with section 1-1-113(1)." C.R.S. § 1-4-1204(4). "Any such challenge must provide notice in a summary manner of an alleged impropriety that gives rise to the complaint."

### III.  <u>ANALYSIS</u>

Petitioners argue that the anti-SLAPP statute does not apply for three reasons: (1) there is no cause of action against Intervenor Trump and he, therefore, lacks standing; (2) this lawsuit falls within the public interest exemption to the anti-SLAPP statute; and (3) the anti-SLAPP statute is incompatible with C.R.S. § 1-1-113 and, therefore, is inapplicable. The Court addresses all three arguments.

### A. Intervenor Trump's Standing Under the Anti-SLAPP Statute

Under the anti-SLAPP statute, **"[a] cause of action against a person** arising from any act of that person in furtherance of the person's right of petition or free speech

under the United States constitution or the state constitution in connection with a public issue is subject to a special motion to dismiss . . ." C.R.S. § 13-20-1101(3)(a) (emphasis added).

In response to then-Respondent Trump's Special Motion to Dismiss, the Petitioners argue that at then-Respondent Trump's behest, they dismissed the declaratory action against him. Since then, Mr. Trump has moved to intervene in the C.R.S. § 1-1-113 claim—which intervention this Court granted. The Petitioners argue that as an intervenor Trump has no standing to invoke the protections of C.R.S. § 13-20-1101(3)(a) because there is no pending "cause of action against him." In support of that argument the Petitioners cite *Found. for Taxpayer & Consumer Rights v. Garamendi*, 34 Cal.Rptr.3d 368, 381 (Ct.. App. 2023). In *Garamendi*, a public interest group filed a petition for writ of mandate and complaint against the Insurance Commissioner to invalidate legislation regulating insurance companies. *Id*. at 371. Although the complaint did not sue Mercury Insurance Group ("Mercury"), the complaint alleged that the challenged legislation was sponsored by Mercury. *Id*. Mercury was permitted to intervene and then filed a special motion to dismiss under California's anti-SLAPP statute. *Id*. at 374. The appellate court rejected Mercury's argument that its status as an intervenor gave it the same right to bring an anti-SLAPP motion as a defendant. *Id*. at 381. Because it was not a defendant and there was therefore no claim against it, there was no right to file a special motion to dismiss. *Id*.

Intervenor Trump argues that *Iloh v. Regents of Univ. of Cal.*, 312 Cal.Rptr.3d 674 (Ct.. App. 2023), not *Garamendi,* governs. There, the California appellate court

10

found that the relevant inquiry was whether the organization seeking anti-SLAPP relief was the real party in interest. *Id*. at 681. In *Iloh*, the plaintiff was a professor at the University of California Irvine ("UCI"). *Id*. at 679. The plaintiff published a series of articles that were subsequently retracted by the entities who had published them. *Id*. The Center for Scientific Integrity ("CSI") filed a records request under California's Public Records Act for all communications between the Plaintiff, UCI and the journals that retracted the articles. *Id*. at 680. The plaintiff filed a petition for writ of mandate, declaratory relief, and injunctive relief against UCI to prevent disclosure of her communications and added CSI as a real party in interest. *Id*. CSI filed an anti-SLAPP motion. *Id*. The plaintiff argued that an anti-SLAPP motion was not available to CSI because it was not a named defendant and because there were no claims asserted against it. *Id*. at 681. The court held that a "real party in interest may bring an anti-SLAPP motion if it has a direct interest in the subject of the mandamus proceeding and will be impacted by the litigation's outcome." *Id*.

The *Iloh* court relied on *Rudisill v. Cal. Coastal Comm'n.*, 247 Cal.Rptr.3d 840 (Ct. App. 2019); in that case, the petitioner sought a writ of mandate against the California Coastal Commission and the City of Los Angeles to compel them to treat a series of proposed projects as a single development project. The property owners were named as real parties in interest by virtue of the fact that they owned the property which was to be affected by the proposed development projects and because it was alleged that they engaged in conduct designed to improperly "piecemeal" the development project proposals. *Id*. at 844. In assessing whether the property developers could maintain an

11

anti-SLAPP motion as persons against whom a claim was asserted, the *Rudisill* court adopted a broad construction of a "claim" under the anti-SLAPP statute, finding that it must merely "amount to a 'cause of action' in the sense that it is alleged to justify a remedy." *Id*. at 846 (internal citation omitted). Further, the *Rudisill* court found that, by virtue of their direct interest in the outcome of the action, the real parties in interest were "persons" against whom a claim was asserted for purposes of the anti-SLAPP statute, in a mandamus claim. *Id*.

*Iloh* and *Rudisill* were actions seeking relief in the nature of mandamus; the petitioners sought a court order directing a government entity to behave in a way that impacted the interests of a third party, thus imbuing that third-party with standing as the real party in interest for purposes of the anti-SLAPP statute. Here, as in *Iloh and Rudisill*, Intervenor Trump is not the named defendant, but clearly has a direct interest in the outcome of the litigation because it will determine whether he may be on the primary presidential ballot in Colorado. The Court accordingly holds *Iloh* and *Rudisill* govern this case and Intervenor Trump's status as an intervenor does not preclude him from filing a Special Motion to Dismiss.

### B. Public Interest Exemption to the Anti-SLAPP Statute

Petitioners argue that even if Intervenor Trump does have standing, the public interest exemption to the anti-SLAPP statute would apply, thus requiring the Court to deny the Special Motion to Dismiss on that basis.

The California Supreme Court counsels that the public interest exemption is to be narrowly construed and applies "only when the entire action is brought in the public

interest." *Simpson Strong-Tie Co., Inc. v. Gore*, 230 P.3d 1117, 1123 (Cal.

2010) (quoting *Club Members for an Honest Election v. Sierra Club*, 196 P.3d 1094,

1096 (Cal. 2008)). The public interest exemption is a threshold issue based on the

nature of the allegations.

  i.  *Petitioners do not seek any relief greater than or different from the relief*
      *sought for the general public.*

The first condition necessary for the public interest exemption to apply is that

"[t]he plaintiff does not seek any relief greater than or different from the relief sought

for the general public or a class of which the plaintiff is a member." C.R.S. § 13-20-

1101(8)(a)(II)(A). Intervenor Trump seems to concede that Petitioners' action meets

this first requirement. *See* Reply, p. 8 ("[C.R.S. § 13-20-1101(8)(a)(II)] sets forth three

criteria, all of which must be met...Petitioners fail to meet the second and third

criteria."). In general, his Reply advances two primary arguments on the public interest

exemption: 1) "Petitioners seek relief that is not to the benefit of the general public;" and

2) "Petitioners are not seeking to enforce an important right." *See* Reply, pp. 8, 10.

These arguments appear to address the second factor. *See* C.R.S. § 13-20-

1101(8)(a)(II)(B) ("The action, if successful, would **enforce an important right**

affecting the public interest and would **confer a significant benefit**...**on the**

**general public**.") (emphasis added).

To the extent Intervenor Trump intended to contest this first prong, the Court

finds that it is met by the Petition. The focus of the inquiry is on the nature and scope of

the relief requested as it relates to the relief that would be afforded to the general public.

In other words, do the Petitioners seek relief "greater than or different from the relief

sought for the general public," or is the relief they seek identical to that sought on behalf of the public.  Having examined the Petition, the Court finds that Petitioners seek no relief from the Court for themselves that is greater than, or different from, the relief which would also flow to the general public.

ii.    *The action, if successful, would enforce an important right affecting the public interest and would confer a significant benefit on the general public.*

The second requirement is that "the action, if successful, would enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons." C.R.S. § 13-20-1101(8)(a)(II)(B).  Courts make this determination by "examining [the] complaint to determine whether [the] lawsuit is of the kind that seeks to vindicate public policy goals."  *Tourgeman v. Nelson & Kennard*, 166 Cal.Rptr.3d 729, 743 (Ct. App. 2014).

Petitioners argue that they have met this second condition by virtue of their action seeking to "vindicate public policy goals"[1] by "ensuring that those who the Constitution forbids from holding office do not appear on the ballot."  Response, pp. 5, 6.  Petitioners also argue that by seeking to bar Intervenor Trump from the ballot, they are ensuring that Colorado voters do not cast a ballot in favor of a candidate who may not be eligible to seek or hold office.  Response, p. 6.

---

[1] Intervenor Trump challenges the facial sufficiency of Petitioners' argument by suggesting that seeking to "vindicate public policy goals" is not the equivalent of seeking to enforce an important public right.  The Court disagrees.  See *Tourgeman*, *supra*.

Intervenor Trump, in turn, first argues that the general public is not benefited because the question of whether he is disqualified under the Fourteenth Amendment is for Congress to decide, not the Secretary of State or the Court.  That argument is putting the cart before the horse as it relates to the public interest exemption.  It would essentially require the Court to decide the merits of the lawsuit when determining whether the public interest exemption applies.  Because this is a threshold issue, the Court holds it would be improper for it to determine whether the Fourteenth Amendment applies to the Election Code.  Indeed, the statute explicitly requires the Court to assume that the action, as contemplated, would be successful when assessing this factor.  The Court therefore assumes, for the purposes of assessing the public interest exemption only, that Intervenor Trump is indeed barred from holding office pursuant to Section Three of the Fourteenth Amendment, and that this is a determination within the capacity of either the Court or the Secretary of State to make.

Intervenor Trump next argues that the relief sought does not benefit the general public because almost fifty percent of the country want Intervenor Trump to be their President.  That argument, however, again presumes that Intervenor Trump is qualified to be the President.  Further, the Court disagrees with Intervenor Trump that the Petitioners' position puts the Court in the position of having to take a political stance.  First, the Court has no difficulty concluding that it is to the benefit of the general public that, regardless of political affiliation, only constitutionally qualified candidates are placed on the ballot.[2]  Second, the Court has no intention to make any decisions in this

---

[2] Again, the Court assumes at this stage for purposes of this analysis, as it must, that Intervenor Trump is constitutionally disqualified from holding office.

matter based on political stances, nor is such required of this Court. The issue before the Court is purely an issue of law and does not turn, in any way, on the identity of the intervenor, or his political opinions. The question before the Court, as to this factor, is simple: would the preclusion of a constitutionally incapable candidate from seeking public office enforce an important right affecting the public interest and confer a significant benefit on the public? The Court, again, has little trouble finding that it would. It goes without saying that, in the abstract, ensuring that only constitutionally qualified candidates can seek to hold the highest office in the country, particularly when the disqualification sought is based on allegations of insurrection against the very government over which the candidate seeks to preside, seeks to enforce an important right which confers a significant benefit to the public. In short, it is in the public's interest that only qualified and faithful candidates be allowed to seek public office. The Court therefore finds that this condition is met by the allegations in the Petition.

      *iii.*    *Private enforcement is necessary and places a disproportionate financial burden on the Petitioners in relation to their stake in the matter.*

Finally, the third condition necessary for the public interest exemption is that "[p]rivate enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." C.R.S. § 13-20-1101(8)(a)(II)(C). Despite stating that Petitioners have not met this condition,[3] Intervenor Trump does not substantively address this element in his Reply. Here, the Secretary of State has made it clear that she does not intend to evaluate whether the Fourteenth Amendment applies to the Election Code or whether Intervenor Trump is

---

[3] *See* Reply, p. 8 ("Petitioners fail to meet the second and third criteria.").

qualified for the ballot under the Fourteenth Amendment.  As a result, the only way this question will be evaluated is if the Court does so, and the only means by which the Court may evaluate such a question is if it is presented to the Court by a private citizen through the costly endeavor of a lawsuit.  California Courts of Appeal have held that if no public entity has sought to enforce the right the plaintiff seeks to vindicate in the lawsuit, "[t]his fact alone is a sufficient basis to conclude the action is 'necessary,' within the meaning of the public interest [exemption]."  *Inland Oversight Comm. v. Cty. of San Bernardino*, 190 Cal.Rptr.3d 884, 887–88 (Ct. App. 2015); *see also Tourgeman*, 166 Cal.Rptr.3d at 744 (citing cases).  As to the relative financial cost, here the Petitioners do not seek any financial benefit from the lawsuit.  As a result, there is clearly a disproportionate financial burden on the Petitioners.  *Tourgeman*, 166 Cal.Rptr.3d at 745.

The Petitioners set forth their bases of why the exceptions to the public interest exemption, outlined in C.R.S. § 13-20-1101(8)(a), do not apply.  Intervenor Trump does not argue that the exceptions to the statutory exemption apply.  As such, the Court declines to consider whether the exceptions to the exemption apply.  For the reasons stated above, the Court finds that the Petition satisfies the requirements of the public interest exemption to the anti-SLAPP statute and therefore the Petition is exempt from application of the anti-SLAPP statute.

### C.  Whether the anti-SLAPP Statute is Compatible with a Claim under C.R.S. § 1-1-113 and C.R.S. § 1-4-1204(4)

C.R.S. § 1-4-1204(4) provides that "any challenge to the listing of any candidate on the presidential primary election ballot must be made in writing and filed with the

district court in accordance with section 1-1-113(1) no later than five days[4] after the filing deadline for candidates." It further requires that a hearing be held within five days of a challenge and that "[t]he district court shall issue findings of fact and conclusions of law no later than forty-eight hours after the hearing." *Id*.

Section 1-1-113(4) states that "[t]he procedure specified in this section shall be the exclusive method for the adjudication of controversies arising from a breach or neglect of duty or other wrongful act that occurs prior to the day of an election." Section 1-1-113(3) provides "[t]he proceedings may be reviewed and finally adjudicated by the supreme court of this state, if either party makes application to the supreme court within three days after the district court proceedings are terminated."

The Colorado Supreme Court in *Frazier v. Williams*, 401 P.3d 541, 544 (Colo. 2017) recognized that "section 1-1-113 is a summary proceeding designed to quickly resolve challenges brought by electors, candidates, and other designated plaintiffs against state election officials prior to election day" and that the proceedings generally move at a "breakneck pace."

Petitioners and Respondent Griswold both argue that the expedited procedures in C.R.S. § 1-1-113 and C.R.S. § 1-4-1204 are incompatible with the anti-SLAPP procedures. An anti-SLAPP motion may be made anytime within the first sixty-three days after service of the Complaint. C.R.S. § 13-20-1101(5). A hearing must be held "not

---

[4] In this case, the Court specifically asked the Parties whether she needed to have a hearing within five days and all Parties stated no. As a result, the Parties waived any statutory requirement for a hearing within five days of the challenge. They requested this so that they had time to properly prepare for a hearing on the merits and engage in motions practice. The Parties have taken advantage of that opportunity and there are currently four dispositive motions before this Court in addition to the anti-SLAPP motion that is the subject of this Order.

more than twenty-eight days after the service of the motion unless the docket conditions of the court require a later hearing." *Id.* Importantly, there is a direct conflict between the appellate procedures in the anti-SLAPP statute and C.R.S. § 1-1-113. The anti-SLAPP statute provides for a right to appeal to the Colorado Court of Appeals after a merits ruling on the anti-SLAPP motion (regardless of whether it is granted or denied), C.R.S. § 13-20-1101(7), whereas C.R.S. § 1-1-113 provides for a direct appeal to the Colorado Supreme Court which must be made within three days of a district court ruling.

The nature of the appellate procedures creates an impasse for the Court. Should the Court decide the merits of the anti-SLAPP motion prior to the merits of the petition, then the matter would be immediately appealable. *See* C.R.S. § 13-20-1101(7). An appeal of a denial of the motion would impose an immediate stay on the matters which were the subject of anti-SLAPP motion. *See Nirschl v. Schiller*, 308 Cal.Rptr.3d 338, 409-10 (Ct. App. 2023). This would prevent this Court from expeditiously resolving the ballot question, undermining the legislative goal of resolving such questions quickly, with certainty, well in advance of the election.

Conversely, if the Court defers ruling on the merits of the anti-SLAPP motion until after it has ruled on the merits of the petition, then the purpose of the anti-SLAPP procedures would go unredeemed. *See NeedBasedApps, LLC v. Robbins Research Int'l, Inc.*, 655 F.App'x. 541, 543 (9th Cir. 2016) (noting that the Ninth Circuit has held that the anti-SLAPP statute functions not only as a defense, but also as an immunity from suit, similar to qualified immunity, such that if a matter is permitted to proceed to trial

the purpose of the protection is "effectively lost"); *see also Muddy Waters, LLC v. Superior Court*, 227 Cal.Rptr.3d 204, 213 (Ct. App. 2021) ("The point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights.").

Thus, if the Court were to attempt to entertain both the merits of the petition and the anti-SLAPP motion, it would be forced to choose between the necessity of an expeditious resolution under C.R.S. § 1-4-1204(4) or the anti-SLAPP statute's goal of avoiding subjecting litigants to the onus of litigation. The Court does not see how it could accomplish both objectives; as such, the statutes are incompatible.

The Petitioners and Respondent Griswold further argue that applying the anti-SLAPP statute to ballot access challenges would not serve the purpose of the anti-SLAPP statute which is meant to "seek an early end to litigation based, essentially, on the assertion that the plaintiff will ultimately, and inevitably, lose." *Salazar v. Public Trust Institute*, 522 P.3d 242, 247 (Colo. App. 2022). According to the Petitioners and Respondent Griswold, that purpose is not needed because a C.R.S. § 1-1-113 proceeding is even more expedited. Further, one goal of the anti-SLAPP statute is to protect the defendant from the cost of expensive discovery, but there is generally no discovery in a C.R.S. § 1-1-113 matter, and the Court denied Intervenor Trump's request for discovery.

Intervenor Trump argues that the legislature could have exempted C.R.S. § 1-1-113 from the anti-SLAPP statute but it did not. He further argues that "there is more than sufficient time for the Court to address the anti-SLAPP Motion and the underlying issues and for the appellate court to review the Court's decisions." While the Court

agrees that the legislature could have explicitly exempted C.R.S. § 1-1-113 from the anti-SLAPP statute, the fact that it did not is not dispositive. No special statutory proceedings are explicitly exempted from the anti-SLAPP statute's application.

Finally, the Court agrees that the purpose of the anti-SLAPP statute is not served in an expedited election ballot proceeding because under the anti-SLAPP statute regime, the Court determines within the first three months of the case whether it can proceed on the merits. Here, the Court intends to issue a decision on the merits in far less time. Further, the Court disagrees with Intervenor Trump's position that there is time for this Court to rule on the substance of an anti-SLAPP motion and for the Court of Appeals to rule on that motion before the scheduled October 30, 2023 hearing on C.R.S. § 1-1-113. Even if this Court issued a ruling on the first business day after the currently scheduled anti-SLAPP hearing (October 16), that would allow for exactly two weeks for the parties to brief the issue to the Court of Appeals and the Court of Appeals to issue an order prior to the October 30, 2023 hearing. For the foregoing reasons, the Court finds that the anti-SLAPP statute is incompatible with C.R.S. §§ 1-1-113 and 1-4-1204(4).

## IV.    CONCLUSION

For the above stated reasons, the Court holds that the anti-SLAPP statute does not apply to this matter and for that reason denies the motion. The Court further holds that the previously scheduled anti-SLAPP hearing set for Friday, October 13, will proceed as a status conference to discuss the status of the case and the upcoming trial on the merits commencing on October 30, 2023.

DATED: October 11, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

## Minute Orders

**Case Number:** 2023CV032577                                     **Division:** 209
**Case Type:** Injunctive Relief                                  **Judicial Officer:** Sarah Block Wallace
**Case Caption:** Anderson, Norma et al v. Jena Griswold In Her   **Court Location:** Denver County - District
                  Official Capacity et al

---

Order Date: 10/13/2023

JUDGE SARAH B. WALLACE. CTRM 209. FTR 1:31. STAT. ATP ERIC OLSON, SEAN GRIMSLEY, JASON MURRAY, AND MARIO NICOLAIS APPEAR IN PERSON. ATD FOR TRUMP, SCOTT GESSLER, GEOFFREY BLUE, AND JUSTIN NORTH; FOR CRSCC, MICHAEL MELITO AND ROBERT KITSMILLER; FOR GRISWOLD, MICHAEL KOTLARCZYK APPEAR IN PERSON. PARTIES SHOULD PROVIDE THE COURT WITH A PROPOSED TRIAL MANAGEMENT ORDER WHICH WILL ADVISE THE COURT AS TO WHAT THE ISSUES TO BE DECIDED AT THE 10/30/2023 HEARING; SHOULD INCLUDE BOTH STIPULATED AND UNSTIPULATED ISSUES; DUE 10/20/2023. COURT WILL ATTEMPT TO ADVISE THE PARTIES OF ISSUES ABOUT WHICH SHE IS INTERESTED IN HEARING EVIDENCE. INTERVENOR TRUMP SHOULD SUPPLY OBJECTIONS TO ANTI-SLAPP EVIDENTIARY ISSUES BY 10/17/2023. COURT GRANTS INTERVENOR TRUMPS REQUEST FOR EXTENSION OF TIME TO FILE REPLY TO HIS MOTION TO DISMISS. COURT GRANTS PETITIONERS REQUEST FOR THE OPPORTUNITY TO FILE REPLY TO INTERVENOR TRUMPS RESPONSE TO EVIDENTIARY ISSUES. COURT ORDERS RESPONSE TO INTERVENOR TRUMPS MOTION FOR ATTORNEYS FEES IS DUE 11/15/2023. COURT ORDERS 35 HOURS OF HEARING TIME WILL BE ALLOTTED FOR THE 10/30/2023 HEARING; WILL BE SPLIT EVENLY BETWEEN PETITIONERS AND INTERVENORS; ANY TIME USED BY RESPONDENT GRISWOLD TO PRESENT A CASE WILL COME OUT OF PETITIONERS TIME. COURT SETS CLOSING ARGUMENTS FOR 3:00 ON 11/15/2023. COURT ORDERS INTERVENOR TRUMP PROVIDE WILL CALL AND MAY CALL WITNESSES WITH DETAILS AS TO WHAT THE WITNESSES MIGHT TESTIFY TO BY 10/16/2023. ***COURT CONDUCTS IN CAMERA CONFERENCE*** COURT ORDERS RESPONSE TO MOTION TO REALIGN BE FILED BY 10/20/2023. /CAS

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

</td><td>

DATE FILED: October 13, 2023 10:54 AM
CASE NUMBER: 2023CV32577

</td></tr>
</table>

| | |
|---|---|
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP<br><br>**and**<br><br>**Intervenor:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |

### ORDER GRANTING REQUESTS FOR EXPANDED MEDIA COVERAGE

    **THIS MATTER** comes before the Court on Requests for Expanded Media Coverage, filed by Lawfare, Cable News Network ("CNN"), Associated Press ("AP"), and The Denver Post.[1] The Court, having reviewed the Requests and otherwise being sufficiently advised, hereby FINDS and ORDERS as follows:

---

[1] The Requests submitted by these organizations were all for coverage of the Oral Argument that was originally set for October 13, 2023 in this case. However, the Court has since vacated the Oral Argument pursuant to the Order issued October 11, 2023. Therefore, the Court is interpreting these Requests as Requests for Expanded Media Coverage of the Status Conference the Court set for October 13, 2023 pursuant to the aforementioned Order.

## STANDARDS FOR AUTHORIZING COVERAGE

Pursuant to Chapter 38, Rule 3(a)(2) of the Colorado Court Rules,

In determining whether expanded media coverage should be permitted, a judge shall consider the following factors:
(A) Whether there is a reasonable likelihood that expanded media coverage would interfere with the rights of the parties to a fair trial;
(B) Whether there is a reasonable likelihood that expanded media coverage would unduly detract from the solemnity, decorum and dignity of the court; and
(C) Whether expanded media coverage would create adverse effects which would be greater than those caused by traditional media coverage.

## ANALYSIS

Lawfare, CNN, AP, and The Denver Post request expanded media coverage of the Status Conference in this case scheduled for October 13, 2023. Lawfare, CNN, AP, and The Denver Post's request is limited to recording the Webex proceedings.  The Court finds expanded media coverage is appropriate for Lawfare, CNN, AP, and The Denver Post in this case, so long as they strictly adhere to all the parameters outlined in Chapter 38, Rule 3 of the Colorado Court Rules. The Court expects full compliance with all applicable restrictions and notes this Order authorizes expanded media coverage **only** of the Status Conference scheduled for October 13, 2023 in this case.

In accordance with Chapter 38, Rule 3(a)(4),

A judge may restrict or limit expanded media coverage as may be necessary to preserve the dignity of the court or to protect the parties, witnesses, or jurors. A judge may terminate or suspend expanded media coverage at any time upon making findings of fact that: (1) rules established under this Rule or additional rules imposed by the judge have been violated; or (2) substantial rights of individual participants or rights to a fair trial will be prejudiced by such coverage if it is allowed to continue.

Therefore, the Court may further restrict and/or revoke the expanded media coverage authorized in this case.

Accordingly, the Court hereby **GRANTS** Lawfare, CNN, AP, and The Denver Post's Requests for Expanded Media Coverage of the Status Conference scheduled for October 13, 2023 in this case, subject to the terms and conditions of Chapter 38, Rule 3 of the Colorado Court Rules and this Order. Service of this Order to the media groups will be made by email to the addresses provided in the requests. The Court will be

granting no further requests for expanded media coverage for the October 13, 2023 Status Conference as it is now less than 24 hours before the hearing.

      DATED: October 13, 2023.

                    BY THE COURT:

                    Sarah B. Wallace
                    District Court Judge

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED: October 17, 2023 1:54 PM<br>CASE NUMBER: 2023CV32577 |
| **Plaintiff(s)** NORMA ANDERSON et al.<br>v.<br>**Defendant(s)** JENA GRISWOLD IN HER OFFICIAL CAPACITY et al. | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2023CV32577 |
| | Division: 209          Courtroom: |
| **Order:Motion for Extension of Time to File 702 Motions Challenging Certain of Petitioners Proposed Expert Witnesses  (Suppressed pursuant to court order dated 10/4/23)** | |

The motion/proposed order attached hereto: ACTION TAKEN.

The Court grants Intervenor Trump's Motion for Extension.

However, the Court requests that Intervenor Trump not repeat the arguments already before the Court in CRSCC's 702 Motion.

In addition, the Court reminds all of the Parties that in trial to the court, questionable expert testimony is more likely to be admitted, with the court assessing its weight and discounting it where appropriate. *People v. Hall*, 496 P.3d 804 (Colo. 2021)("there is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions.").

Issue Date: 10/17/2023

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

| | |
|---|---|
| **DISTRICT COURT**<br>**CITY AND COUNTY OF DENVER,**<br>**COLORADO**<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Phone: (303) 606-2300 | |
| **NORMA ANDERSON, MICHELLE PRIOLA,**<br>**CLAUDINE CMARADA, KRISTA KAFER,**<br>**KATHI WRIGHT,** and **CHRISTOPHER**<br>**CASTILIAN**,<br>　　　　**Petitioners**,<br><br>v.<br><br>**JENA GRISWOLD,** in her official capacity as<br>Colorado Secretary of State, and **DONALD J. TRUMP**<br>　　　　**Respondents**.<br><br>and<br><br>**COLORADO REPUBLICAN STATE CENTRAL**<br>**COMMITTEE,** an unincorporated association, and<br>**DONALD J. TRUMP,**<br>　　　　**Intervenors**. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Respondent Donald J. Trump:*<br>Scott E. Gessler (28944), sgessler@gesslerblue.com<br>Geoffrey N. Blue (32684), gblue@gesslerblue.com<br>Gessler Blue LLC<br>7350 E. Progress Place, Suite 100<br>Greenwood Village, CO 80111<br>Tel. (720) 839-6637 or (303) 906-1050 | Case Number:<br>2023CV32577<br><br>Division: |
| **Motion for Extension of Time to File 702 Motions Challenging Certain of**<br>**Petitioners' Proposed Expert Witnesses** | |

<div style="border: 1px solid black; padding: 10px;">

**Conferral under C.R.C.P. 121 § 15-8**

Undersigned counsel has conferred with Petitioners' counsel who opposes the relief requested in this Motion, and counsel for the Secretary of State, who does not oppose the relief requested.

</div>

1.      As ordered by the Court, Petitioners provided their expert reports to President Trump and the other parties on October 6, 2023.

2.      Petitioners' expert reports total a whopping 184 pages and contain citation or reference to an astounding 266 additional documentary sources of evidence that constitute thousands, if not tens of thousands, of pages of material. While Intervenor offered to, and did, draft a Rule 702 Motion to exclude Gerard Magliocca, which will be filed today, this still left motions challenging both William Banks and Peter Simi.  Professor Simi's report itself is 46 pages long, with an additional five pages of references–all of which must be reviewed.

3.      This Court ordered President Trump to file "702 motions…by 10/16/2023."

4.      Undersigned counsel agreed with this timeline, under the assumption that all parties' briefings would be reasonably concise and near or below the Court's preferences for 20-page motions and responses.

5.      However, as noted in President Trump's request for an extension to file a reply brief in support of his third motion to dismiss, Petitioners filed their *Petitioners' Opposition to Intervenor Trump's Third Motion to Dismiss* ("*Response*") on October 6, 2023. The *Response* was 50 pages long and consisted of 14,949 words (excluding the caption) and 50 exhibits – making it more than 50% larger than the word limit for a full appellate brief.

6.     Because of the extreme length of Petitioners' *Response*, President Trump sought – and was granted – an extension to file his *Reply,* changing the *Reply's* due date one business day, from Friday, October 13, to Monday, October 16, at 5:00 p.m.

7.     Also, due today are President Trump's exhibit list and supplemental witness list.

8.     President Trump's counsel spent the additional weekend days and one business day fully addressing the unexpectedly lengthy *Response* filed by Petitioners.

9.     Because President Trump's counsel spent additional time addressing Petitioners' *Response*, they were unable to adequately address the expert reports of both William Banks and Peters Simi.

10.    Accordingly, President Trump is seeking a two-day extension, through and including Wednesday, October 18, 2023, to file his Rule 702 Motions seeking to exclude the testimony of William Banks and Peter Simi.  Intervenor Colorado Republican Party Central Committee joins in this motion.

11.    Petitioners' deadline to file responses to these motions is Friday, October 27. A short delay of 48 hours, until Wednesday, October 16, 2023, will not prejudice them, considering they will still have nine days to respond.

12.    These lengthy reports highlight the unreasonably compressed timeframe to litigate these complex issues, to which President Trump has continually objected.

13.    As required by C.R.C.P. 121 Sec. 1-11, the undersigned counsel has served a copy of this *Motion* upon his client.

FOR THESE REASONS, the court should GRANT this motion and extend President Trump's deadline to file 702 Motions challenging Petitioners' expert witnesses William Banks and Peter Simi through and including Wednesday, October 18, 2023, and also grant Trump all such further relief as is just, proper or appropriate.

Respectfully submitted this 16th day of October 2023,

GESSLER BLUE LLC

_____s/ Geoffrey N. Blue_____
Geoffrey N. Blue

**Certificate of Service**

I certify that on this 12th day of October 2023, the foregoing was electronically served via e-mail or CCES on all parties and their counsel of record:

By: _____s/ Geoffrey N. Blue_____
Geoffrey N. Blue

4

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED: October 17, 2023 1:54 PM<br>CASE NUMBER: 2023CV32577 |
| **Plaintiff(s)** NORMA ANDERSON et al.<br>v.<br>**Defendant(s)** JENA GRISWOLD IN HER OFFICIAL CAPACITY et al. | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2023CV32577 |
| | Division: 209          Courtroom: |
| **Order:Motion for Extension of Time to File 702 Motions Challenging Certain of Petitioners Proposed Expert Witnesses  (Suppressed pursuant to court order dated 10/4/23)** | |

The motion/proposed order attached hereto: ACTION TAKEN.

The Court grants Intervenor Trump's Motion for Extension.

However, the Court requests that Intervenor Trump not repeat the arguments already before the Court in CRSCC's 702 Motion.

In addition, the Court reminds all of the Parties that in trial to the court, questionable expert testimony is more likely to be admitted, with the court assessing its weight and discounting it where appropriate. *People v. Hall*, 496 P.3d 804 (Colo. 2021)("there is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions.").

Issue Date:  10/17/2023

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

| | |
|---|---|
| **DISTRICT COURT**<br>**CITY AND COUNTY OF DENVER,**<br>**COLORADO**<br>1437 Bannock Street, Room 256<br>Denver, CO  80202<br>Phone: (303) 606-2300 | |
| **NORMA ANDERSON, MICHELLE PRIOLA,**<br>**CLAUDINE CMARADA, KRISTA KAFER,**<br>**KATHI WRIGHT,** and **CHRISTOPHER**<br>**CASTILIAN**,<br>　　　**Petitioners**,<br><br>v.<br><br>**JENA GRISWOLD,** in her official capacity as<br>Colorado Secretary of State, and **DONALD J. TRUMP**<br>　　　**Respondents**.<br><br>and<br><br>**COLORADO REPUBLICAN STATE CENTRAL**<br>**COMMITTEE,** an unincorporated association, and<br>**DONALD J. TRUMP,**<br>　　　**Intervenors**. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Respondent Donald J. Trump:*<br>Scott E. Gessler (28944), sgessler@gesslerblue.com<br>Geoffrey N. Blue (32684), gblue@gesslerblue.com<br>Gessler Blue LLC<br>7350 E. Progress Place, Suite 100<br>Greenwood Village, CO  80111<br>Tel. (720) 839-6637 or (303) 906-1050 | Case Number:<br>2023CV32577<br><br>Division: |
| **Motion for Extension of Time to File 702 Motions Challenging Certain of**<br>**Petitioners' Proposed Expert Witnesses** | |

---

**Conferral under C.R.C.P. 121 § 15-8**

Undersigned counsel has conferred with Petitioners' counsel who opposes the relief requested in this Motion, and counsel for the Secretary of State, who does not oppose the relief requested.

---

1.      As ordered by the Court, Petitioners provided their expert reports to President Trump and the other parties on October 6, 2023.

2.      Petitioners' expert reports total a whopping 184 pages and contain citation or reference to an astounding 266 additional documentary sources of evidence that constitute thousands, if not tens of thousands, of pages of material. While Intervenor offered to, and did, draft a Rule 702 Motion to exclude Gerard Magliocca, which will be filed today, this still left motions challenging both William Banks and Peter Simi.  Professor Simi's report itself is 46 pages long, with an additional five pages of references—all of which must be reviewed.

3.      This Court ordered President Trump to file "702 motions…by 10/16/2023."

4.      Undersigned counsel agreed with this timeline, under the assumption that all parties' briefings would be reasonably concise and near or below the Court's preferences for 20-page motions and responses.

5.      However, as noted in President Trump's request for an extension to file a reply brief in support of his third motion to dismiss, Petitioners filed their *Petitioners' Opposition to Intervenor Trump's Third Motion to Dismiss* ("*Response*") on October 6, 2023. The *Response* was 50 pages long and consisted of 14,949 words (excluding the caption) and 50 exhibits – making it more than 50% larger than the word limit for a full appellate brief.

2

6.      Because of the extreme length of Petitioners' *Response*, President Trump

sought – and was granted – an extension to file his *Reply,* changing the *Reply's* due date one

business day, from Friday, October 13, to Monday, October 16, at 5:00 p.m.

7.      Also, due today are President Trump's exhibit list and supplemental witness

list.

8.      President Trump's counsel spent the additional weekend days and one

business day fully addressing the unexpectedly lengthy *Response* filed by Petitioners.

9.      Because President Trump's counsel spent additional time addressing

Petitioners' *Response*, they were unable to adequately address the expert reports of both

William Banks and Peters Simi.

10.     Accordingly, President Trump is seeking a two-day extension, through and

including Wednesday, October 18, 2023, to file his Rule 702 Motions seeking to exclude the

testimony of William Banks and Peter Simi.  Intervenor Colorado Republican Party Central

Committee joins in this motion.

11.     Petitioners' deadline to file responses to these motions is Friday, October 27.

A short delay of 48 hours, until Wednesday, October 16, 2023, will not prejudice them,

considering they will still have nine days to respond.

12.     These lengthy reports highlight the unreasonably compressed timeframe to

litigate these complex issues, to which President Trump has continually objected.

13.     As required by C.R.C.P. 121 Sec. 1-11, the undersigned counsel has served a

copy of this *Motion* upon his client.

3

FOR THESE REASONS, the court should GRANT this motion and extend

President Trump's deadline to file 702 Motions challenging Petitioners' expert witnesses

William Banks and Peter Simi through and including Wednesday, October 18, 2023, and also

grant Trump all such further relief as is just, proper or appropriate.

Respectfully submitted this 16th day of October 2023,

GESSLER BLUE LLC

s/ Geoffrey N. Blue
Geoffrey N. Blue

**Certificate of Service**

I certify that on this 12th day of October 2023, the foregoing was electronically served
via e-mail or CCES on all parties and their counsel of record:

By:     s/ Geoffrey N. Blue
Geoffrey N. Blue

4

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1427 Bannock Street, Room 256<br>Denver, Colorado 80202<br>Phone: (303) 606-2300 | **GRANTED BY COURT**<br>**10/17/2023**<br>DATE FILED: October 17, 2023 1:57 PM<br>CASE NUMBER: 2023CV32577<br><br>*Sarah B Wallace*<br>**SARAH BLOCK WALLACE**<br>District Court Judge |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>v.<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State,<br><br>And<br><br>**Intervenors:**<br>DONALD TRUMP and COLORADO REPUBLICAN STATE CENTRAL COMMITTEE, an unincorporated association | ▲ COURT USE ONLY ▲ |
| ***Attorneys for Intervenor:***<br>Michael Melito, CO Reg. #36059<br>MELITO LAW LLC<br>1875 Lawrence St., Suite 730<br>Denver, Colorado 80202<br>Phone: (303) 813-1200<br>Email: Melito@melitolaw.com<br><br>Robert Kitsmiller, Esq., Atty. Reg. #16927<br>PODOLL & PODOLL, P.C.<br>5619 DTC Parkway, Suite 1100<br>Greenwood Village, CO 80111<br>Tel: (303) 861-4000<br>Fax: (303) 861-4004<br>bob@podoll.net | Case No: 23CV32577<br><br>Division: 209 |

| |
|---|
| **MOTION TO SEAL** |

Movant, the Colorado Republican Committee, hereby submits this Motion to Seal.

On October 16, 2023 the intervenor filed a Rule 702 motion to exclude the testimony of

Petitioner's expert witness, which was then later accepted on October 17, 2023 under a suppressed

status.  Despite being in a suppressed status that document (filing ID 1561669DC158), contains

the name of the expert witness in the document title of the motion.

In order to comply with the Court's protective order, there exists a need to seal the title and

the document itself.

Wherefore, the Intervenor Colorado Republican Committee requests its previously filed

Rule 702 Motion (filing ID 1561669DC158) and its title be sealed.


Respectfully submitted,

/s/ *Michael Melito*
MICHAEL MELITO (CO Bar No. 36059)          JAY ALAN SEKULOW*
MELITO LAW, LLC                            (D.C. Bar No. 496335)
1875 Lawrence St., Ste. 730               JORDAN SEKULOW*
Denver, Colorado 80202                     (D.C. Bar No. 991680)
Telephone: 303-813-1200                   STUART J. ROTH**
Email: Melito@melitolaw.com                (D.C. Bar No. 475937)
                                          ANDREW J. EKONOMOU**
                                           (GA Bar No. 242750)
Robert A. Kitsmiller (CO Bar. No. 16927)   JANE SERENE RASKIN**
Podoll & Podoll, P.C.                       (FL Bar # 848689)
5619 DTC Parkway, Suite 1100              BENJAMIN P. SISNEY*
Greenwood Village, Colorado 80111          (D.C. Bar No. 1044721)
Telephone: (303) 861-4000                 NATHAN MOELKER*
Email: bob@podoll.net                       (VA Bar No. 98313)
                                          AMERICAN CENTER FOR LAW AND JUSTICE
**Counsel for Intervenor**                 201 Maryland Avenue, NE
                                          Washington, D.C.  20002
                                          Telephone: (202) 546-8890
                                          Facsimile: (202) 546-9309
                                          Email: bsisney@aclj.org


*Admitted pro hac vice
**Not admitted in this jurisdiction; application for pro hac vice admission forthcoming

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 17, 2023, a true and correct copy of the foregoing was served electronically, via the Colorado Courts E-filing system upon all parties and their counsel of record.

By: _____*s/Michael W. Melito*_____

**Minute Orders**

**Case Number:** 2023CV032577

**Case Type:** Injunctive Relief

**Case Caption:** Anderson, Norma et al v. Jena Griswold In Her
Official Capacity et al

**Division:** 209

**Judicial Officer:** Sarah Block Wallace

**Court Location:** Denver County - District

Order Date: 10/18/2023

FTR TRANSCRIPT REQUEST RECIEVED FROM JOANNA BILA (GESSLER BLUE LLC). FOR HEARINGS IN COURTROOM 209 ON
9/18/23 (ENTIRE HEARING), 9/22/23 (09:00:58 AM-10:30:29 AM), AND 10/18/23 (ENTIRE HEARING). REQUEST SENT TO VERBATIM,
REQUEST IS EXPEDITED. /CF

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

<br>

**Petitioners:**
NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN

<br>

**v.**

<br>

**Respondents:**
JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

**and**

**Intervenors:**
COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP

</td><td>

DATE FILED: October 20, 2023 3:32 PM
CASE NUMBER: 2023CV32577

<br><br>

**Δ COURT USE ONLY Δ**

Case No.: 2023CV32577

Division: 209

</td></tr>
</table>

**OMNIBUS RULING ON PENDING DISPOSITIVE MOTIONS**

This matter comes before the Court on Donald J. Trump's Motion to Dismiss, filed September 22, 2023; Colorado Republican State Central Committee's Motion to Dismiss Pursuant to Colorado Rule of Civil Procedure 12(b)(5), filed September 22, 2023; Petitioners' Motion to Dismiss Intervenor's First Claim for Relief under C.R.C.P. 12(b)(1), filed September 22, 2023; and Colorado Republican State Central Committee's Motion for Judgment on the Pleadings Under Rule 12/Judgment as a Matter of Law

1

Under Rule 56, filed September 29, 2023. Having considered the parties' briefing, the relevant legal authorities cited, and being otherwise familiar with the record in this case, the Court FINDS and ORDERS as follows:

## I.  PROCEDURAL BACKGROUND

1.    On September 6, 2023, Petitioners filed their Verified Petition under C.R.S. §§ 1-4-1204, 1-1-113, 13-51-105 and C.R.C.P. 57(a). Petitioners alleged two claims for relief.  First, they asserted a claim against Respondent Jena Griswold pursuant to C.R.S. § 1-4-1204 and § 1-1-113.  Second, they requested declaratory relief against both Respondent Griswold and then-Respondent Donald J. Trump.  The declaratory relief requested included a declaration that then-Respondent Trump was not constitutionally eligible for the office of the presidency.

2.    On September 22, 2023, then-Respondent Trump filed a Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101(3)(a) ("Trump Anti-SLAPP Motion").  In that motion, then-Respondent Trump argued that "this lawsuit" is subject to Colorado's anti-SLAPP statute because Petitioners' claims all stem from protected speech or the refusal to speak, and that because the speech concerned election fraud and a hard-fought election, they are the epitome of public issues.  Then-Respondent Trump further argued that Petitioners were unable to establish a reasonable likelihood of success on their claims.  As a result, argued then-Respondent Trump, the Court must dismiss the claims.

3.    Also on September 22, 2023, then-Respondent Trump separately moved to dismiss Petitioners' claims ("Trump Procedural Motion to Dismiss").  Specifically, Trump argued: (1) Petitioners may not litigate constitutional claims in a C.R.S. § 1-1-113

proceeding; (2) the C.R.S. § 1-4-1204 claim was not ripe; (3) C.R.S. § 1-4-1204 does not

provide grounds to use the Fourteenth Amendment to bar candidates; and (4) there is

no standing on the declaratory judgment claim because there is no particularized or

concrete injury.

4.      Also, on September 22, 2023, Intervenor Colorado Republican State

Central Committee ("CRSCC") filed a Motion to Dismiss Pursuant to Colorado Rule of

Civil Procedure 12(b)(5) ("CRSCC Motion to Dismiss").  In that motion, CRSCC argued:

(1) the Petition infringes on CRSCC's first amendment rights; (2) Secretary Griswold's

role in enforcing C.R.S.  § 1-4-1204 is ministerial; and (3) the C.R.S.  § 1-4-1204 claim is

not ripe.  The motion also previewed additional arguments that Intervenor Trump made

in a subsequent motion to dismiss on whether the 14th Amendment can be used to keep

Intervenor Trump off the ballot.

5.      Finally, also on September 22, 2023, Petitioners moved to dismiss

Intervenor's First Claim for relief ("Petitioners' Motion to Dismiss").  The Petitioners

argued that the CRSCC's First Claim for Relief was inappropriate in a C.R.S. § 1-1-113

proceeding because it is a constitutional challenge to the election code.

6.      On September 29, 2023, the Petitioners responded to then-Respondent

Trump's Motion to Dismiss.  In that Response, the Petitioners agreed to dismiss their

declaratory judgment claim.  The Court has since dismissed that claim.

7.      On September 29, 2023, Intervenor Trump filed an additional motion to

dismiss. This motion to dismiss addresses various constitutional arguments regarding

why the Petitioners' Fourteenth Amendment arguments fail ("14th Amendment Motion

to Dismiss").  In that motion, Intervenor Trump argues: (1) this case presents a nonjusticiable political question; (2) Section 3 of the Fourteenth Amendment is not self-executing; (3) Congress has preempted states from judging presidential qualifications; (4) Section 3 does not apply to Intervenor Trump; (5) Petitioners fail to allege that Intervenor Trump "engaged" in an "insurrection"; and (6) this is an inconvenient forum under C.R.S. § 13-20-1004.

8.     Finally, on September 29, 2023, CRSCC filed a motion for Judgment on the Pleadings under Rule 12/Judgment as a Matter of Law Under Rule 56 ("CRSCC Motion for Judgment").  This motion essentially argues that this Court should grant all the relief CRSCC requested in its Petition based on the Petition alone.  This includes its requests that this Court declare: (1) the relief Petitioners' request is a violation of their First Amendment rights; (2) Respondent Griswold does not have authority to preclude the placement of Intervenor Trump on Colorado's ballot pursuant to the Fourteenth Amendment; and (3) only the CRSCC has the authority to determine who is on Colorado's ballot.

9.     On October 11, 2023, the Court denied Intervenor Trump's anti-SLAPP Motion.

## II.    LEGAL STANDARD

A complaint must state a plausible claim for relief to survive a C.R.C.P. 12(b)(5) motion to dismiss. *Warne v. Hall*, 373 P.3d 588, 591 (Colo. 2016). However, motions to dismiss are disfavored, and may be granted only when, assuming all the allegations of the complaint are true, and drawing all reasonable inferences in favor of the plaintiff, the

plaintiff would still not be entitled to any relief under any cognizable legal theory.

*Colorado Ethics Watch v. Senate Majority Fund, LLC*, 269 P.3d 1248, 1253 (Colo. 2012);

*Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011). Although a complaint need

not contain detailed factual allegations, a plaintiff must identify the grounds on which he

is entitled to relief, and cannot simply provide "labels and conclusions, and a formulaic

recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007). A complaint is insufficient if it provides only bald assertions without

further factual enhancement. *Id.* at 557.

Whether a claim is stated must be determined solely from the complaint. *Dunlap v.

Colorado Springs Cablevision, Inc.*, 829 P.2d 1286, 1290 (Colo. 1992). A court may

consider only the facts alleged in the pleadings, as well as "documents attached as exhibits

or incorporated by reference, and matters proper for judicial notice." *Denver Post*, 255

P.3d at 1088.

A motion to dismiss under C.R.C.P. 12(b)(1) challenges a court's subject matter

jurisdiction and may be raised at any time in the proceeding. "Subject matter

jurisdiction concerns the court's authority to deal with the class of cases in which it

renders judgment." *In re Marriage of Stroud*, 631 P.2d 168, 170 (Colo. 1981). In

determining whether a court has subject matter jurisdiction, reference must be made to

the nature of the claim (the facts alleged) and the relief sought. *In re Water Rights of

Columbine Ass'n*, 993 P.2d 483, 488 (Colo. 2000); *Currier v. Sutherland*, 215 P.3d 1155,

1160 (Colo. App. 2008).

Standing is a prerequisite to establishing subject matter jurisdiction that can be raised at any time during the proceedings and must be determined prior to a determination on the merits. *Hickenlooper v. Freedom from Religion Found., Inc.*, 338 P.3d 1002, 1006 (Colo. 2014). A plaintiff bears the burden of proving a court has subject matter jurisdiction when such jurisdiction is challenged, but a "court may consider evidence outside of the complaint when necessary to resolve the issue." *City of Boulder v. Pub. Serv. Co. of Colorado*, 996 P.2d 198, 203 (Colo. App. 1999). If a plaintiff cannot establish the trial court has subject matter jurisdiction or the court has no power to hear the case, the court must dismiss the action. *See* C.R.C.P. 12(h)(3).

### III.    LEGAL FRAMEWORK

The Colorado Secretary of State is charged with the duty to "supervise the conduct of primary, general, congressional vacancy, and statewide ballot issue elections" and to "enforce the provisions of [the election] code." C.R.S. § 1-1-107(1). When a dispute regarding the application and enforcement of the Election Code arises, C.R.S. § 1-1-113 is implicated. This statute provides in part:

> (1) When any controversy arises between any official charged with any duty or function under this code and any candidate, or any officers or representatives of a political party, or any persons who have made nominations or when any eligible elector files a verified petition in a district court of competent jurisdiction alleging that a person charged with a duty under this code has committed or is about to commit a breach or neglect of duty or other wrongful act, after notice to the official which includes an opportunity to be heard, upon a finding of good cause, the district court shall issue an order requiring substantial compliance with the provisions of this code. The order shall require the person charged to forthwith perform the duty or to desist from the wrongful act or to forthwith show cause why the order should not be obeyed. The burden of proof is on the petitioner.

6

CR.S. § 1-1-113 is the "exclusive method for the adjudication of controversies arising from a breach or neglect of duty or other wrongful act that occurs prior to the day of an election." C.R.S. § 1-1-113(4). After the filing of a "verified petition" by a registered elector and "notice to the official which includes an opportunity to be heard," if a court finds good cause to believe that the election official "has committed or is about to commit a breach or neglect of duty or other wrongful act," it "shall issue an order requiring substantial compliance with the provisions of [the Election Code]." C.R.S. § 1-1-113(1).

C.R.S. § 1-4-1204 was added to the Election Code in 2016. Section 1-4-1204(1) provides that "[n]ot later than sixty days before the presidential primary election, the secretary of state shall certify the names and party affiliations of the candidates to be placed on any presidential primary election ballots." Each candidate must be:

> seeking the nomination for president of a political party as a bona fide candidate for president of the United States pursuant to political party rules and [must be] affiliated with a major political party that received at least twenty percent of the votes cast by eligible electors in Colorado at the last presidential election.

C.R.S. § 1-4-1204(1)(b). Section 1-4-1204(4) expressly incorporates section 1-1-113 for "any challenge to the listing of any candidate on the presidential primary election ballot." Such challenges "must be . . . filed with the district court in accordance with section 1-1-113(1)." C.R.S. § 1-4-1204(4). "Any such challenge must provide notice in a summary manner of an alleged impropriety that gives rise to the complaint." C.R.S. § 1-4-1204(4).

IV.    **LEGAL ANALYSIS**

    **A. Trump Procedural Motion to Dismiss**

    Intervenor Trump makes the following arguments in the Trump Procedural

Motion to Dismiss: (1) Petitioners cannot litigate a constitutional claim in a C.R.S. § 1-1-

113 proceeding; (2) under the plain language of C.R.S. § 1-4-1204, Petitioners cannot

properly state a claim; (3) Petitioners don't have standing to seek relief under the

Fourteenth Amendment in their claim for declaratory relief.

    The Petitioners dismissed their claim for declaratory relief, so Intervenor

Trump's third argument is moot.

        **1.    Litigating a Constitutional Claim in a C.R.S. § 1-1-113
            Proceeding**

    Intervenor Trump argues this Court must dismiss this proceeding because C.R.S.

§ 1-1-113 proceedings are limited to addressing wrongful acts under the Colorado

Election Code and this case is about whether Intervenor Trump is disqualified under the

Fourteenth Amendment's disqualification clause. In support of that argument,

Intervenor Trump cites *Frazier v. Williams*, 401 P.3d 541, 547 (Colo. 2017).  There, a

candidate for the Republican primary ballot for the U.S. Senate initiated a C.R.S. § 1-1-

113 proceeding after then-Secretary Williams determined he had not gathered sufficient

signatures to appear on the ballot.  *Id.* at 542-43.  He simultaneously brought a 42

U.S.C. § 1983 claim arguing that Colorado statutes that prevented non-residents from

collecting signatures violated the First Amendment.  *Id.* at 543.  The Colorado Supreme

Court dismissed the 42 U.S.C. § 1983 claim, holding that the language of C.R.S. § 1-1-113

limits the claims that can be brought thereunder to "those alleging a breach or neglect of

8

duty or other wrongful act under the Colorado Election Code." *Id.* In rejecting Frazier's argument that the statute's reference to "other wrongful act[s]" expanded the scope of the provision to include claims such as those brought pursuant to section 1983, the Supreme Court noted: (1) such a myopic reading is disconnected from the context of the statute (*i.e.* when the statute references "other wrongful act[s]," it is referring to other wrongful acts under the Election Code); (2) C.R.S. § 1-1-113 provides for only one remedy: an order compelling substantial compliance with the Election Code, which is incompatible with the relief requested under the section 1983 claim; and (3) further inconsistencies between C.R.S. § 1-1-113, such as the limitation on appellate review and the limitation on proper plaintiffs under C.R.S. § 1-1-113, directly conflict with the provisions of section 1983, and such a reading would cause C.R.S. § 1-1-113 to conflict with the Supremacy Clause by allowing a state law to circumscribe the scope of a section 1983 claim. *Id.* at 544-47. Intervenor Trump also cites to *Kuhn v. Williams*, 418 P.3d 478, 489 (Colo. 2018), which relied on *Frazier* in holding, in cursory fashion, that it lacked jurisdiction to consider any constitutional challenge to the residency requirement for petition circulators under C.R.S. § 1-4-905(1) in a C.R.S. § 1-1-113 challenge.

The Petitioners respond that *Frazier* stands for the proposition that a party may not inject into an expedited proceeding a First Amendment challenge to the Election Code and that here, Petitioners are properly using the C.R.S. § 1-1-113 procedure to ask the Court to enjoin Secretary Griswold from violating the Election Code by putting an unqualified candidate on the ballot. In support of the argument that Secretary Griswold may only put constitutionally eligible candidates on the ballot, Petitioners cite *Hassan v.*

*Colorado*, 495 F.App'x. 947, 948 (10th Cir. 2012) which held that then-Secretary Gessler was correct in excluding a constitutionally ineligible candidate and that "a state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office."

First, the Court holds that *Frazier* and *Kuhn* are not controlling in the circumstance where the constitutional issue is not a separate claim. Both of those cases addressed whether the petitioner could bring a separate claim challenging the constitutionality of the Election Code in a C.R.S. § 1-1-113 proceeding. *See Frazier*, 401 P.3d at 543; *Kuhn*, 418 P.3d at 489.  Petitioners have asserted no such claim in this case. While the Court agrees with Intervenor Trump that Petitioners' claim relies heavily on the Fourteenth Amendment of United States Constitution, Intervenor Trump does not cite any case law that suggests that a C.R.S. § 1-1-113 claim cannot have constitutional implications.  Finally, as the Petitioners point out, the Tenth Circuit in *Hassan*, in an opinion written by now United States Supreme Court Justice Gorsuch, held "a state's legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office."  495 F.App'x. at 948, citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 193-95 (1986) (affirming exclusion of candidate from ballot under state law based on compelling state interest in protecting integrity and stability of political process) and *Bullock v. Carter*, 405 U.S. 134, 145 (1972) ("Moreover,

a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies.").

Further, to the extent that the Election Code requires the Secretary of State to exclude constitutionally unqualified candidates (which the Court is not holding), the Court holds that a C.R.S. § 1-1-113 proceeding would be the correct (and, indeed, only) procedure to do so. *See* C.R.S. § 1-1-113(4) (describing such proceedings as "the exclusive method for the adjudication of controversies" arising from an election official's neglect of duty). Any attempt to keep a candidate off the ballot is necessarily going to be expedited, and C.R.S. § 1-1-113 is the mechanism available to get a timely ruling with a direct appeal to the Colorado Supreme Court should that Court feel the issue needs its intervention.

Intervenor Trump next argues that "Petitioners seek to use Section 113 against a private citizen, to terminate his run as a candidate, without basic, well-established protections required by due process."[1] Motion, p. 7. To the extent that Intervenor Trump is arguing that the claim, though brought against the Secretary of State, is nonetheless directed at him and therefore improper, this argument would apply to any C.R.S. § 1-1-113 claim that charges a candidate should be excluded from the ballot. To hold that such a claim is improper would be to undermine the explicit legislative intent

---

[1] Intervenor Trump seems to take the position that Petitioners' C.R.S. § 1-1-113 claim is directed against him, personally. *See* Motion, p. 7 ("Petitioners cannot use Section 113 procedures against a private individual, like President Trump. Section 113 is expressly limited to bringing claims against *Colorado election officials*, not private individuals or potential candidates.") (emphasis in original). As a matter of procedural record, this is simply incorrect: Petitioners' C.R.S. § 1-1-113 claim is directed at the Secretary of State, not Intervenor Trump.

that C.R.S. § 1-1-113 serve as the exclusive vehicle to resolve such questions prior to an election, as it would create an exception which swallows the rule.

To the extent that Intervenor Trump is challenging the constitutionality of C.R.S. § 1-1-113 under the Due Process clause as a defense to Petitioners' claims, the Court lacks the jurisdiction to consider such a challenge. *See Kuhn*, 418 P.3d at 489 (rejecting challenge to the constitutionality of the circulator residency requirement asserted as a defense in an intervenor's response to the initial petition based on lack of jurisdiction). To be clear, the Colorado Supreme Court has held that challenges to the constitutionality of the Election Code are beyond the contemplated scope of C.R.S. § 1-1-113 challenges, which entertain only one type of claim (those for violations of the Election Code by election officials) and one type of relief (an order compelling obedience to the Election Code).

In short, Petitioners' C.R.S. § 1-1-113 claim is brought against the Secretary of State based on her alleged dereliction of her duty under the Election Code to only certify qualified candidates to the ballot. C.R.S. § 1-1-113 is the exclusive vehicle for such challenges. And while the question of whether the Secretary of State has neglected her duties in this case requires resolution of constitutional questions, it remains a challenge against an election official based on her alleged duties under the Election Code. *Frazier* has made clear that a Court cannot consider independent claims in a C.R.S. § 1-1-113 proceeding based on a violation of constitutional rights, but such cases do not stand for the proposition that a petitioner cannot seek to compel compliance with the Election Code to the extent that the Code itself requires that an election official verify

constitutional qualifications for office.  The Court holds that such a claim is proper

under C.R.S. § 1-1-113 as a matter of procedure.

### 2. Whether Petitioner's Claim Is Within the Scope of C.R.S. § 1-4-1204

As to C.R.S. § 1-4-1204, Intervenor Trump first argues that Petitioners cannot

bring this claim because Secretary Griswold has not yet certified any candidates to the

ballot and as a result there is no claim or controversy under C.R.S. § 1-4-1204.

Intervenor Trump points to the language in C.R.S. § 1-4-1204(4) that provides for

challenges to the "listing" of any candidate on the presidential primary ballot, arguing

that he has not yet been "listed" by the Secretary of State.  *See* Motion, pp. 11-12.[2]

The Petitioners respond that Intervenor Trump's argument fails because C.R.S.

§ 1-4-1204(4) incorporates C.R.S. § 1-1-113 as an enforcement mechanism, and that

Secretary Griswold is "about to commit" an "impropriety" or "wrongful act." Further,

C.R.S. § 1-4-1204(4) requires that a "challenge to the listing of any candidate" be made

"no later than five days *after the filing deadline for candidates*" (emphasis added).  The

Secretary of State is not required to certify the primary ballot until sixty days prior to the

primary, whereas candidates must file their statements of intent no later than eighty-

five days prior to the primary election.  C.R.S. § 1-4-1204(1), (1)(c).  Conceivably, then,

the Secretary of State could certify the primary ballot more than five days after the

candidates' filing deadline.  Under Intervenor Trump's proffered interpretation of the

---

[2] Intervenor Trump also argued in his Motion that before there can be a claim or controversy, he would have to be a candidate and that won't happen until he files his Major Party Candidate Statement of Intent. Because Intervenor Trump filed his Major Party Candidate Statement of Intent on October 11, 2023, this issue is now moot.

statute, a candidate's listing could not be challenged where the Secretary of State fails to certify the ballot list weeks in advance of the statutory mandate. Such an interpretation is untenable as it would lead to an absurd result, and the Court therefore affords C.R.S. § 1-4-1204(4) a more reasonable construction which allows challenges to primary ballots in advance of the Secretary's official certification under the appropriate circumstances.

As described above, C.R.S. § 1-4-1204 expressly incorporates C.R.S. § 1-1-113, and C.R.S. § 1-1-113 does not limit challenges to acts that have already occurred, but rather provides for relief when the Secretary is "about to" take an improper or wrongful act. The Petitioners have alleged that the Secretary is "about to" take an unlawful act because she has publicly stated that she will not exclude Intervenor Trump. This is consistent with public statements that the Secretary welcomes the Court's direction as well as her Omnibus Response to Motions to Dismiss.

Based on the clear language of the statute, the fact that Intervenor Trump has submitted his Major Party Candidate Statement of Intent, and Secretary Griswold's statements both in public and in this litigation, the Court holds that this matter is ripe for decision under C.R.S. § 1-4-1204.

### 3. Whether an Elector Can Make a Fourteenth Amendment Challenge Under C.R.S. § 1-4-1204

Intervenor Trump argues C.R.S. § 1-4-1204 sets forth three criteria for inclusion on the presidential primary ballot and that this Court cannot consider a challenge based on anything but those three criteria. The criteria are: (1) the candidate is seeking nomination as a *bona fide* candidate pursuant to the political party's rules; (2) the candidate's political party received at least 20% of the votes in the last presidential

election; and (3) the candidate has submitted a notarized Major Candidate's Statement of Intent along with a filling fee or petition.  Intervenor Trump argues that the first criterion is something the Party decides, not the Secretary of State; the second criterion is an objective fact based on the prior election; and the third criterion is whether the candidate has filled out a form.  Intervenor Trump points out the Major Candidate's Statement of Intent form requires a candidate to affirm he or she meets the qualifications set forth in Article II of the U.S. Constitution—it says nothing about the Fourteenth Amendment.

Petitioners argue C.R.S. § 1-4-1204 must be read in conjunction with the other provisions in the Election Code.  For instance, C.R.S. § 1-4-1201 provides that all of part 12 must "conform to the requirements of federal law" which includes the United States Constitution.  C.R.S. § 1-4-1203(2)(a) provides that political parties may participate in a presidential primary only if the party has a "qualified candidate."  C.R.S. § 1-4-1203(3) provides the Secretary has "the same powers and shall perform the same duties for presidential primary elections as they provide by law for other primary elections and general elections."  Petitioners argue that in all "other primary and general elections" only candidates who meet all the qualifications to hold office may access the ballot.  Further, they point out that the text of C.R.S. § 1-4-1204(4) is broad in that it provides for "[a]*ny challenge to the listing* of any candidate" (emphasis added) and directs that the district court shall assess the validity of "*all alleged improprieties*" (emphasis added).  Finally, Petitioners point to the Supremacy Clause in Article VI of the U.S. Constitution that "'charges state courts with a coordinate responsibility to enforce

[federal] law according to their regular modes of procedure,' unless Congress dictates otherwise." *Consumer Crusade, Inc. v. Affordable Health Care Sol., Inc.*, 121 P.3d 350, 353 (Colo. App. 2005) (quoting *Howlett v. Rose*, 496 U.S. 356, 367 (1990)) (internal citation omitted).  This, Petitioners argue, means that Part 12 of the Election Code must necessarily encompass challenges under the Fourteenth Amendment. Consequently, argue Petitioners, a challenge under C.R.S. § 1-4-1204(4) may be predicated on grounds beyond simply those enumerated in subsections (1)(b)-(c).

The Court agrees with Petitioners' interpretation of C.R.S. § 1-4-1204(4). Nothing in the language of that subsection suggests a legislative intent to limit the scope of challenges thereunder to those arising from C.R.S. § 1-4-1204.  Had the legislature intended such a result, it could have limited challenges brought pursuant to subsection (4) to "any challenge under this section."  The Court will not read additional language into the statute to limit its scope.

Intervenor Trump in his Motion argues the "General Assembly did not charge either the Secretary or the Petitioners with the authority to investigate or presumably enforce Section 3 of the Fourteenth Amendment."  Motion, p. 14.  In the Court's view, this is a pivotal issue and one best reserved for trial.  In addressing Petitioners' contention that their C.R.S. § 1-1-113 proceeding here is no different than enforcing the disqualification of an underage or alien presidential candidate, Intervenor Trump argues that the Secretary of State's only role in assessing candidate qualifications is "to verify that the candidate made the appropriate affirmation" in their statement of intent.

Reply, pp. 8-9.  In other words, the Secretary's role is to make sure the boxes are checked.

Intervenor Trump argues that, in *Hassan*, the reason Mr. Hassan was not allowed on the ballot is not because Secretary Gessler had authority to investigate Mr. Hassan's constitutional qualifications but because Mr. Hassan did not self-affirm he was a natural born citizen in his Statement of Intent.  But that does not answer the question of whether an elector could have challenged his inclusion on the ballot had he claimed he was a natural born citizen when he wasn't, and the argument makes the mistake of assuming that because the *Hassan* court found that the Secretary of State had the authority to do one thing, it meant he had the authority to do *only* that thing.  Further, the Court knows that the Secretary does, at least in some instances, exclude candidates based on constitutional deficiencies.  The Court does not know how often or under what bases.  These are issues that should be addressed at trial.

To be clear, the Court is not affirmatively holding the Fourteenth Amendment can be used to exclude a presidential candidate from the primary ballot, or that the Secretary of State is empowered to evaluate such a question.  The Court is merely holding that it is unable to conclude as a matter of law that to the extent the Fourteenth Amendment applies to prevent ballot access for a Presidential primary candidate, the Secretary of State has no authority to investigate and exclude a candidate on that basis.

### B.  CRSCC Motion to Dismiss

CRSCC, in its motion to dismiss, argues this lawsuit is an infringement of CRSCC's first amendment and statutory rights because the Republican Party, not the

Secretary, under C.R.S. § 1-4-1204(1)(b) determines whether a candidate is "a bona fide candidate for president . . . pursuant to political party rules."  The gist of the argument is that the Secretary has no discretion under the Election Code and that all her duties are purely ministerial.  Further, because it is CRSCC who chooses its candidate, if the Secretary were to screen for qualifications under the Fourteenth Amendment that would abridge CRSCC's free speech rights.

CRSCC cites *People ex rel. Hodges v. McGaffey,* 46 P. 930, 931 (Colo. 1896) for the proposition that the Secretary has no discretion to keep a candidate off the ballot because it would deprive a party of the right to select a candidate of their choice. The Court holds that *Hodges* is inapposite.  There, two factions of the Republican party both submitted nominations with the Secretary, and the Secretary only included one of the two submitted candidates on the ballot. The Colorado Supreme Court, under a prior Election Code, held the Secretary did not have the discretion to choose between the two factions.  There was no discussion whatsoever regarding whether the two candidates were qualified to run for election.

CRSCC spends much of its motion arguing that C.R.S. § 1-4-1204 vests CRSCC with the authority to determine whether a candidate is a *bona fide* candidate under the political party rules.  The statute is clear on that point.  That, however, does not necessarily translate that if a political party decides to put forth a constitutionally unqualified candidate, then the Secretary has no discretion to exclude that candidate from the ballot.  As an example, it is not clear to the Court that should CRSCC put forth a candidate that was not a natural born citizen, then the Secretary is compelled to place

18

the candidate on the ballot despite knowing the candidate is not qualified.  In other words, taking CRSCC's argument to its logical conclusion, if the Party, without any oversight, can choose its preferred candidate, then it could theoretically nominate anyone regardless of their age, citizenship, residency, *et cetera*.  Such an interpretation is absurd; the Constitution and its requirements for eligibility are not suggestions, left to the political parties to determine at their sole discretion.  The more logical interpretation is that CRSCC can put forth any candidate it wants as *bona fide* pursuant to their own rules, but the Secretary will only put candidates that meet the constitutional and statutory qualifications to be on the ballot.  The interests, in other words, are separate, and the Secretary of State's determination as to a candidate's constitutional eligibility does not infringe on the CRSCC's determination pursuant to C.R.S. § 1-4-1204(1)(b) that a candidate is "a bona fide candidate . . . pursuant to political party rules."

Further, the United States Supreme Court has made it clear that a Party's right to put a candidate on the ballot is not unfettered.  *See*, *e.g.*, *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 364 (1997).  Here, Colorado's "legitimate interest in protecting the integrity and practical functioning of the political process permits it to exclude from the ballot candidates who are constitutionally prohibited from assuming office." *Hassan*, 495 F.App'x at 948.

The Court has already found that the State's interest in assessing the constitutional qualifications of candidates which appear on its ballot does not infringe on the political parties' interest in establishing internal rules and assessing their

19

candidate's conformity to said rules, but to the extent such interests do overlap, the State's interest clearly predominates. It would be counterintuitive to suggest that the State's interest in preserving the integrity and stability of the electoral process, as well as its interest in discharging its constitutional obligation to enforce federal law, is subordinate to the vicissitudes of party politics. It is the United States Constitution which is the supreme law of the land, not internal political party rules.

Characterizations of the selection of ineligible candidates as a matter of "political choice" are unavailing; a citizen (or group of citizens, for that matter) cannot exempt themselves from the application of the law because they believe, as a matter of "political expression," that there has been no violation. They may, of course, still argue, profess, maintain, and campaign on the belief that there has been no violation of the law, but the freedom to do so does not exempt them from the application of the law any more than a tax protestor's belief that taxation is theft exempts them from paying taxes.

The Court stresses that it is considering these questions in the abstract, in the context of motions to dismiss. The Court makes no judgments on the merits of Intervenor Trump's constitutional fitness as a candidate by way of these rulings. The question which the Court considers here is, again, *if* a political party puts forth a constitutionally ineligible candidate, and *if* the Secretary of State has the legal authority to vet candidate fitness, does it violate the First Amendment for the State to disqualify that candidate on the grounds of his ineligibility? The CRSCC maintains that it does; the Court holds that it does not. To find otherwise would be to permit the political

parties to disregard the requirements of the law and the constitution whenever they decided as a matter of "political expression" or "political choice" that they did not apply.

### C. CRSCC Motion for Judgment

In this motion, CRSCC moves this Court to affirmatively grant the relief sought by CRSCC in its Verified Petition as against the Secretary of State. The CRSCC, essentially, seeks a declaration from this Court that:

> an act by the Respondent Secretary of State barring from the ballot a presidential candidate designated by a major political party as qualified, and in the absence of proper disqualification pursuant to the processes Congress has established and otherwise qualified under § 1204 and federal election law, is ultra vires and in violation of [CRSCC's] First Amendment and statutory rights – even if such an act is not ordered by the Court or the Petitioners case is dismissed.

Motion, p. 2. CRSCC seeks this relief through a motion for judgment on the pleadings or, alternatively, through C.R.C.P. 56(h), to the extent the Court's ruling on the issue presented is not dispositive.

Petitioners respond that CRSCC's motion is premature and procedurally improper because motions under C.R.C.P. 12(c) and 56(h) are not permitted until after the pleadings are closed. The Court agrees. Both rules grant leave to file such motions only "[a]fter the pleadings are closed"; or "[a]t any time after the last required pleading" C.R.C.P. 12(c); 56(h). Here, there are multiple pending motions to dismiss. The motion, therefore, is premature, and the Court goes no further.

### D. Petitioners' Motion to Dismiss

Petitioners move to dismiss CRSCC's first claim under Rule 12(b)(1). CRSCC seeks "a Declaration pursuant to Colo. R. Civ. P. 57 and C.R.S. § 13-51-105 that

Petitioner [sic] requested relief violates Intervenor's First Amendment rights under the U.S. Constitution and therefore must be denied." Petition, p. 8. Petitioners argue that because this claim does not arise under the Election Code, the Court lacks subject matter jurisdiction to hear it in this expedited election proceeding. Petitioners characterize the claim as "implying that *any* exclusion of an ineligible candidate from the ballot would violate Intervenor's constitutional rights." Motion, p. 3 (emphasis in original).

CRSCC agrees that constitutional issues are indeed not redressable "in the context of proceedings under C.R.S. § 1-1-113(1) and § 1-4-1204(4)," which is why it brings its claim pursuant to C.R.C.P. 57 and C.R.S. § 13-51-101 *et seq*. Response, p. 3. CRSCC asserts that it is not attacking the constitutionality of the code but instead is arguing that the relief Petitioners request would violate the First Amendment and therefore is unavailable to Petitioners.

In its holding that *Frazier* and *Kuhn* are controlling, the Court distinguished between a C.R.S. § 1-1-113 proceeding which could have constitutional implications and an independent constitutional claim brought in a C.R.S. § 1-1-113 proceeding. CRSCC's First Claim seeks a declaration that it would be unconstitutional for the Secretary of State to disqualify Intervenor Trump because of their protected interests in speech and association. *Frazier* and its progeny are clear that C.R.S. § 1-1-113 proceedings are limited in scope and may only consider claims of breach or neglect of duty or other wrongful act under the Colorado Election Code. *See Kuhn*, 418 P.3d at 489. To the extent the CRSCC's First Claim asserts an independent constitutional claim, the Court is

without jurisdiction to consider it.  In the Court's view, CRSCC's First Claim does just

that.  The only relief this Court can afford in a C.R.S. § 1-1-113 proceeding is an order to

comply with the Election Code.  Thus, a claim that such relief is unconstitutional is no

more than a claim that the Election Code is unconstitutional.

To the extent that the relief requested is not available under the Election Code, it

cannot (and will not) be ordered by this Court, and the declaration would be moot.  To

the extent CRSCC fears that the Secretary of State will disqualify Intervenor Trump from

the ballot in the absence of an order from the courts and seeks a declaration that doing

so would violate their First Amendment rights, such a claim arises from outside the

Election Code and may not be considered by this Court in this proceeding.  As the

*Frazier* court emphasized, "Colorado courts remain entirely open for the adjudication of

section 1983 claims, including on an expedited basis if a preliminary injunction is

sought."  401 P.3d at 542.  The Court therefore GRANTS Petitioners' motion to dismiss

and dismisses CRSCC's First Claim.

## V.    CONCLUSION

For all the reasons stated above, the Court DENIES Donald J. Trump's  Motion to

Dismiss filed September 22, 2023, DENIES CRSCC's Motion to Dismiss Pursuant to

Colorado Rule of Civil Procedure 12(b)(5), GRANTS Petitioners' Motion to Dismiss

Intervenor's First Claim for Relief under C.R.C.P. 12(b)(1), and DENIES CRSCC's

Motion for Judgment on the Pleadings Under Rule 12/Judgment as a Matter of Law

Under Rule 56.  The Court will address Intervenor Trump's 14th Amendment Motion to

Dismiss under separate cover.

DATED: October 20, 2023.

BY THE COURT:

*Sarah B Wallace*

Sarah B. Wallace
District Court Judge

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**

1437 Bannock Street
Denver, CO 80202

</td><td>

DATE FILED: October 30, 2023 5:20 PM
CASE NUMBER: 2023CV32577

</td></tr>
</table>

| | |
|---|---|
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State<br><br>**and**<br><br>**Intervenor:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |

**ORDER DENYING RIGHT SIDE BROADCASTING NETWORK'S REQUEST FOR EXPANDED MEDIA COVERAGE**

**THIS MATTER** comes before the Court on a Request for Expanded Media Coverage, filed by Right Side Broadcasting Network. The Court, having reviewed the Requests and otherwise being sufficiently advised, hereby FINDS and ORDERS as follows:

The Court hereby **DENIES** Right Side Broadcasting Network's Request for Expanded Media Coverage of the Hearing scheduled to begin October 30, 2023 in this case. Pursuant to Chapter 38, Rule 3(a)(6)(A) of the Colorado Court Rules and the Orders concerning expanded media coverage issued by this Court on October 25, 2023 and October 27, 2023, the Court will not be entertaining any Requests for Expanded Media

Coverage filed after 8:00 a.m. on October 27, 2023. Service of this Order to the media groups will be made by email to the addresses provided in the requests.

      DATED: October 30, 2023.

                                      BY THE COURT:

                                      Sarah B. Wallace
                                      District Court Judge

GRANTED BY COURT
10/20/2023
DATE FILED: October 20, 2023 2:41 PM
CASE NUMBER: 2023CV32577

*Sarah B Wallace*

SARAH BLOCK WALLACE
District Court Judge

DISTRICT COURT, CITY AND COUNTY OF
DENVER, STATE OF COLORADO
1427 Bannock Street, Room 256
Denver, Colorado 80202

▲ COURT USE ONLY ▲

**Plaintiff(s):** Anderson, et al.

v.

**Defendant(s):** Griswold, et al.

Applicant Attorney: Jane Serene Raskin
Address: 2525 Ponce de Leon Blvd.
Ste. 300
Coral Gables, FL, 33134
Phone Number: (305) 444-3400
Email: jraskin@raskinlaw.com
Atty. Reg. #: FL Bar No. 848689

Sponsoring Attorney: Michael Melito
Address: MELITO LAW, LLC
1875 Lawarence St., Ste. 730
Denver, Colorado 80202
Phone Number: (303) 813-1200
Fax Number:
Email: Melito@melitolaw.com
Atty. Reg. #: CO Bar No. 36059

Case No: 23CV32577

Division: 209

**OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING PRO HAC VICE
ADMISSION**

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, Jane Serene Raskin of the Law Firm of Raskin & Raskin, PA., moves for pro hac vice admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, Jane Serene Raskin states and shows the Court the following:

1. Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2. Jane Serene Raskin of the Law Firm of Raskin & Raskin, PA., is a member in good standing of the Bar in the State of Florida. Jane Serene Raskin is assigned attorney registration or bar admission number 848689 in the State of Florida.

3. Jane Serene Raskin has also been licensed in the following jurisdictions: Massachusetts and the District of Colombia, under the following admission number(s): MA 451900 and DC 416632.

4. Jane Serene Raskin is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

5. Jane Serene Raskin has not previously sought pro hac vice admission in Colorado.

6. Jane Serene Raskin acknowledges that she is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure and other court rules, and that she has read such rules and will follow such rules.

7. Michael Melito, CO Bar No. 36059, is a member in good standing of the Bar of the State of Colorado.

8. Michael Melito will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9. The following are parties to the proceeding and have been notified of this this Verified Motion requesting pro hac vice admission:

*Attorneys for Petitioners*
Eric R. Olson
Sean C. Grimsley
Jason C. Murray
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
303-535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com

Jonathan E. Maier
Nikhel Suresh Sus
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
202-408-5565
jmaier@citizensforethics.org
nsus@citizensforethics.org

Mario Daniel Nicolais, II
KBN Law LLC
7830 West Alameda Avenue, Suite 103-301
Lakewood, CO 80226
720-773-1526
mario@kbnlaw.com

Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, CO 80203
303-356-4870
mtierney@tierneylawrence.com

*Attorneys for Respondent Donald Trump*
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

*Attorneys for Respondent Colorado Secretary of State*
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. Jane Serene Raskin has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth Jane Serene Raskin's qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit Jane Serene Raskin pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 10th day of October, 2023.

JANE SERENE RASKIN
Fl. Bar No 848689
Raskin & Raskin, PA
2525 Ponce de Leon Blvd., Ste 300
Coral Gables, FL

And

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St., Ste. 730
Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by Michael Melito, CO Bar No. 36059 on this 11ᵗʰ day of October, 2023.

*[Notary Public]*

My commission expires:

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission was sworn to or affirmed and signed by Jane Serene Raskin 10th day of October, 2023.

_____
Notary Public in and for the
State of: D C

My commission expires: 12/14/26



**GRANTED BY COURT**
**10/20/2023**

DATE FILED: October 20, 2023 2:41 PM
CASE NUMBER: 2023CV32577

| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1427 Bannock Street, Room 256<br>Denver, Colorado 80202 | *Sarah B Wallace*<br><br>**SARAH BLOCK WALLACE**<br>District Court Judge |
| **Plaintiff(s):** Anderson, et al.<br><br>v.<br><br>**Defendant(s):** Griswold, et al. | ▲ COURT USE ONLY ▲ |
| Applicant Attorney: Stuart J. Roth<br>Address: 201 Maryland Avenue, NE<br>Washington, DC, 20002<br>Phone Number: (202) 546-8890<br>Fax Number: (202) 546-9309<br>E-mail: sroth@aclj.org<br>Atty. Reg. #: DC Bar No. 475937<br><br>Sponsoring Attorney: Michael Melito<br>Address: MELITO LAW, LLC<br>1875 Lawarence St., Ste. 730<br>Denver, Colorado 80202<br>Phone Number: (303) 813-1200<br>Fax Number:<br>Email: Melito@melitolaw.com<br>Atty. Reg. #: CO Bar No. 36059 | Case No: 23CV32577<br><br>Division: 209 |

**OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING PRO HAC VICE ADMISSION**

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, *Stuart J. Roth* of the Law Firm of *the American Center for Law and Justice, of Washington, D.C.*, moves for pro hac vice admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, *Stuart J. Roth* states and shows the Court the following:

1. Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2. *Stuart J. Roth* of the Law Firm of *the American Center for Law and Justice, of Washington, D.C.*, is a member in good standing of the Bar in the State of

*Washington, D.C. Stuart J. Roth* is assigned attorney registration or bar admission number 475937 in Washington, D.C.

3. *Stuart J. Roth* has also been licensed in the following jurisdictions: Georgia and Alabama, under the following admission number(s) GA 615650 (inactive), and AL 0123o76s (inactive).

4. *Stuart J. Roth* is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

<div align="center"><em>or</em></div>

~~_____ [Name of Applicant Attorney] has been publicly disciplined, placed under an order of disability, or has had a request for pro hac vice admission denied or revoked in the following jurisdictions: _____ (state the jurisdiction, the date of transfer to disability, the date of discipline, the date of the denial or revocation, or pro hac vice admission, the nature of the violation and the discipline imposed or the reason for the denial or revocation of pro hac vice admission).~~

5. *Stuart J. Roth* has not previously sought pro hac vice admission in Colorado.

<div align="center"><em>or</em></div>

~~_____ [Name of Applicant Attorney] has been admitted pro hac vice in the following Colorado cases in the preceding five years: _____ (state the date, case name, and case number all other matters in Colorado in which pro hac vice admission has been sought and whether admission was granted or denied).~~

6. *Stuart J. Roth* acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure and other court rules, and that he has read such rules and will follow such rules.

7. *Michael Melito,* CO Bar No. 36059, is a member in good standing of the Bar of the State of Colorado.

8. *Michael Melito* will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9. The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

***Attorneys for Petitioners***
Eric R. Olson
Sean C. Grimsley
Jason C. Murray
Olson Grimsley Kawanabe Hinchliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
303-535-9151
eolson@olsongrimsley.com
sgrimsley@olsongrimsley.com
jmurray@olsongrimsley.com

Jonathan E. Maier
Nikhel Suresh Sus
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
202-408-5565
jmaier@citizensforethics.org
nsus@citizensforethics.org

Mario Daniel Nicolais, II
KBN Law LLC
7830 West Alameda Avenue, Suite 103-301
Lakewood, CO 80226
720-773-1526
mario@kbnlaw.com

Martha M. Tierney
Tierney Lawrence Stiles LLC
225 East 16th Avenue, Suite 350
Denver, CO 80203
303-356-4870
mtierney@tierneylawrence.com

*Attorneys for Respondent Donald Trump*
Geoffrey N. Blue
Scott E. Gessler
Justin T North
Gessler Blue, LLC
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
720-647-5320
626-353-2614
gblue@gesslerblue.com
sgessler@gesslerblue.com
jnorth@gesslerblue.com

*Attorneys for Respondent Colorado Secretary of State*
MICHAEL T. KOTLARCZYK
Senior Assistant Attorney General
Public Officials Unit | State Services Section
Ralph L. Carr Colorado Judicial Center 1300 Broadway, 6th Floor
Denver, CO 80203
Telephone: 720.508.6187
mike.kotlarczyk@coag.gov

10. *Stuart J. Roth* has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11. An affidavit setting forth *Stuart J. Roth's* qualifications and compliance is attached.

12. By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit *Stuart J. Roth* pro hac vice, to practice before the Court in this case.

Respectfully submitted on the 22nd day of September, 2023.

Stuart J. Roth
DC Bar No. 475937
201 Maryland Avenue, NE
Washington, D.C. 20002
(202) 546-8890

and

MICHAEL MELITO
(CO Bar No. 36059)
MELITO LAW, LLC
1875 Lawrence St., Ste. 730

Denver, Colorado 80202
Telephone: 303-813-1200
Email: Melito@melitolaw.com

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice  Admission
was sworn to or affirmed and signed by _Michael Melito_____ *[Name of
Sponsoring Attorney and Registration No.]* this __11th__ day of _October_, 2023

_____
*[Notary Public]*

My commission expires:

CHRISTA LUNDQUIST
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20224028731
MY COMMISSION EXPIRES JULY 22, 2026

VERIFICATION

Out of State Counsel's Verified Motion Requesting Pro Hac Vice Admission
was sworn to or affirmed and signed by Stuart J. Roth
this _____ 22nd _____ day of September, 2023

_____
[Notary Public]

My commission expires:

SAMARA WILLIAMSON
MY COMMISSION # HH 099605
EXPIRES: March 2, 2025
Bonded Thru Notary Public Underwriters

GRANTED BY COURT
10/20/2023

DATE FILED: October 20, 2023 2:33 PM
CASE NUMBER: 2023CV32577

*Sarah B Wallace*

**SARAH BLOCK WALLACE**
District Court Judge

**DISTRICT COURT**
**CITY AND COUNTY OF DENVER,**
**COLORADO**
1437 Bannock Street, Room 256
Denver, CO 80202
Phone: (303) 606-2300

**NORMA ANDERSON, MICHELLE PRIOLA,**
**CLAUDINE CMARADA, KRISTA KAFER,**
**KATHI WRIGHT,** and **CHRISTOPHER**
**CASTILIAN,**
          **Petitioners,**

v.

**JENA GRISWOLD,** in her official capacity as
Colorado Secretary of State, and **DONALD J. TRUMP**
          **Respondents.**

▲ COURT USE ONLY ▲

| *Applicant Attorney:* | Case Number: |
|---|---|
| Jacob Roth | 2023CV32577 |
| Dhillon Law Group, Inc. | |
| 177 Post St., Suite 700 | Division: |
| San Francisco, CA 94108 | |
| Tel: (415) 433-1700 | |
| | |
| *Sponsoring Attorney:* | |
| Scott E. Gessler (28944), sgessler@gesslerblue.com | |
| Gessler Blue LLC | |
| 7350 E Progress Pl., Suite 100 | |
| Greenwood Village, CO 80111 | |
| Tel: (720) 839-6637 | |

**OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING**
**PRO HAC VICE ADMISSION**

        Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, Jacob Roth of the Law Firm

of Dhillon Law Group, Inc. of San Francisco, California moves for pro hac vice admission

to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, Jacob Roth states and shows the Court the following:

1.    Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2.    Jacob Roth of the Law Firm of Dhillon Law Group, Inc. is a member in good standing of the Bar in the State of Florida. Jacob Roth is assigned attorney registration or bar admission number 1036551 in the State of Florida.

3.    Jacob Roth has also been licensed in the following jurisdiction(s): Nebraska and the District of Columbia under the following admission number(s): NE (27012); D.C. (1673038). He is also admitted to practice law in the United States District Court for the Southern District of Florida, the Middle District of Florida, and the District of Nebraska.

4.    Jacob Roth is in good standing in all Bars wherever admitted and has not been subject to any order  of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

5.    Jacob Roth has not previously sought pro hac vice admission in Colorado.

6.    Jacob Roth acknowledges that he is subject to all applicable provisions of

2

the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure andother court rules, and that he has read such rules and will follow such rules.

7.    Scott E. Gessler, Attorney Registration No. 28944, is a member in good standing of the Bar of the State of Colorado.

8.    Scott E. Gessler will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9.    The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

Petitioners:

NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN.

Respondents:

JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

10.    Jacob Roth has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11.    An affidavit setting forth Jacob Roth's qualifications and compliance is attached.

12.    By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit

Jacob Roth pro hac vice, to practice before theCourt in this case.

Respectfully submitted on the 3rd day of October 2023.

_____
Jacob Roth
1036551, Florida
1601 Forum Place, Suite 403
West Palm Beach, FL 33401
Tel: (415) 433-1700

and

*s/Scott E. Gessler*
Scott E. Gessler
Attorney Reg. No. 28944
GESSLER BLUE LLC
7350 E. Progress Place, Suite 101
Greenwood Village, CO 80111
Tel.: (720) 839-6637

4

I declare under penalty of perjury under the laws of Colorado that the foregoing is true and correct.

Executed on the __10th__ day of October, 2023, at Greenwood Village, Colorado.

_____

Scott E. Gessler

I declare under penalty of perjury under the laws of Colorado that the foregoing is true and correct.

Executed on the 4th day of October 2023, at Boca Raton, Florida (location).

_____   /s/    Jacob William Roth

Jacob Roth

5

**GRANTED BY COURT**
**10/20/2023**

DATE FILED: October 20, 2023 2:40 PM
CASE NUMBER: 2023CV32577

| | |
|---|---|
| **DISTRICT COURT**<br>**CITY AND COUNTY OF DENVER,**<br>**COLORADO**<br>1437 Bannock Street, Room 256<br>Denver, CO 80202<br>Phone: (303) 606-2300 | *Sarah B Wallace*<br><br>**SARAH BLOCK WALLACE**<br>District Court Judge |
| **NORMA ANDERSON, MICHELLE PRIOLA,**<br>**CLAUDINE CMARADA, KRISTA KAFER,**<br>**KATHI WRIGHT,** and **CHRISTOPHER**<br>**CASTILIAN,**<br>      **Petitioners,**<br><br>v.<br><br>**JENA GRISWOLD,** in her official capacity as<br>Colorado Secretary of State, and **DONALD J. TRUMP**<br>      **Respondents**. | ▲ COURT USE ONLY ▲ |
| *Applicant Attorney:*<br>Jonathan Shaw<br>Dhillon Law Group, Inc.<br>177 Post St., Suite 700<br>San Francisco, CA 94108<br>Tel: (415) 433-1700<br><br>*Sponsoring Attorney:*<br>Scott E. Gessler (28944), sgessler@gesslerblue.com<br>Gessler Blue LLC<br>7350 E Progress Pl., Suite 100<br>Greenwood Village, CO 80111<br>Tel: (720) 839-6637 | Case Number:<br>2023CV32577<br><br>Division: |
| **OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING**<br>**PRO HAC VICE ADMISSION** | |

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, Jonathan Shaw of the Law

Firm of Dhillon Law Group, Inc. of Alexandria, Virginia moves for pro hac vice admission

to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, Jonathan Shaw states and shows the Court the following:

1.    Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2.    Jonathan Shaw of the Law Firm of Dhillon Law Group, Inc. is a member in good standing of the Bar in the State of Maryland. Jonathan Shaw is assigned attorney registration or bar admission number 199212170142 in the State of Maryland.

3.    Jonathan Shaw has also been licensed in the following jurisdiction(s):

| Jurisdiction | Admit Date | Bar No. | |
|---|---|---|---|
| VA | 11/7/2022 | 98497 | Active |
| EDVA | 2/7/2023 | | Active |
| DC | 4/3/1995 | 446249 | Active |
| USDC DC | 4/6/1998 | | Active |
| USDC District of MD | 5/21/1993 | 113828 | Active |
| USDC ND IL | 2/24/2023 | | Active |
| MD | 12/17/1992 | 199212170142 | Active |

4.    Jonathan Shaw is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

2

5.    Jonathan Shaw has not previously sought pro hac vice admission in Colorado.

6.    Jonathan Shaw acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil Procedure andother court rules, and that he has read such rules and will follow such rules.

7.    Scott E. Gessler, Attorney Registration No. 28944, is a member in good standing of the Bar of the State of Colorado.

8.    Scott E. Gessler will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9.    The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

Petitioners:

NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN.

Respondents:

JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

10.    Jonathan Shaw has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

3

11.    An affidavit setting forth Jonathan Shaw's qualifications and compliance is attached.

12.    By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

WHEREFORE, Out of State Counsel respectfully requests that the Court admit Jonathan Shaw pro hac vice, to practice before theCourt in this case.

Respectfully submitted on the _14_ day of October 2023.

_Jonathan Shaw_
Jonathan Shaw
Maryland,
199212170142
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Tel: (415) 433-1700

and

_s/ Scott E. Gessler_
Scott E. Gessler
Attorney Reg. No. 28944
GESSLER BLUE LLC
7350 E. Progress Place, Suite 101
Greenwood Village, CO  80111
Tel.: (720) 839-6637

I declare under penalty of perjury under the laws of Colorado that the foregoing is true and correct.

Executed on the 10th day of October, 2023, at Greenwood Village, Colorado.

_____
Scott E. Gessler

I declare under penalty of perjury under the laws of Colorado that the foregoing is true and correct.

Executed on the _10th_ day of _October_____, 2023, at _Alexandria, VA_____ (location).

_____
Jonathan Shaw

5

GRANTED BY COURT
10/20/2023

DATE FILED: October 20, 2023 2:40 PM
CASE NUMBER: 2023CV32577

**DISTRICT COURT**
**CITY AND COUNTY OF DENVER,**
**COLORADO**
1437 Bannock Street, Room 256
Denver, CO  80202
Phone: (303) 606-2300

*Sarah B. Wallace*

**SARAH BLOCK WALLACE**
District Court Judge

---

**NORMA ANDERSON, MICHELLE PRIOLA,**
**CLAUDINE CMARADA, KRISTA KAFER,**
**KATHI WRIGHT,** and **CHRISTOPHER**
**CASTILIAN**,
          **Petitioners**,

v.

**JENA GRISWOLD,** in her official capacity as
Colorado Secretary of State, and **DONALD J. TRUMP**
          **Respondents**.

▲ COURT USE ONLY ▲

---

*Applicant Attorney:*
Mark P. Meuser
Dhillon Law Group, Inc.
177 Post St., Suite 700
San Francisco, CA 94108
Tel: (415) 433-1700

*Sponsoring Attorney:*
Scott E. Gessler (28944), sgessler@gesslerblue.com
Gessler Blue LLC
7350 E Progress Pl., Suite 100
Greenwood Village, CO 80111
Tel: (720) 839-6637

Case Number:
2023CV32577

Division:

---

**OUT OF STATE COUNSEL'S VERIFIED MOTION REQUESTING**
**PRO HAC VICE ADMISSION**

Pursuant to C.R.C.P. 121 § 1-2, and Rule 205.3, Mark P. Meuser of the Law

Firm of Dhillon Law Group, Inc. of San Francisco, California moves for pro hac vice

admission to practice before this Court in the above-captioned matter.

AS GROUNDS FOR THIS MOTION, Mark P. Meuser states and shows the Court the following:

1.      Under Rule 205.3, an attorney and counselor at law in good standing from any other jurisdiction in the United States may, in the discretion of a Colorado court of record, be permitted to participate before the Court in a trial, argument and other proceeding in the particular case in which the attorney is employed, provided that a member in good standing of the Bar of the State of Colorado is associated in such cause at all stages of the case.

2.      Mark P. Meuser of the Law Firm of Dhillon Law Group, Inc. is a member in good standing of the Bar in the State of California. Mark P. Meuser is assigned attorney registration or bar admission number 231335 in the State of California.

3.      Mark P. Meuser has also been licensed in the following jurisdiction(s): United States District Court, District of Columbia under the following admission number(s) CA00081.

4.      Mark P. Meuser is in good standing in all Bars wherever admitted and has not been subject to any order of discipline or disability by any Bar, or had any request for pro hac vice admission denied or revoked.

5.      Mark P. Meuser has not previously sought pro hac vice admission in Colorado.

6.      Mark P. Meuser acknowledges that he is subject to all applicable provisions of the Colorado Rules of Professional Conduct, the Colorado Rules of Civil

2

Procedure and other court rules, and that he has read such rules and will follow such rules.

7.    Scott E. Gessler, Attorney Registration No. 28944, is a member in good standing of the Bar of the State of Colorado.

8.    Scott E. Gessler will be present and participate in a meaningful and substantial manner throughout the proceedings and trial of this matter.

9.    The following are parties to the proceeding and have been notified of this Verified Motion requesting pro hac vice admission:

Petitioners:

NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN.

Respondents:

JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

10.    Mark P. Meuser has filed a copy of this motion with the Clerk of the Colorado Supreme Court at the Office of Attorney Registration, 1300 Broadway, Suite 510, Denver, Colorado 80203 and paid the required fee.

11.    An affidavit setting forth Mark P. Meuser's qualifications and compliance is attached.

12.    By execution of the attached verification, the Colorado licensed Sponsoring Attorney verifies his/her association on this matter.

3

WHEREFORE, Out of State Counsel respectfully requests that the Court admit

Mark P. Meuser pro hac vice, to practice before theCourt in this case.

Respectfully submitted on the 13th day of October 2023.

Mark P. Meuser
231335, California
177 Post St., Suite 700
San Francisco, CA 94108
Tel: (415) 433-1700

and

_s/ Scott E. Gessler_
Scott E. Gessler
Attorney Reg. No. 28944
GESSLER BLUE LLC
7350 E. Progress Place, Suite 101
Greenwood Village, CO  80111
Tel.: (720) 839-6637

I declare under penalty of perjury under the laws of Colorado that the foregoing is true and correct.

Executed on the __13th__ day of October, 2023, at Greenwood Village, Colorado.

_____
Scott E. Gessler

I declare under penalty of perjury under the laws of Colorado that the foregoing is true and correct.

Executed on the 6th day of October, 2023, at Pasadena, California.

_____
Mark P. Meuser

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
| :--- | :--- |
| Court Address:<br>1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED: October 22, 2023 2:21 PM<br>CASE NUMBER: 2023CV32577 |
| **Plaintiff(s)** NORMA ANDERSON et al.<br>v.<br>**Defendant(s)** JENA GRISWOLD IN HER OFFICIAL CAPACITY et al. | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2023CV32577 |
| | Division: 209          Courtroom: |
| **Order:Petitioners' Motion for Permission to Conduct a Trial Preservation Deposition of Donald J. Trump (publicly filed)** | |

The motion/proposed order attached hereto: DENIED.

The Court holds that ordering a deposition in these expedited proceedings, at this late juncture, is neither feasible nor appropriate.

Issue Date: 10/22/2023

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO**<br>1437 Bannock St.<br>Denver, CO 80203 | |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN,<br><br>v.<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP,<br><br>and<br><br>**Intervenor:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE, and DONALD J. TRUMP. | ▲ COURT USE ONLY ▲ |
| Attorneys for Petitioners:<br><br>Mario Nicolais, Atty. Reg. # 38589<br>KBN Law, LLC<br>7830 W. Alameda Ave., Suite 103-301<br>Lakewood, CO 80226<br>Phone: 720-773-1526<br>Email: mario@kbnlaw.com<br><br>Martha M. Tierney, Atty. Reg. # 27521<br>Tierney Lawrence Stiles LLC<br>225 E. 16th Ave., Suite 350<br>Denver, CO 80203<br>Phone: 303-356-4870<br>Email: mtierney@tls.legal<br><br>Eric Olson, Atty. Reg. # 36414<br>Sean Grimsley, Atty. Reg. # 36422<br>Jason Murray, Atty. Reg. # 43652<br>Olson Grimsley Kawanabe Hinchcliff & Murray LLC<br>700 17th Street, Suite 1600<br>Denver, CO 80202<br>Phone: 303-535-9151 | Case Number: 2023CV032577<br><br>Division/Courtroom: 209 |

Email: eolson@olsongrimsley.com
Email: sgrimsley@olsongrimsley.com
Email: jmurray@olsongrimsley.com

Donald Sherman*
Nikhel Sus*
Jonathan Maier*
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
Phone: 202-408-5565
Email: dsherman@citizensforethics.org
Email: nsus@citizensforethics.org
Email: jmaier@citizensforethics.org

*Pro hac vice admission pending

## PETITIONERS' MOTION FOR PERMISSION TO CONDUCT A TRIAL PRESERVATION DEPOSITION OF DONALD J. TRUMP[1]

Petitioners request leave from the Court to depose Intervenor and Respondent Donald J.

Trump under Colorado Rules of Civil Procedure 45(e)(2) and 32(a)(3)(B) so that his testimony

may be presented at the hearing.[2] Petitioners identified Trump on their witness list, and Counsel

for Trump told Petitioners that Trump will not be at the hearing scheduled to begin on October 30,

2023. Trump obviously has relevant knowledge regarding his engagement in the insurrection on

---

[1] On October 4, 2023, the Court ordered that the parties file any documents that contain "the identity of witnesses or sensitive information" as suppressed and that the parties then publicly file redacted versions of those documents. Accordingly, Petitioners filed this motion and an accompanying proposed order as suppressed on October 17, 2023. Counsel for Petitioners then conferred with Intervenor and Respondent Donald J. Trump's counsel on proposed redactions to this motion. Trump responded the Petitioners' motion could be filed publicly, with his name on it. Petitioners therefore publicly file the motion and proposed order today. Aside from this footnote and today's date, the suppressed and public versions of this motion are identical.

[2] C.R.C.P. 45(e)(2) permits issuing a subpoena for an out-of-court deposition of nonresidents. C.R.C.P. 32(a)(3)(B) allows a party to use "at trial" the deposition testimony "of a witness, whether or not a party, . . . if the court finds . . . that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition." *See Margenau v. Bowlin*, 12 P.3d 1214, 1217-18 (Colo. App. 2000) (explaining that C.R.C.P. 32 can be used for "admitting deposition testimony into evidence in civil cases.").

January 6, 2021, and his actions in the weeks and months before it. The only way for Petitioners to obtain Trump's testimony at trial is to take a trial preservation deposition.

Counsel for Petitioners raised this issue with all parties at the October 13, 2023 status conference. Trump and Intervenor the Colorado Republican State Central Committee oppose this motion. Counsel for Petitioners attempted to confer with counsel for Respondent Secretary of State Jena Griswold via telephone and email before filing this motion.

Petitioners should be allowed to depose Trump. Petitioners have identified Trump on their "will call" witness list. Trump has relevant testimony. Trump is a party in the case, having sought and been granted intervention. Trump is represented by able counsel. Petitioners do not want to take a discovery deposition, but merely a deposition to preserve trial testimony instead of Trump showing up live. There is far more justification for a deposition of Trump than of witnesses disclosed by a party. Witnesses disclosed by a party will testify at trial and be subject to cross examination. Without an order from this Court, Trump will not. A deposition is the only way to secure his testimony. And there is sufficient time before the hearing to take a trial preservation deposition. Counsel for Petitioners can make themselves available to take the deposition virtually or in-person wherever Trump is any day before the beginning of the hearing on October 30, 2023. Counsel for Trump made clear at the initial status conference that even on the compressed schedule, the Parties can make time for depositions as needed.

Petitioners are not asking for Trump's deposition to harass the former president. While Petitioners will present more than sufficient evidence to prove that Trump engaged in an insurrection against the Constitution, they anticipate Trump's team will argue that Petitioners' evidence falls short because it does not include sufficient evidence of Trump's knowledge or his own testimony about the 2020 presidential election and January 6, 2021. Trump should not be allowed to levy such attacks while also refusing to show up at trial or testify in any way. At the

very least, this Court and any appellate court should know that Petitioners tried to obtain Trump's testimony and he refused.

That said, if Trump intends to assert his Fifth Amendment right against self-incrimination at any such deposition, given the overlap of issues with his pending criminal cases, Petitioners can provide Trump with written questions to which Trump can assert the Fifth Amendment in writing. (If he intends to offer substantive answers, then a trial preservation deposition is appropriate so he faces the same cross examination as witnesses for Petitioners.) There is no need for Trump to testify in person, either at a deposition or the hearing, if he is simply going to invoke his right to remain silent. But Petitioners are entitled to ask Trump questions and have him invoke the Fifth Amendment, rather than have their request for his testimony refused on the assumption that he might do so. *State ex rel. Weiser v. Castle L. Grp., LLC*, 2019 COA 49, ¶ 74 ("[T]he privilege against self-incrimination may not be asserted in advance of questions actually propounded; it is an option of refusal, not a prohibition of inquiry. The proper procedure is to wait until a question which tends to be incriminating has been asked and then decline to answer." (quoting *People in the Interest of I.O.*, 713 P.2d 396, 397 (Colo. App. 1985); *People v. Austin*, 412 P.2d 425, 427 (Colo. 1966))).

Petitioners therefore request leave to depose Trump or, in the alternative if Trump intends to assert the Fifth Amendment, to serve written questions on Trump to which he can assert the Fifth Amendment in writing.

Date: October 18, 2023          Respectfully submitted,

*/s/ Sean Grimsley*
Eric Olson, Atty. Reg. # 36414
Sean Grimsley, Atty. Reg. # 36422
Jason Murray, Atty. Reg. # 43652
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
Phone: 303-535-9151
Email: eolson@olsongrimsley.com
Email: sgrimsley@olsongrimsley.com
Email: jmurray@olsongrimsley.com

Mario Nicolais, Atty. Reg. # 38589
KBN Law, LLC
7830 W. Alameda Ave., Suite 103-301
Lakewood, CO 80226
Phone: 720-773-1526
Email: Mario@kbnlaw.com

Martha M. Tierney, Atty. Reg. # 27521
Tierney Lawrence Stiles LLC
225 E. 16th Ave., Suite 350
Denver, CO 80203
Phone: 303-356-4870
Email: mtierney@tls.legal

Donald Sherman*
Nikhel Sus*
Jonathan Maier*
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
Phone: 202-408-5565
Email: dsherman@citizensforethics.org
Email: nsus@citizensforethics.org
Email: jmaier@citizensforethics.org
**Pro hac vice* admission pending

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I served this document on October 18, 2023, by Colorado Courts E-filing and/or via electronic mail as follows:

Michael T. Kotlarczyk
Grant T. Sullivan
LeeAnn Morrill
Colorado Attorney General's Office
mike.kotlarczyk@coag.gov
grant.sullivan@coag.gov
leeann.morrill@coag.gov

*Attorneys for Secretary of State Jena Griswold in her official capacity as Colorado Secretary of State*

Scott E. Gessler
Geoffrey N. Blue
Justin T North
Gessler Blue LLC
gblue@gesslerblue.com
jnorth@gesslerblue.com
sgessler@gesslerblue.com

Jonathan Shaw
Mark P. Meuser
Dhillon Law Group, Inc.
jshaw@dhillonlaw.com
mmeuser@dhillonlaw.com

*Attorneys for Donald J. Trump*

Michael William Melito
Melito Law LLC
melito@melitolaw.com

Robert Alan Kitsmiller
Podoll & Podoll, P.C.
bob@podoll.net

Benjamin Sisney
Nathan J. Moelker
Jordan A. Sekulow
Jay Alan Sekulow
Jane Raskin
Stuart J. Roth
American Center for Law and Justice
bsisney@aclj.org

nmoelker@aclj.org
jordansekulow@aclj.org
sekulow@aclj.org
jraskin@raskinlaw.com
sroth@aclj.org

Andrew J. Ekonomou
aekonomou@outlook.com

*Attorneys for Colorado Republican State Central Committee*

*/s/ Sean Grimsley*
Counsel for Petititioners

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO**<br>1437 Bannock St.<br>Denver, CO 80203 | |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN,<br><br>v.<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and<br>DONALD J. TRUMP,<br><br>and<br><br>**Intervenor:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE, and DONALD J. TRUMP. | ▲ COURT USE ONLY ▲ |
| Attorneys for Petitioners:<br><br>Mario Nicolais, Atty. Reg. # 38589<br>KBN Law, LLC<br>7830 W. Alameda Ave., Suite 103-301<br>Lakewood, CO 80226<br>Phone: 720-773-1526<br>Email: mario@kbnlaw.com<br><br>Martha M. Tierney, Atty. Reg. # 27521<br>Tierney Lawrence Stiles LLC<br>225 E. 16th Ave., Suite 350<br>Denver, CO 80203<br>Phone: 303-356-4870<br>Email: mtierney@tls.legal<br><br>Eric Olson, Atty. Reg. # 36414<br>Sean Grimsley, Atty. Reg. # 36422<br>Jason Murray, Atty. Reg. # 43652<br>Olson Grimsley Kawanabe Hinchcliff & Murray LLC<br>700 17th Street, Suite 1600<br>Denver, CO 80202<br>Phone: 303-535-9151 | Case Number: 2023CV032577<br><br>Division/Courtroom: 209 |

Email: eolson@olsongrimsley.com
Email: sgrimsley@olsongrimsley.com
Email: jmurray@olsongrimsley.com

Donald Sherman*
Nikhel Sus*
Jonathan Maier*
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
Phone: 202-408-5565
Email: dsherman@citizensforethics.org
Email: nsus@citizensforethics.org
Email: jmaier@citizensforethics.org

*Pro hac vice admission pending

## JOINT ORDER OF PROOF

Each party below provides their good-faith estimate of the order in which witnesses will be presented and the time required for direct and cross-examination of each witness.

|  | Direct & Redirect | Cross |
|---|---|---|
| **Petitioners' Witnesses** |  |  |
| Officer Hodges | 1:15 | 1:00 |
| Representative Swalwell | :45 | :30 |
| Officer Pingeon | 1:00 | :45 |
| Ms. Grisham | 1:15 | 1:00 |
| Ms. Troye | :45 | :15 |
| Mr. Banks | :45 | :15 |
| Dr. Simi | 2:00 | 1:30 |
| Mr. Magliocca | 1:15 | 1:15 |
| Ms. Rudy | :45 | 1:15 |
| **Respondent Secretary of State's Witnesses** |  |  |
| none |  |  |

| **Intervenor Trump's Witnesses** | | |
|---|---|---|
| Katrina Pierson | :45 | :45 |
| Kash Patel | :45 | :30 |
| Amy Cramer | :45 | :30 |
| Tom Van Flein | :30 | :15 |
| Tom Bjorklund | 1:30 | :15 |
| Hon. Congressman Ken Buck | :30 | :15 |
| Hon. Congressman Troy Nehls. | 1:00 | :45 |
| Michael Van der Veen | :15 | :15 |
| Robert Delahunty | 2:00 | :45 |
| **Intervenor Colorado Republican State Central Committee's Witnesses** | | |
| Mr. Williams | :30 | :30 |
| (May Call) Secretary Griswold | :30 | :30 |

Date: October 23, 2023    Respectfully submitted,

*/s/ Eric Olson*
Eric Olson, Atty. Reg. # 36414
Sean Grimsley, Atty. Reg. # 36422
Jason Murray, Atty. Reg. # 43652
Olson Grimsley Kawanabe Hinchcliff & Murray LLC
700 17th Street, Suite 1600
Denver, CO 80202
Phone: 303-535-9151
Email: eolson@olsongrimsley.com
Email: sgrimsley@olsongrimsley.com
Email: jmurray@olsongrimsley.com

Mario Nicolais, Atty. Reg. # 38589
KBN Law, LLC
7830 W. Alameda Ave., Suite 103-301
Lakewood, CO 80226
Phone: 720-773-1526
Email: Mario@kbnlaw.com

Page **3** of **6**

Martha M. Tierney, Atty. Reg. # 27521
Tierney Lawrence Stiles LLC
225 E. 16th Ave., Suite 350
Denver, CO 80203
Phone: 303-356-4870
Email: mtierney@tls.legal

Donald Sherman*
Nikhel Sus*
Jonathan Maier*
Citizens for Responsibility and Ethics in Washington
1331 F Street NW, Suite 900
Washington, DC 20004
Phone: 202-408-5565
Email: dsherman@citizensforethics.org
Email: nsus@citizensforethics.org
Email: jmaier@citizensforethics.org
*Pro hac vice admission pending

Counsel for Petitioners

## CERTIFICATE OF SERVICE

I served this document on October 23, 2023, by Colorado Courts E-filing and/or via electronic mail as follows:

Michael T. Kotlarczyk
Grant T. Sullivan
Colorado Attorney General's Office
mike.kotlarczyk@coag.gov
grant.sullivan@coag.gov

*Attorneys for Secretary of State Jena Griswold in her official capacity as Colorado Secretary of State*

Scott E. Gessler
Geoffrey N. Blue
Justin T North
Gessler Blue LLC
gblue@gesslerblue.com
jnorth@gesslerblue.com
sgessler@gesslerblue.com

Jonathan Shaw
Mark P. Meuser
Dhillon Law Group, Inc.
jshaw@dhillonlaw.com
mmeuser@dhillonlaw.com

*Attorneys for Donald J. Trump*

Michael William Melito
Melito Law LLC
melito@melitolaw.com

Robert Alan Kitsmiller
Podoll & Podoll, P.C.
bob@podoll.net

Benjamin Sisney
Nathan J. Moelker
Jordan A. Sekulow
Jay Alan Sekulow
Jane Raskin
Stuart J. Roth
American Center for Law and Justice
bsisney@aclj.org
nmoelker@aclj.org
jordansekulow@aclj.org

sekulow@aclj.org
jraskin@raskinlaw.com
sroth@aclj.org

Andrew J. Ekonomou
aekonomou@outlook.com

*Attorneys for Colorado Republican State Central Committee*

/s/ Eric Olson
Counsel for Petitioners

| DISTRICT COURT, DENVER COUNTY, COLORADO | |
|---|---|
| Court Address: 1437 BANNOCK STREET, RM 256, DENVER, CO, 80202 | DATE FILED: October 23, 2023 1:20 PM CASE NUMBER: 2023CV32577 |
| **Plaintiff(s)** NORMA ANDERSON et al. v. **Defendant(s)** JENA GRISWOLD IN HER OFFICIAL CAPACITY et al. | |
| | ⚠ **COURT USE ONLY** ⚠ |
| | Case Number: 2023CV32577 |
| | Division: 209       Courtroom: |
| **Order:Motion to Realign the Secretary of State as a Petitioner (w/attach)** | |

The motion/proposed order attached hereto: DENIED.

The Court holds while Secretary Griswold might have her own personal views of Intervenor Trump, in the context of this litigation she is not antagonistic such that realignment is appropriate.

Regarding Intervenor Trump's concerns as to the efficiencies of trial, the Court has already held that Secretary Griswold's time will be counted against the Petitioners and the Court did so in order to ensure the Intervenors had ample time. Further, the order of presentation will be: (1) Petitioners; (2) Secretary Griswold; (3) Intervenor Trump; and (4) CRSCC. Petitioners will be allowed to put on a rebuttal case to the extent they have time left but any rebuttal case is limited to addressing something unforeseen or regarding a subject matter not addressed in Petitioners' case in chief.

Regarding cross-examinations, to the extent that they so desire, all Parties (including the Intervenors) will be allowed to cross-examine all other Parties' witnesses except that the Intervenors may not cross-examine each others witnesses.

Finally, while the Court does not anticipate this will be an issue, the Court will employ the one touch rule. Meaning the Court will not allow Parties to recall witnesses, but instead will expect the Parties to ask all questions they have of any given witness when that witness is first called.

Issue Date: 10/23/2023

*Sarah B. Wallace*

SARAH BLOCK WALLACE
District Court Judge

| | |
|---|---|
| **DISTRICT COURT**<br>**CITY AND COUNTY OF DENVER,**<br>**COLORADO**<br>1437 Bannock Street, Room 256<br>Denver, CO  80202<br>Phone: (303) 606-2300 | |
| **NORMA ANDERSON, MICHELLE PRIOLA,**<br>**CLAUDINE CMARADA, KRISTA KAFER,**<br>**KATHI WRIGHT,** and **CHRISTOPHER**<br>**CASTILIAN**,<br>          **Petitioners**,<br><br>v.<br><br>**JENA GRISWOLD,** in her official capacity as<br>Colorado Secretary of State, and **DONALD J. TRUMP**<br>          **Respondents**. | ▲ COURT USE ONLY ▲ |
| *Attorneys for Respondent and Intervenor Donald J. Trump:*<br>Scott E. Gessler (28944), sgessler@gesslerblue.com<br>Geoffrey N. Blue (32684), gblue@gesslerblue.com<br>Gessler Blue LLC<br>7350 E. Progress Place, Suite 100<br>Greenwood Village, CO  80111<br>Tel. (720) 839-6637 or (303) 906-1050 | Case Number:<br>2023CV32577<br><br>Division: |

| |
|---|
| **MOTION TO REALIGN THE SECRETARY OF STATE AS A PETITIONER** |

| |
|---|
| **Conferral under C.R.C.P. 121 § 15-8**<br><br>The undersigned counsel has conferred with the Secretary of State's counsel regarding this motion who opposes the relief sought. Petitioners' counsel opposes the relief requested. The Intervenor does not oppose the relief requested. |

**Introduction**

This lawsuit is about keeping President Trump from running for office again.

Although the Petitioners brought this action against the Secretary as a Respondent, through

her actions the Secretary has aligned herself with the Petitioners, as is most evident by her refusal to accept President Trump's statement of intent, absent an order from this Court. Immediately after Petitioners brought this action, she publicly repeated Petitioners' talking points and unequivocally argued that that President Trump participated in an insurrection and should not be permitted to run for office again. Her positions in this lawsuit consistently oppose President Trump and the Intervenors, even when those positions contradict prior policy. In short, the Secretary is acting in this lawsuit as a Petitioner and should be realigned with Petitioners to allow President Trump to appeal decisions by the Secretary, to ensure a proper order of proof, and, if necessary, to cross-examine witnesses endorsed by the Secretary.

## Argument

Colorado law allows a court to realign the parties when the antagonism between the parties shows that they are not properly aligned.[1] In *Pine v. Duhon*, the court realigned the corporation in a derivative lawsuit from plaintiff. Although corporations are normally aligned with plaintiffs, in that case the court realigned the corporation with defendants because the corporation's economic interests were antagonistic to the plaintiff.[2] Other Colorado courts

---

[1] *Pine v. Duhon*, 2014 Colo. Dist. LEXIS 3059, No 13CV30948, *7 (June 27, 2014) *citing First Nat. Bancshares of Beloit, Inc. v. Geisel,* 853 F.Supp. 1333 (Dist. Kansas 1994).

[2] *Id.*

have done the same, realigning parties to place them in the proper alignment for the claims in a case.[3]

Federal courts follow the same logic when determining proper jurisdiction.[4] As the Supreme Court has said, litigation is not meant to be "a game of chess," and the Court does not apply strict rules to determine "[w]hether the necessary collision of interests exists," but ascertains that collision "from the principal purpose of the suit and the primary and controlling matter in dispute."[5] "The courts, not the parties, are responsible for aligning the parties according to their interests in the litigation."[6]

## I.    The Secretary refuses to fulfill her statutory duty and accept President Trump's Statement of Intent.

The Secretary has admitted that she has no explicit authority to disqualify President Trump from appearing on the Republican Party Presidential Preference Primary ballot: "the Election Code does not explicitly give the Secretary independent authority to determine whether a candidate is disqualified from holding office under Section 3 of the Fourteenth Amendment."[7] Yet on October 11, 2023, she stated that she received President Trump's

---

[3] *See Sunvara Land Co. v. Fiduciary Trust Co.,* 371 P.2d 431, 435 (Colo. 1962) *Wright v. Beauvallon Condo. Ass'n.*, 2019 Colo. Dist. LEXIS 578, CN 2018CV30145, *1 (Denver Dist. Court, March 15, 2019).

[4] *Indianapolis v. Chase Nat'l.* Bank, 314 US 63, 68 (1941). *See also* 15A Moore's Federal Practice – Civ. § 102.20 and *First Nat'l Bancshares v. Geisel*, 853 F. Supp. at 1335.

[5] *Id.*

[6] 15A Moore's Federal Practice – Civ. § 102.20.

[7] *Secretary of State's Omnibus Response to Motions to Dismiss* at 2.

statement of intent, but now refuses to certify President Trump to the ballot, absent a court order.[8] In short, she currently has refused to fulfill her duty to execute Colorado's election laws knowing that those laws do not permit her to exclude President Trump from the ballot in this situation.

## II. The Secretary prejudged President Trump's guilt regarding whether he engaged in or incited an "insurrection" on January 6, 2021.

The Secretary's overall posture is antagonistic to President Trump and should be aligned with Petitioners. She has loudly publicized her contempt for President Trump, her belief that he both instigated and engaged in an insurrection on January 6, 2023, and her demand that he should be barred from running for re-election. Here are a few examples:

- In a speech following reelection last year, the Secretary stated that President Trump tried to steal the election, is a liar, and is a threat to our Democracy: "The former president of the US in his thwarted effort to steal the presidency has opened a new chapter in the history of the United States. The use of conspiracies and lies incited an insurrection at the US Capital in hopes of stopping the peaceful transfer of power on July 6 [sic]."[9]

---

[8] *Secretary of State's Notice Regarding Receipt of Candidacy Materials for Donald J. Trump* at 2, October 11, 2023.

[9] Secretary Jena Griswold Victory Speech, Nov. 8, 2022, https://www.youtube.com/watch?v=A5nojN1eA-4, last accessed Oct. 2, 2023.

4

- On August 19, 2023, the Secretary stated, "It's a novel situation, as all of this has been, given the former president tried to steal the 2020 election, and his assault on democracy has not stopped."

- On September 6, 2023, the day of Petitioners' lawsuit, she issued a press release agreeing with Petitioners, arguing "the January 6th insurrection and attempt[ed] to overturn the 2020 Presidential Election."[10]

- Also, on September 6 she took her message to local and national media, stating "This is an unprecedented situation. We've never had a president incite an insurrection and attack our democracy like this."[11]

- And again, on the day of this lawsuit: "Look, Donald Trump tried to steal the 2020 election, it was a blatant attack on the United States and the American people. It's a blatant attack on the fundamental right to vote."[12]

In other words, the Secretary has taken a strong stand that President Trump: 1) incited an insurrection; 2) is disqualified from being President; and 3) is a danger to

---

[10] Ex. A, Press Release, June 6, 2023, https://www.sos.state.co.us/pubs/newsRoom/pressReleases/2023/PR20230906AccessBallot.html, last accessed Oct. 2, 2023.

[11] Ex. B, Zach Montellaro, Constitutional debate over Trump's eligibility to run more extensive than realized, Sept. 6, 2023, https://www.politico.com/news/2023/09/06/colorado-14amendment-trump-00114339, last accessed Oct. 2, 2023.

[12] Ex. C, Young, Quentin, Lawsuit seeks to bar Trump from presidential ballot in Colorado, Sept. 6, 2023, https://coloradonewsline.com/2023/09/06/lawsuit-bar-trump-colorado/, last accessed October 2, 2023.

democracy in the United States. Her unrelenting hostility to President Trump's position in this case shows that the Secretary's interests are antagonistic to President Trump's interests. The "collision of interests," as articulated by Colorado courts, are straightforward; both Petitioners and the Secretary want to bar President Trump from running for President again. But whether President Trump may appear on the ballot is the "principal purpose of the suit and the "primary and controlling matter in dispute."[13]

**III.    The Secretary has aligned herself with Petitioners in this matter.**

Further, the Secretary has actively aligned herself with Petitioners in this matter. She admitted in *The Secretary of State's Omnibus Response to Motions to Dismiss* (the "*Omnibus Response*"), that she is aligned with Petitioners, arguing "In light of the prima facie showing presented in the Verified Petition and the evidence cited there, the Secretary believes that Mr. Trump incited the insurrection."[14] As shown above in Section I, this statement is consistent the Secretary's long-standing and loudly-publicized official position. To be sure, the Secretary implies that the Verified Petition caused her to believe that President Trump should be barred. In fact, however, she has maintained that position for a long time.

Furthermore, at every step in the litigation the Secretary has proven herself to be aligned with the Petitioners. She supported Petitioner's *Motion to Remand* this matter to state from federal court, she supports Petitioner's use of Sections 113 and 1204, she has joined Petitioners in opposing discovery, and she has joined Petitioners' efforts to dismiss President

---

[13] *Indianapolis*, 314 US at 68.

[14] *Secretary of State's Omnibus Response to Motions to Dismiss*, p. 2.

Trump's *Special Motion to Dismiss*. Her actions before this Court show that she opposes

President Trump's efforts to appear on Republican Presidential Preference ballot.

## IV.    Re-alignment will facilitate the litigation of this matter.

Re-alignment is important from a litigation perspective. First, re-alignment puts the

aligned parties on the same side of the case for purposes of the hearings in this matter. The

Court should receive orderly presentation of evidence. To the extent the Secretary will

present any evidence, it should be presented *before* evidence presented by President Trump

and Intervenor (the Colorado Republican Party), giving them the opportunity to understand

the case against them prior to putting on their testimony.[15] This also clarifies who bears the

burden of proof; it is the Secretary, along with the Petitioners, because her arguments and

positions impose upon her the burden of proof as an actual petitioner.[16]  Further, to the

extent the Secretary would want to examine witnesses, she should not be permitted to cross-

examine Petitioners' witnesses by claiming they are hostile witnesses. She, like Petitioners,

should be properly limited to direct examination of those witnesses. Finally, this case is a

matter of public interest. The public deserves an honest presentation of the real interests of

parties, and realignment will present to the public the Secretary's proper position in this

high-profile, highly consequential litigation.

---

[15] *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 2020 U.S. Dist. LEXIS 181093, *4 (S.D.N.Y. September 30, 2020).

[16] *Id.*

**Conclusion**

The Secretary has never been neutral in this matter. She has pre-judged President Trump, loudly and publicly declaring her support for Petitioners. She has consistently taken legal positions in opposition to President Trump. The Secretary's position in opposition to President Trump should be clearly reflected in the position of the parties in this litigation, and the Court should realign her as a petitioner.

FOR THESE REASONS, the court should realign the Secretary of State with Petitioners in this matter, and also grant Donald J. Trump all such further relief as is just, proper or appropriate.

Respectfully submitted this 13th day of Order 2023,

GESSLER BLUE LLC


s/ *Geoffrey N. Blue*
Geoffrey N. Blue


**Certificate of Service**

I certify that on this 13th day of October 2023, the foregoing was electronically served via e-mail or CCES on all parties and their counsel of record:


By:    s/ *Joanna Bila*
Joanna Bila, Paralegal

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

</td><td>

DATE FILED: October 25, 2023 9:28 AM
CASE NUMBER: 2023CV32577

</td></tr>
</table>

| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | |
| --- | --- |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>v.<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP<br><br>**and**<br><br>**Intervenors:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |
| **ORDER RE: DONALD J. TRUMP'S MOTION *IN LIMINE* TO OBJECT TO AND EXCLUDE PETITIONERS' PROPOSED EXPERT, STEPHANIE GRISHAM** | |

This matter comes before the Court on Donald J. Trump's Motion *in limine* to Object to and Exclude Petitioners' Proposed Expert, Stephanie Grisham (hereinafter "MIL"), filed October 17, 2023. Petitioners' Response to Intervenor Trump's MIL (hereinafter "Response") was filed October 20, 2023. The Court, having considered the matter, FINDS and ORDERS as follows:

1

## I.    **PROCEDURAL BACKGROUND**

This matter is set for a five-day court trial beginning October 30, 2023.  In a conferral e-mail regarding the trial, Petitioners indicated that they will call Stephanie Grisham to "testify generally about the subject matter and contents of her declaration, including any exhibits."  *See* Exhibit A to MIL (conferral e-mail); Exhibit B to MIL (Declaration of Stephanie Grisham).  Intervenor Trump moves this Court to disallow Ms. Grisham's testimony entirely, arguing that none of her testimony, if consistent with the Declaration, is admissible.  More specifically, Intervenor Trump argues that: (1) Ms. Grisham seeks to testify about improper character evidence under C.R.E. 404; (2) much of the testimony is hearsay; and (3) what remains is irrelevant.  *See* MIL, p. 2-3.

In response, Petitioners argue that: (1) such objections are not appropriate in a motion *in limine*, and are better resolved at trial; (2) the matter is a trial to the court, so concerns justifying a pre-trial evidentiary ruling on matters such as hearsay objections are inapplicable; and (3) regardless, the testimony Ms. Grisham will provide will not be disqualified under C.R.E. 404, is not hearsay or otherwise meets an exception, and is relevant to disputed issues to be decided by this Court.  *See, generally*, Response.

## II.    **ANALYSIS**

As an initial matter, the Court agrees with Petitioners that objections to the anticipated testimony of a witness, particularly on grounds of hearsay and relevancy, are best made at trial.  When such objections are made contemporaneously with the objectionable testimony (or questions soliciting objectionable testimony), the Court will be much better positioned to judge their propriety.  Hearsay, for example, requires the

Court to find that the objected-to testimony is being offered for the truth of the matter asserted. C.R.E. 801(c); *People v. Mossmann*, 17 P.3d 165, 168 (Colo. App. 2000). Without the context of trial, the Court is hamstrung in its ability to determine why the testimony is being offered. Likewise, issues of relevancy and the probative value of evidence become more focused as evidence is introduced and developed at trial. Finally, questions regarding evidence of bad acts under C.R.E. 404(b) are likewise not appropriately resolved *in limine*, as it requires a court to determine the purpose for which such evidence is offered. *See* C.R.E. 404(b)(2) ("[Prior bad acts evidence] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Rulings *in limine* based on such objections risk prejudicing the party seeking the introduction of evidence, even where a declaration concerning the intended testimony is available, because they are denied the opportunity to develop the showings necessary to support the introduction of evidence.

Further, there is no risk of prejudice to Intervenor Trump based on the Court's denying his MIL without prejudice. Testimony which is introduced, objected to, and found objectionable by the Court will be appropriately disregarded by the Court when reaching its conclusions as finder of fact in this matter. In a trial to the court, there is substantially less risk of the fact-finder being tainted or confused by improper evidence.

As such, the Court denies Intervenor Trump's MIL without prejudice. Objections based on hearsay, relevancy, and prior bad acts may be made during trial to the extent counsel finds such questions and/or testimony objectionable.

The Court wishes to take this opportunity to encourage the parties to streamline their cases to make the best use of their limited time.  The parties should focus their examinations on the issues to be decided by the Court, and avoid, where possible, unnecessary objections.  To that end, the parties should stipulate to exhibits where no good faith objections can be lodged and exercise their best judgment as to the objections they do make.

As the Court previously noted, any time arguing over evidentiary objections at trial will be counted against the party who is trying to preclude the evidence.

### III.    <u>CONCLUSION</u>

For the above stated reasons, the Court DENIES, without prejudice, Intervenor Trump's Motion *in limine* to Object to and Exclude Petitioners' Proposed Expert, Stephanie Grisham.

DATED: October 25, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**

1437 Bannock Street
Denver, CO 80202

**Petitioners:**
NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN

**v.**

**Respondents:**
JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP

**and**

**Intervenors:**
COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP

</td><td>

DATE FILED: October 25, 2023 8:38 AM
CASE NUMBER: 2023CV32577

**Δ COURT USE ONLY Δ**

Case No.: 2023CV32577

Division: 209

</td></tr>
</table>

**ORDER RE: DONALD J. TRUMP'S MOTION TO DISMISS FILED SEPTEMBER 29, 2023**

This matter comes before the Court on Donald J. Trump's Motion to Dismiss, filed September 29, 2023.  Having considered the parties' briefing, the relevant legal authorities cited, and being otherwise familiar with the record in this case, the Court FINDS and ORDERS as follows:

## I.    LEGAL STANDARD

A complaint must state a plausible claim for relief to survive a C.R.C.P. 12(b)(5) motion to dismiss. *Warne v. Hall*, 373 P.3d 588, 591 (Colo. 2016). However, motions to dismiss are disfavored, and may be granted only when, assuming all the allegations of the complaint are true, and drawing all reasonable inferences in favor of the plaintiff, the plaintiff would still not be entitled to any relief under any cognizable legal theory. *Colorado Ethics Watch v. Senate Majority Fund, LLC*, 269 P.3d 1248, 1253 (Colo. 2012); *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011). Although a complaint need not contain detailed factual allegations, a plaintiff must identify the grounds on which he is entitled to relief, and cannot simply provide "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is insufficient if it provides only bald assertions without further factual enhancement. *Id.* at 557.

Whether a claim is stated must be determined solely from the complaint. *Dunlap v. Colorado Springs Cablevision, Inc.*, 829 P.2d 1286, 1290 (Colo. 1992). A court may consider only the facts alleged in the pleadings, as well as "documents attached as exhibits or incorporated by reference, and matters proper for judicial notice." *Denver Post*, 255 P.3d at 1088.

## II.    ANALYSIS

In his Motion to Dismiss, Intervenor Trump makes the following arguments: (1) the question before the Court is a non-justiciable political question; (2) Section 3 of the Fourteenth Amendment is not self-executing; (3) Congress has preempted states from

judging presidential qualifications; (4) Section 3 of the Fourteenth Amendment does not apply to Intervenor Trump; (5) the Petition fails to state a claim that violence constituted an insurrection or President Trump engaged in an insurrection; and (6) the case should be moved to Washington, D.C. under Colorado's *forum non conveniens* statute.

### a. Non-Justiciable Political Question

"In general, the Judiciary has a responsibility to decide cases properly before it, even those it 'would gladly avoid.'" *Zivotofsky ex rel. Zivotofsky v. Clinton,* 566 U.S. 189, 194 (2012) (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)).   A case "involves a political question . . . where there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *Nixon v. United* States, 506 U.S. 224, 228 (1993) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962))  In such a case, the United States Supreme Court has held that a court lacks the authority to decide the dispute before it.  *Zivotofsky*, 566 U.S. at 195.   This exception is narrow.  *Id*.  A court cannot avoid its responsibility to enforce a specific statutory right because the issues have political implications.  *Id*. at 196.

In this case, Intervenor Trump argues that the U.S. Constitution reserves exclusively to the U.S. Congress the decision as to whether a candidate is unqualified under Section 3 of the Fourteenth Amendment.[1]  He does not argue the second basis

---

[1] Intervenor Trump claims that Courts have dismissed "*every* Section Three challenge brought against President Trump—and every other federal candidate or officeholder—arising from the events of January 6, 2021."  Intervenor Trump, however, cites nary a case.  Presumably, this is because those cases have been dismissed for lack of federal standing.  In this case, C.R.S. § 1-1-113 clearly gives Petitioners standing.

under the political question doctrine—that a Court is incapable of resolving the question—nor could he.  Instead, Intervenor Trump argues the U.S. Constitution reserves exclusively for the United States Congress the power under Section 3 of the Fourteenth Amendment to determine whether a party may take office. In doing so, Intervenor Trump relies on cases that address the question of whether various Presidential candidates (Barack Obama, John McCain, and Ted Cruz) were natural born citizens.   He does not cite a case holding that the question before this Court (whether a candidate is barred under Section 3 of the Fourteenth Amendment) is barred under the political question doctrine.

### i.  Intervenor Trump's Cases

Intervenor Trump cites the Third Circuit in *Berg v. Obama*, 586 F.3d 234, 238 (3d Cir. 2009) for the proposition that the question of whether Barack Obama was a natural born citizen was a non-justiciable political question outside the province of the judiciary.  The Court in *Berg* makes no such holding.  Instead, when describing the history of the case, the Third Circuit states, "[w]e also denied that motion, reiterating Berg's apparent lack of standing and also stating that Berg's lawsuit seemed to present a non-justiciable political question."  *Id.*  This Court does not have this order in front of it, in which the Third Circuit apparently stated, "the lawsuit seemed to present a non-justiciable political question."  *Id.*  However, even if it did, it appears that whatever the Third Circuit did say regarding the political question doctrine was *dicta*.

In addition to *Berg*, Intervenor Trump cites a series of trial court opinions, and one California appellate opinion, some published, some unpublished, that largely hold

or state in *dicta* that the plaintiffs' claims are likely also barred under the political question doctrine as a question committed to a coordinate political department. The Court addresses the cases Intervenor Trump cites below.

In *Robinson v. Bowen*, 567 F.Supp.2d 1144, 1145 (N.D. Cal. 2008), an elector pledged to a third-party candidate filed a motion for preliminary injunction seeking to remove John McCain from the ballot because he was allegedly not a natural born citizen. The Court denied the motion for preliminary injunction because the plaintiff was not likely to succeed on the merits. *Id.* at 1146. The Court then noted that Article II of the Constitution prescribes the number of presidential electors to which each state is entitled, and the Twelfth Amendment prescribes the manner in which the electors shall elect the President. *Id.* The Court examined 3 U.S.C. § 15 which directs that Congress "shall open, count, and record the electoral votes" and provides a mechanism for objections. *Id.* at 1147. Finally, it turned to the Twentieth Amendment which provides instructions on how to proceed if a president elect fails to qualify. *Id.* Having looked at these various constitutional provisions and statutes, the *Robinson* Court then concluded, without invoking the political question doctrine, that "[j]udicial review—if any—should occur only after the electoral and Congressional processes have run their course." *Id.* The course it referred to was a 3 U.S.C. § 15 objection to a candidate and the Twentieth Amendment procedures addressing a failure to qualify. The idea, however, of Court intervention after "Congressional processes have run their course" is directly contrary to a holding that this is a political question—where there is no judicial review permitted.

In *Kerchner v. Obama,* 669 F.Supp.2d 477, 479-80 (D. N.J. 2009), two citizens brought actions against various government officials, including the U.S. Congress, alleging President Obama was not a natural born citizen and seeking to compel Congress to hold hearings, conduct investigations, and take certain actions following said investigations. The Court held the plaintiffs did not have Article III standing. *Id.* at 483. In a footnote, the Court noted that even if there was standing, the case likely fell into "the category of generalized grievances that are most appropriately handled by the legislative branch." *Id.* at n. 5. It continued that "it appears that Plaintiffs have raised claims that are likewise barred under the 'political question doctrine' as a question demonstrably committed to a coordinate political department," citing to Article II, Section 1 of the U.S. Constitution and the Twelfth Amendment, Section 3. *Id.*

*Keyes v. Bowen*, 117 Cal.Rptr.3d 207 (Cal. Ct. App. 2010) is the only appellate court opinion cited that has addressed the issue. There, the appellate court held the Secretary of State had no duty to investigate presidential eligibility and extensively cited *Robinson*, *supra*, for the proposition that "presidential qualification issues are best resolved in Congress." *Keyes*, 117 Cal.Rptr.3d at 216.

Of the cases Intervenor Trump relies on, the Court in *Grinols v. Electoral Coll.,* No. 2:12-CV-02997-MCE-DAD, 2013 WL 2294885 (E.D. Cal. May 23, 2013) (unpublished), *aff'd*, 622 F.App'x 624 (9th Cir. 2015) had the most extensive analysis. First, it noted that the "natural born citizen" requirement does not designate which branch should address whether the candidate is qualified. *Id.* at *6. It further noted Article II, Section 1 of the Constitution establishes that the Electoral College elects the

President.  *Id.*  It then pointed out that "[t]he Twelfth Amendment empowers the President of the Senate to preside over the meeting between the House of Representatives and the Senate in which the President of the Senate counts the electoral votes."  *Id.*  According to the Court, "[t]he Twentieth Amendment empowers Congress to create a procedure in the event that neither the President-elect nor Vice President-elect qualifies to serve as President of the Unites States [sic]."  *Id.*  Finally, the Court pointed out that "the Twenty-Fifth Amendment provides for removal of the President should he be unfit to serve."  *Id.*  Based on those provisions, the Court held "the Constitution make[s] clear that the Constitution assigns to Congress, and not to federal courts, the responsibility of determining whether a person is qualified to serve as President of the United States."  *Id.*

In *Strunk v. New York State Bd. of Elections*, No. 6500/11, 2012 WL 1205117, at *12 (N.Y. Sup. Ct. Apr. 11, 2012) (unreported disposition), *aff'd*, 5 N.Y.S.3d 483 (N.Y. App. Div. 2015) the Court held the framework for the Electoral College and its voting procedures for President and Vice President is found in Article II, Section 1 of the Constitution.  More specifically, the Court noted that 3 U.S.C. § 15 dictates "the counting of electoral votes and the process for objecting" to votes.  *Id.*  According to the Court, "[n]o objections were made by members of the Senate and House of Representatives, which would have resolved these objections if made."  *Id.*

Finally, in *Taitz v. Democrat Party of Mississippi*, No. 3:12-CV-280-HTW-LRA, 2015 WL 11017373, at *16 (S.D. Miss. Mar. 31, 2015) (unpublished), the Court, relying on *Keyes* and *Grinols, supra*, held "this court can find no authority in the Constitution

which would permit it to determine that a sitting president is unqualified for office or a president-elect in unqualified to take office.  These prerogatives are firmly committed to the legislative branch of our government."

### ii.  Petitioners' Cases

Petitioners primarily cite *Elliot v. Cruz*, 137 A.3d 646 (Pa. Commw. Ct. 2016),[2] *aff'd*, 134 A.3d 51 (Pa. 2016), *cert. denied*, 580 U.S. 867 (2016).  There, the Court reviewed Article II, Section 1 and the Twelfth Amendment of the United States Constitution which set forth the procedure by which a person is elected to the office of the President.  *Id.* at 650.  The Court in *Elliot* described Article II, Section 1 and the Twelfth Amendment as accomplishing the following:

1. vested in the legislatures of the several states, not Congress, the power to "appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled."
2. commanded the electors, once selected, to meet in their respective states, and vote by ballot for two persons, and then to transmit their votes to the nation's seat of government.
3. commanded, upon receipt, the President of the Senate open the ballots and count the votes in the presence of the members of the Senate and the House of Representatives.
4. provide that only in the case of a tie, or the absence of a majority, does the Constitution allow Congress to choose the President and Vice President.

*Id.* (quoting U.S. CONST. art. II, § 1, cl. 2).

After reviewing the various constitutional provisions that supposedly support the Court dismissing the case due to the political question doctrine, the Court in *Elliot* concluded that the Constitution does not vest the Electoral College with the power to

---

[2] The Pennsylvania Commonwealth Court is an appellate court that also has original jurisdiction to hear election cases.

determine eligibility of a presidential candidate. *Id.* at 650-51. The Court similarly concluded that Congress has no control over the process other than deciding the day on which electors "'give their votes.'" *Id.* at 651 (quoting U.S. CONST. amend. XII). The Court then compared the provisions regarding Presidential eligibility with those regarding the eligibility of Congress where the U.S. Constitution clearly vests in Congress the power to determine the eligibility of its own members. *Id.* The Court concluded that because the Constitution does not vest any entity of the federal government with the power to ensure that only persons who are constitutionally eligible become the President, that determination is reserved for the Courts. *Id.*

The only other case the Petitioners cite that squarely addresses this issue is *Williams v. Cruz*, OAL Dkt. No. STE 5016-16, pp. 4-5 (N.J. Off. of Admin. Law Apr. 12, 2016), a New Jersey administrative law decision where the judge examined the various Constitutional provisions and held:

> While Congress is the Judge of the Elections, Returns, and Qualifications of its Own Members, including their citizenship . . . Congress is not afforded any similar role in connection with the issue of Presidential eligibility. There is no basis to conclude that the issue of eligibility of a person to serve as President has been textually committed to the Congress.

### iii. Analysis

Intervenor Trump argues the weight of the law favors a holding that the political question doctrine precludes judicial review, and that Petitioner can only cite "two idiosyncratic state cases that never received appellate review."[3] The Petitioners, on the

---

[3] The Pennsylvania Supreme Court affirmed the decision in *Elliot v. Cruz*, 137 A.3d 646 (Pa. Commw. Ct. 2016).

other hand, argue nothing in the Constitution commits to Congress and the Electoral College the exclusive power to determine presidential qualifications and that Intervenor Trump's cases are distinguishable because in none of those cases did the plaintiffs bring pre-election suits in state court under a state law authorizing ballot access challenges.

The Court agrees with Intervenor Trump that the weight of cases have held that challenges to an individual's qualifications to be President are barred by the political question doctrine. The Court, however, agrees with Petitioners that most of the cases Intervenor Trump cites involved post-election attempts to remove former President Obama from office and that there is at least some distinction between ballot access cases and removing a sitting President. Further, most of the cases concluding that the political question doctrine applies did so with very little analysis of what the constitutional provisions they rely on provide. For that reason, the Court looks to the specific provisions to determine if they meet the "textually demonstrable constitutional commitment of the issue to a coordinate political department" standard. *Baker*, 369 U.S. at 217.

## ARTICLE II OF THE U.S. CONSTITUTION

U.S. CONST. art. II, § 1, cl. 2 provides:

> Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

This clause vests the States authority to appoint electors. The Court cannot find anything in this clause supporting a holding that the Constitution directs Congress to

10

determine whether a candidate for President or a President-elect is constitutionally ineligible.

U.S. CONST. art. II, § 1, cl. 3 provides:

> The electors shall meet in their respective States, and vote by ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves. And they shall make a List of all the Persons voted for, and of the Number of Votes for each; which List they shall sign and certify, and transmit sealed to the Seat of the Government of the United States, directed to the President of the Senate. The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted. The Person having the greatest Number of Votes shall be the President, if such Number be a Majority of the whole Number of Electors appointed; and if there be more than one who have such Majority, and have an equal Number of Votes, then the House of Representatives shall immediately chuse by Ballot one of them for President; and if no Person have a Majority, then from the five highest on the List the said House shall in like Manner chuse the President. But in chusing the President, the Votes shall be taken by States, the Representation from each State having one Vote; A quorum for this Purpose shall consist of a Member or Members from two-thirds of the States, and a Majority of all the States shall be necessary to a Choice. In every Case, after the Choice of the President, the Person having the greatest Number of Votes of the Electors shall be the Vice President. But if there should remain two or more who have equal Votes, the Senate shall chuse from them by Ballot the Vice-President.

This clause directs that the Electors shall meet and certify a list of whom the Electors voted for and transmit it to the President of the Senate. The President of the Senate shall the open the Certificates and count them. It also outlines what happens if there is a tie. The Court cannot find anything in this clause supporting a holding that the Constitution directs Congress to determine whether a candidate for President or a President-elect is constitutionally ineligible.

U.S. CONST. art. II, § 1, cl. 4 provides: "The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States."

This clause says that Congress sets the date that the Electors meet to certify their votes. The Court cannot find anything in this clause supporting a holding that the Constitution directs Congress to determine whether a candidate for President or a President-elect is constitutionally ineligible.

U.S. CONST. art. II, § 1, cl. 5 provides:

> No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any Person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States.

While this clause sets out certain constitutional qualifications, it says nothing regarding what branch of the government shall determine if the candidate meets those eligibility qualifications.

U.S. CONST. art. II, § 1, cl. 6 provides:

> In Case of the Removal of the President from Office, or of his Death, Resignation, or Inability to discharge the Powers and Duties of the said Office, the Same shall devolve on the Vice President, and the Congress may by Law provide for the Case of Removal, Death, Resignation or Inability, both of the President and Vice President, declaring what Officer shall then act as President, and such Officer shall act accordingly, until the Disability be removed, or a President shall be elected.

This clause addresses what happens when a President is removed and does not address who determines whether a candidate for President or President-elect meets eligibility qualifications.

## THE TWELFTH AMENDMENT

> The Electors shall meet in their respective states and vote by ballot for President and Vice-President, one of whom, at least, shall not be an inhabitant of the same state with themselves; they shall name in their ballots the person voted for as President, and in distinct ballots the person voted for as Vice-President, and they shall make distinct lists of all persons voted for as President, and of all persons voted for as Vice-President, and of the number of votes for each, which lists they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate;—The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted;—The person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of Electors appointed; and if no person have such majority, then from the persons having the highest numbers not exceeding three on the list of those voted for as President, the House of Representatives shall choose immediately, by ballot, the President. But in choosing the President, the votes shall be taken by states, the representation from each state having one vote; a quorum for this purpose shall consist of a member or members from two-thirds of the states, and a majority of all the states shall be necessary to a choice. And if the House of Representatives shall not choose a President whenever the right of choice shall devolve upon them, before the fourth day of March next following, then the Vice-President shall act as President, as in case of the death or other constitutional disability of the President.—The person having the greatest number of votes as Vice-President, shall be the Vice-President, if such number be a majority of the whole number of Electors appointed, and if no person have a majority, then from the two highest numbers on the list, the Senate shall choose the Vice-President; a quorum for the purpose shall consist of two-thirds of the whole number of Senators, and a majority of the whole number shall be necessary to a choice. But no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President of the United States.

U.S. CONST. amend. XII.

The Twelfth Amendment modifies Article II, Section 1, Clause 3 and makes it clear that the President and Vice President are chosen separately but together. If there

is no majority or a tie for President, the House of Representatives chooses the President. In the interim, the newly elected Vice President will serve as President. While the Twelfth Amendment references the "constitutional disability of the President" and that "no person constitutionally ineligible to the office of President shall be eligible to that of Vice-President," the Court cannot find anything in this clause supporting a holding that the Constitution directs Congress to determine whether a candidate for president or a President-elect is constitutionally ineligible.

## SECTION 3 OF THE TWENTIETH AMENDMENT

> If, at the time fixed for the beginning of the term of the President, the President elect shall have died, the Vice President elect shall become President. If a President shall not have been chosen before the time fixed for the beginning of his term, or if the President elect shall have failed to qualify, then the Vice President elect shall act as President until a President shall have qualified; and the Congress may by law provide for the case wherein neither a President elect nor a Vice President elect shall have qualified, declaring who shall then act as President, or the manner in which one who is to act shall be selected, and such person shall act accordingly until a President or Vice President shall have qualified.

U.S. Const. amend. XX, § 3.

This provision addresses what happens if the President-elect dies or fails to qualify. It also allows Congress to make law to provide for the case when neither the President-elect nor the Vice President-elect qualify. *Robinson*, 567 F.Supp.2d at 1147; *Keyes*, 117 Cal.Rptr.3d at 216; and *Grinols,* 2013 WL 2294885 at *6 cite the Twentieth Amendment for the proposition that it empowers Congress to create a procedure if neither the President-elect nor Vice President-elect qualifies to serve as President of the United States. *See Peace & Freedom Party v. Bowen*, 912 F.Supp.2d 905, 911 (E.D. Cal.

2012), *aff'd sub nom. Lindsay v. Bowen*, 750 F.3d 1061 (9th Cir. 2014) ("Section 3 [of

the Twentieth Amendment] was intended to provide for a then-unprovided for

contingency: the selection and succession of the presidency in the event that the

president elect, vice president elect, or both could not assume office" (citing 75 Cong.

Rec. 3831 (1932) (statement of Rep. Cable))).  And Congress did just that when it passed

the Presidential Succession Act of 1947, 3 U.S.C. § 19.  What Congress has not done is

provide for any process to determine whether a President qualifies and what entity is

supposed to make that determination.  Further, nothing in the text of the Amendment

commits to Congress the exclusive authority to render judgment on a presidential

candidate's fitness to be placed on the ballot.  *See Lindsay*, 750 F.3d at 1065 ("nothing

in the Twentieth Amendment states or implies that Congress has the *exclusive* authority

to pass on the eligibility of candidates for president" (emphasis in original)).  However,

unlike the other Constitutional provisions relied on by the decisions Intervenor Trump

relies on, section 3 of the Twentieth Amendment does include the word "qualify" and

suggests that someone or something has decided whether a President qualifies to be

President.  It is for this reason that the Court has asked the Parties to provide the Court

with testimony regarding the historical meaning and interpretation of this Amendment,

if such evidence exists.

**3 U.S.C. § 15**

     Finally, the decisions Intervenor Trump cites rely heavily on 3 U.S.C. § 15 for the

proposition that there is an objection process when the electoral college votes are

counted and that it is during this process that the objections to the qualifications of a

==President should be made.==  *Robinson*, 567 F.Supp.2d at 1147 ("It is clear that

mechanisms exist under the Twelfth Amendment and 3 U.S.C. § 15 for any challenge to

any candidate to be ventilated when electoral votes are counted, and that the Twentieth

Amendment provides guidance regarding how to proceed if a president elect shall have

failed to qualify"); *Keyes*, 117 Cal.Rptr.3d at 216 (quoting *Robinson, supra*); *Strunk*,

2012 WL 1205117 at *12 ("the counting of electoral votes and the process for objecting

for the 2009 Presidential election is found in 3 USC § 15. . . . This required the meeting

of the joint session of Congress to count the 2008 electoral votes. . . .  No objections

were made by members of the Senate and House of Representatives, which would have

resolved these objections if made. This is the exclusive means to resolve objections to

the electors' selection of a President or a Vice President"); *Taitz*, 2015 WL 11017373 at

*13 (noting that the *Keyes* Court cited the Twelfth Amendment and 3 U.S.C.  § 15 when

it "stated that the Constitution and laws of the United States delegate to Congress the

authority to raise and decide objections to a presidential nominee's candidacy"); *see also*

*Oines v. Ritchie*, Dkt. No. A12-1765 (Minn. Oct. 18, 2012) (citing *Keyes* in support of the

conclusion that 3 U.S.C. § 15 provides the avenue for challenging constitutional

qualifications of presidential candidates).

Congress, however, amended 3 U.S.C. § 15 in 2022.  As amended, 3 U.S.C. §

15(d)(2)(B)(ii) provides: "The only grounds for objections shall be as follows: (I) The

electors of the State were not lawfully certified under a certificate of ascertainment of

appointment of electors according to section 5(a)(1). (II) The vote of one or more

electors has not been regularly given."

As such, it appears that Congress has disavowed any ability it once had to consider objections other than the two listed above—including any regarding the constitutional qualifications of the President-elect.

## SECTION 3 OF THE FOURTEENTH AMENDMENT

> No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

U.S. CONST. amend. XIV, § 3.

This provision clearly gives Congress the ability to remove a constitutional disability should a person be disqualified under Section Three of the Fourteenth Amendment. However, it says nothing regarding what government body would adjudicate or determine such disability in the first instance.[4] The Court notes, however, it would be strange for Congress to be the only entity that is empowered to determine the disability and then also the entity that is empowered to remove it.

---

[4] Intervenor Trump argues that "Section Three itself contains an exclusive grant of jurisdiction to Congress." The argument is that if this Court were to disqualify Intervenor Trump from being a candidate, it would strip Congress of the ability to remove the disability. The Court disagrees. If this Court were to disqualify Intervenor Trump, there would be nothing standing in the way of Congress immediately removing that disability. In fact, there is nothing standing in Congress's way of removing the disability prior to Secretary Griswold or this Court determining whether Intervenor Trump is disqualified in the first instance.

17

The Court, having considered the above, declines to dismiss this case under the political question doctrine. A controversy involves a political question when, as is argued here, there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *Baker*, 369 U.S. at 217. As the foregoing demonstrates, there is no textually demonstrable constitutional commitment of the issue to a coordinate political department. The text is simply silent as to the specific issue, and arguments by inference, implication, or convention fail to demonstrate the kind of strong "textually demonstrable commitment" necessary for the Court to find the matter nonjusticiable. *See*, *e.g.*, U.S. CONST. art. I, § 5, cl. 1 ("Each House shall be the Judge of the Elections, Returns, and Qualifications of its own Members"); *Powell v. McCormack*, 395 U.S. 486, 548 (1969) (Art. I, § 5, cl. 1 is a "textually demonstrable commitment" to Congress to judge *only* the qualifications expressly set forth in art. I, § 2, cl. 2, and nothing more).

The Court will, however, revisit this ruling when it makes a final ruling following the hearing set to begin October 30, 2023 to the extent that there is any evidence or argument at trial that provides the Court with additional guidance on whether the issue of presidential eligibility has been delegated to the United States Congress. *Baker*, 369 U.S. at 198 ("In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded.")

### b.  Whether the Fourteenth Amendment Is Self-Executing

Citing a law review article authored by Joshua Blackman and Seth Barrett Tillman, Intervenor Trump argues "Section Three of the Fourteenth Amendment is not self-executing and cannot be applied to support a cause of action seeking judicial relief absent Congressional enactment of a statute authorizing Plaintiffs to bring such a claim in court."  Intervenor Trump argues that the Blackman and Tillman law review article substantially refutes the law review article authored by William Baude and Michael Stokes Paulsen which the Petitioners cite in their Response causing the authors "to substantially modify their own analysis" and for a well-respected constitutional scholar, Steven Calabresi, to reverse his position on the matter.  The Court has reviewed the modifications of the Baude and Paulsen law review article and the modifications do not in any way reverse their positions.  Further, the retraction from Calabresi had nothing to do with whether Section Three was self-executing but was rather based on whether Section Three applies to Presidents.  This leaves the Court with two law reviews that are over 100 pages each with contradictory conclusions.

Intervenor Trump argues there is "[a]mple precedent" supporting Blackman and Tillman's conclusion that Section Three was not self-executing.  But the only precedent cited is *In re Griffin*, 11 F.Cas. 7 (C.C. Va. 1869) written by Chief Justice Salmon Chase while riding circuit.

The Petitioners, on the other hand, argue that whether Section 3 is self-executing is irrelevant because Petitioners are proceeding under Colorado's Election Code which provides it a cause of action.  The Court agrees.  To the extent that the Court ultimately

holds that C.R.S. § 1-4-1204 allows the Court to order Secretary Griswold to exclude a

candidate under the Fourteenth Amendment, the Court holds that states can, and have,

applied Section 3 pursuant to state statutes without federal enforcement legislation.

*See, e.g., State v. Griffin*, No. D-101-CV-2022-00473, 2022 WL 4295619, at *16 (N.M.

Dist. Ct. Sept. 6, 2022) (adjudicating Section 3 challenge under state *quo warranto*

law); *Worthy v. Barrett*, 63 N.C. 199, 200-01 (1869) (adjudicating Section 3 challenge

as *mandamus* action), *appeal dismissed sub nom. Worthy v. Comm'rs*, 76 U.S. 611

(1869*); In re Tate*, 63 N.C. 308, 309 (1869) (adjudicating Section 3 challenge as

*mandamus* action); *State ex rel. Sandlin v. Watkins*, 21 La.Ann. 631, 632 (La. 1869)

(adjudicating Section 3 challenge under state *quo warranto* law); *Rowan v. Greene*,

Dkt. No. 2222582-OSAH-SECSTATE-CE-57- Beaudrot (Ga. Off. Admin. Hr'gs May 6,

2022) (state administrative Section 3 challenge).[5]

---

[5] Intervenor Trump argues that none of the cited cases are relevant as such cases "relied upon state laws patterned after Section Three that applied to state officials." Not so. In these cases, state law provided the procedural avenue for challenging a candidate's fitness for office, but the substantive question remained qualification under the Fourteenth Amendment, not merely a state law patterned after Section Three. *See Griffin*, 2022 WL 4295619 at *16 ("The Court therefore concludes that . . . Mr. Griffin became disqualified under Section Three of the Fourteenth Amendment"); *Worthy*, 63 N.C. at 200 (procedural statute in question "provides that no person prohibited from holding office by section 3 of the Amendment to the Constitution of the United States, known as Article XIV, shall qualify under this act or hold office in this State" (internal quotation omitted)); *Tate*, 63 N.C. at 309 (applying the rule in *Worthy* to bar County Attorneys from office, to wit: "We are of the opinion that he is disqualified from holding office under the 14th Amendment of the Constitution of the United States"); *Sandlin*, 21 La.Ann. at 631-33 (in *quo warranto* proceeding brought under "the intrusion act (No. 156, acts of 1868)," qualification of candidate was assessed under both the "eligibility act, No. 39, of the acts of the State Legislature of 1868, and the third Section of the Fourteenth Amendment to the Constitution of the United States." Supreme Court of Louisiana held that the eligibility act was not applicable to the proceeding, and that "[t]he inquiry in this case is, has the defendant, under the provisions of the fourteenth amendment to the Constitution of the United States and those of the act of Congress of twenty-fifth June, 1868 [re-admitting secessionist states to the Union, requiring compliance with Section 3 of the Fourteenth Amendment], the legal right to discharge the duties of the office of District Judge of the Eleventh Judicial District.").

### c. Whether Federal Preemption Applies

Intervenor Trump argues that federal law has preempted the States from governing ballot access for presidential candidates.

Under the field preemption doctrine, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012).

> [Congressional] intent to displace state law altogether can be inferred from a framework of regulation "so pervasive . . . that Congress left no room for the States to supplement it" or where there is a "federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."

*Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  In support of this argument, Trump cites the Twelfth Amendment, the Twentieth Amendment, and 3 U.S.C. § 15 for the proposition that federal law occupies the field.

Based on the discussion above regarding the political question doctrine, it is unclear to the Court that there is any mechanism under federal law to determine whether a candidate for President or President-elect meets the eligibility requirements let alone a framework of regulation so pervasive that Congress left no room for the States to supplement it.   The Court declines to dismiss this action based on the field preemption doctrine.

### d. Whether Section Three of the Fourteenth Amendment Applies to a President

This is an issue that will be addressed at the hearing set to begin October 30, 2023.

### e. Whether President Trump Engaged in an Insurrection

This is an issue that will be addressed at the hearing set to begin October 30, 2023.

### f. Forum Selection Clause

Lastly, Intervenor Trump seeks dismissal of the action based on the forum. Colorado law sets out five requirements which all must be met to dismiss on *forum non conveniens* grounds. Pursuant to C.R.S. § 13- 20-1004(1), they are:

1. "The claimant or claimants are not residents of the state of Colorado." C.R.S. § 13-20-1004(1)(a). Here, all Petitioners are Colorado Residents.

2. "An alternative forum exists." C.R.S. § 13-20-1004(1)(b). Intervenor Trump has not identified a viable alternative forum. The three forums he suggests are: (1) Congress—but as discussed above, there is no mechanism by which a Colorado elector can object to Intervenor Trump's qualification to Congress; (2) Criminal Prosecution—Intervenor Trump provides no explanation about how the Petitioners can seek criminal prosecution against Intervenor Trump in Washington, D.C.; and (3) Federal Court in Washington, D.C. But, as Intervenor Trump acknowledges, the Petitioners do not have standing in Federal Court. No adequate alternative forum, therefore, has been identified.

3. "The injury or damage alleged to have been suffered occurred outside of the state of Colorado." C.R.S. § 13-20-1004(1)(c). The alleged injury, in this case, is having an ineligible candidate on the ballot. That injury will occur in Colorado.

4.      "A substantial portion of the witnesses and evidence is outside the state of Colorado." C.R.S. § 13-20-1004(1)(d).  Here, Intervenor Trump concludes this is the case but has not put forth any specific witness that he'd like to attend that is unavailable at trial.

5.      "There is a significant possibility that Colorado law will not apply to some or all of the claims." C.R.S. § 13-20-1004(1)(e).  There is no doubt that Colorado election law will play a significant part in any decision this Court renders.

As Intervenor Trump acknowledges, except in the "most unusual circumstances," a resident plaintiff's choice of forum is honored.  *McDonnell-Douglas Corp. v. Lohn,* 557 P.2d 373, 374 (Colo. 1976).  In fact, Colorado courts have "extremely limited discretion under this doctrine to dismiss an action filed by a resident plaintiff." *Cox v. Sage Hosp. Res., LLC*, 413 P.3d 302, 304 (Colo. App. 2017).  Here, the Petitioners all reside in Colorado and have exercised their right to object to Intervenor Trump's name being placed onto the ballot under C.R.S. § 1-1-113 and C.R.S. § 1-4-1204.  While Trump argues that they are nominal plaintiffs, he fails to explain who the actual plaintiffs are in this matter.

In short, Intervenor Trump's motion under the *forum non conveniens* statute fails because he has not articulated why this is a "most unusual circumstance," nor has he offered an alternative forum or identified witnesses he cannot call because they won't come to Colorado.  Rather, it appears that he is simply objecting to the C.R.S. § 1-1-113 process.

### III.    CONCLUSION

For all the above reasons, the Court DENIES Intervenor Trump's Motion to

Dismiss, filed September 29, 2023.


DATED: October 25, 2023.

                                                BY THE COURT:

                                                *Sarah B Wallace*

                                                Sarah B. Wallace
                                                District Court Judge

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: October 25, 2023 3:42 PM<br>CASE NUMBER: 2023CV32577 |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP<br><br>**and**<br><br>**Intervenor:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |
| **ORDER GRANTING REQUESTS FOR EXPANDED MEDIA COVERAGE AND ORDERING POOLING ARRANGEMENTS** | |

**THIS MATTER** comes before the Court on Requests for Expanded Media Coverage, filed by Law360, Lawfare, Colorado Newsline, Law & Crime Trial Network ("Law&Crime"), Associated Press ("AP"), CBS News Colorado ("CBS"), Cable News Network ("CNN"), Colorado Public Radio ("CPR"), and the New York Times ("NYT") (collectively, "Requestors"). The Court, having reviewed the Requests and otherwise being sufficiently advised, hereby FINDS and ORDERS as follows:

## STANDARDS FOR AUTHORIZING COVERAGE

Pursuant to Chapter 38, Rule 3(a)(2) of the Colorado Court Rules,

In determining whether expanded media coverage should be permitted, a judge shall consider the following factors:

(A) Whether there is a reasonable likelihood that expanded media coverage would interfere with the rights of the parties to a fair trial;

(B) Whether there is a reasonable likelihood that expanded media coverage would unduly detract from the solemnity, decorum and dignity of the court; and

(C) Whether expanded media coverage would create adverse effects which would be greater than those caused by traditional media coverage.

## ANALYSIS

Requestors are seeking expanded media coverage of the Hearing in this case scheduled to begin October 30, 2023. The Court finds expanded media coverage is appropriate for Requestors in this case, so long as they strictly adhere to all the parameters outlined below. The Court expects full compliance with all applicable restrictions and notes this Order authorizes expanded media coverage **only** of the Hearing scheduled to occur from October 30, 2023 to November 3, 2023 in this case.

In accordance with Chapter 38, Rule 3(a)(4),

A judge may restrict or limit expanded media coverage as may be necessary to preserve the dignity of the court or to protect the parties, witnesses, or jurors. A judge may terminate or suspend expanded media coverage at any time upon making findings of fact that: (1) rules established under this Rule or additional rules imposed by the judge have been violated; or (2) substantial rights of individual participants or rights to a fair trial will be prejudiced by such coverage if it is allowed to continue.

Therefore, the Court may further restrict and/or revoke the expanded media coverage authorized in this case beyond the restrictions outlined below. Additionally, any inappropriate actions not permitted by this order which disrupt the proceedings may result in expulsion from the Courtroom and/or other legal sanctions, including contempt of court.

### *Virtual Webex Courtroom*

All Requestors except Colorado Newsline seek some form of expanded media coverage as it relates to the Webex Courtroom. Expanded media coverage conducted over Webex is minimally disruptive to the proceedings occurring in the Courtroom. As such, the Court finds that expanded media coverage over Webex for the Hearing set to begin October 30, 2023 is appropriate and will be permitted for all of the Requestors

(defined above). However, individuals conducting expanded media coverage over Webex should still conduct themselves in a manner consistent with the decorum and dignity of the courtroom as if conducting expanded media coverage in person.

*In-Person Courtroom*

In addition to the expanded media coverage requests of the proceedings over Webex, the Court has also received requests for in-person expanded media coverage of the proceedings from Colorado Newsline, AP, CBS, CNN, and CPR. Colorado Newsline, CBS, CNN, and CPR have requested in-person audio recording; CBS and CNN have requested in-person video recording; and AP and CNN have requested in-person still photography. Unlike expanded media coverage conducted over Webex, in-person expanded media coverage obviously poses a greater risk of disrupting the solemnity of the proceedings in the Courtroom. There is a high level of public interest in these proceedings, and space in the Courtroom is limited. Furthermore, pursuant to Chapter 38, Rule 3(a)(5)(A) of the Colorado Court Rules, only one video camera and one still photography camera are permitted in the Courtroom during proceedings. Therefore, the Court will limit in-person expanded media coverage to one audio feed recording, one video feed recording, and one still photographer. The video feed recording will also be permitted to record audio as part of the video feed recording. Colorado Newsline, AP, CBS, CNN, and CPR should work out among themselves who will be responsible for setting up and collecting this coverage and should inform the Court of who will be responsible for each form of in-person expanded media coverage no later than 5:00 p.m. on October 27, 2023. Whichever groups are responsible for conducting the in-person media coverage will be required to pool their resulting product with all other Requestors who have made a request for in-person media coverage.

Any in-person expanded media coverage will be expected to adhere to the rules of the Court and conduct themselves in a manner which honors the decorum and dignity of the Courtroom. As stated above, any inappropriate attempts to disrupt the proceedings may result in expulsion from the Courtroom and/or other legal sanctions, including contempt of court.

\*\*\*

Accordingly, the Court hereby **GRANTS** Law360, Lawfare, Colorado Newsline, Law&Crime, AP, CBS, CNN, CPR, and NYT's Requests for Expanded Media Coverage of the Hearing scheduled to begin October 30, 2023 in this case, subject to the terms and conditions of Chapter 38, Rule 3 of the Colorado Court Rules and the restrictions detailed in this Order. Service of this Order to the media groups will be made by email to the

addresses provided in the requests. Finally, because this Hearing is scheduled to begin on a Monday, the Court will not be entertaining any expanded media coverage requests that are filed after 8:00 a.m. on Friday, October 27, 2023. The Court will address any other requests made prior to this deadline in a separate Order.

DATED: October 25, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

</td><td>

DATE FILED: October 27, 2023 1:07 PM
CASE NUMBER: 2023CV32577

</td></tr>
</table>

| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: October 27, 2023 1:07 PM<br>CASE NUMBER: 2023CV32577 |
|---|---|
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP<br><br>**and**<br><br>**Intervenors:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |
| **ORDER RE: DONALD J. TRUMP'S MOTION IN LIMINE TO EXCLUDE PETITIONERS' ANTICIPATED EXHIBITS** | |

This matter comes before the Court on Donald J. Trump's Motion *in limine* to Exclude Petitioners' Anticipated Exhibits, filed October 17, 2023. Petitioners' Response to Intervenor Trump's Motion *in limine* was filed October 20, 2023. The Court, having considered the matter, FINDS and ORDERS as follows:

This matter is set for a five-day Court trial beginning October 30, 2023. In his Motion *in limine*, Intervenor Trump "groups exhibits into categories for purposes of

1

common objections."  The Court addresses Intervenor Trump's categories as well as specific objections below.

### 1. Final Report, Select Committee to Investigate the January 6th Attack on the United States Capitol

Intervenor Trump argues this Court should not allow Petitioners to present the Final Report, Select Committee to Investigate the January 6th Attack on the United States Capitol, HR 117-663, 117th Cong., 2d Sess. (Dec. 22, 2022) ("January 6th Report") because it is a political document.  Intervenor Trump points to C.R.E. 104(a) and suggests that this Court should first determine whether the January 6th Report is reliable enough to be admitted into evidence.

C.R.E. 803(8) excludes from the hearsay rule "factual findings resulting from an investigation made pursuant to authority granted by law."  C.R.E. 803(8) is nearly identical to its federal counterpart, F.R.E. 803(8). "Cases interpreting a similar federal rule of evidence are instructive" in Colorado.  *Leiting v. Mutha*, 58 P.3d 1049, 1052 (Colo. App. 2002). As such, federal law is instructive when interpreting C.R.E. 803(8) here.

Intervenor Trump primarily relies on *Barry v. Tr. of Int'l Ass'n Full-Time Salaried Officers & Emps. of Outside Local Unions & Dist. Counsel's (Iron Workers) Pension Plan*, 467 F.Supp.2d 91 (D.D.C. 2006).  There, the Court examined two congressional reports regarding whether there was corporate malfeasance and possible director misconduct related to a pension.  *Id*. at 94-95.  The Court held that the Senate Report was admissible but that the House Report was not.  *Id*. at 107.  The Court distinguished the two reports finding that the Senate Report set forth the investigative

steps taken by the Committee and its staff.  *Id.* at 99-101.  These activities included reviewing all the documents used in an earlier report, interviews with key figures, and a public hearing.  *Id.* at 99.  The Court contrasted that to the House report which was a thirteen-page document that was prepared hastily and borrowed almost exclusively from a prior report.  *Id.* at 101.  It also criticized the "tentative legal conclusions without appreciable analysis."  *Id.*

Citing to *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988) and the Federal Advisory Committee Notes to C.R.E. 803(8)'s federal analogue, the Court in *Barry* noted that the Rule assumes admissibility in the first instance.  *Barry*, 467 F.Supp.2d at 96.  "Hence, the party challenging the admissibility of a public or agency report . . . bears the burden of demonstrating that the report is not trustworthy." *Barry*, 467 F.Supp.2d at 96.  The Court then examined four factors first articulated in *Beech Aircraft Corp.*, 488 U.S. at 167 n. 11 which are meant to assist courts in assessing a report's trustworthiness: "(1) the timeliness of the investigation; (2) the special skill or expertise of the investigating official; (3) whether a hearing was held and the level at which it was conducted; and (4) possible motivation problems."  *Barry*, 467 F.Supp.2d at 97.  The Court in *Barry* further instructed that when examining the factors, a court must focus on whether the report was prepared in a reliable manner instead of whether the Court agrees with the conclusions.  467 F.Supp.2d at 97 (citing *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1306-07 (5th Cir. 1991)).

In addition to the four factors, *Barry* instructs that "Congressional reports are not entitled to an additional presumption of trustworthiness or reliability—beyond the

one already established in the Advisory Committee Notes—simply by virtue of having been produced by Congress." *Id.* at 98. Further, courts should look to whether members of both parties joined in the report. *Id.*

The question for this Court is whether Intervenor Trump has overcome the presumptive admissibility of the January 6th Report. Intervenor Trump's main arguments against the admissibility of the January 6th Report are: (1) all nine members of the committee held a "deep personal animus towards President Trump;" and (2) there was a lack of involvement of the minority party and therefore a lack of opportunity for effective dissent.

Petitioners respond that the composition of the committee was a result of two things: (1) Senate Republicans' refusal to vote for an independent and bipartisan commission; and (2) Republicans' decision to boycott the Select Committee altogether when Speaker of the House Nancy Pelosi refused to seat two of the five choices Republicans put forth to sit on the Committee.

Both Intervenor Trump's arguments and the Petitioners' response focus mainly on the fourth factor articulated in *Barry*—possible motivation problems. In support of the motivation problems, Intervenor Trump provides the declaration of U.S. Rep. Troy Edwin Nehls. In that declaration, Rep. Nehls describes the Select Committee as a "kangaroo court." He complains that the makeup of the committee was always supposed to be 8 Democrats to 5 Republicans. The Petitioners, in turn, point out that one of the 8 Democrat-nominated members of the committee was Former U.S. Rep. Elizabeth Cheney who, prior to January 6, 2021, served as the chair of the House

Republican Conference—the third highest position in House Republican Leadership. Therefore, had the Republicans chosen to participate, the Committee would have been 7 Democrats and 6 Republicans.  Rep. Nehls consistently refers to Former Reps. Cheney and Kinzinger as "nominal" Republicans even though they were duly elected Republicans—Rep. Kinzinger being elected six times and Rep. Cheney being elected three times.  The Court, however, is cognizant of the fact that Speaker Pelosi rejected two of the five recommended Republicans for the Committee that the Minority Leader put forth and that Speaker Pelosi admitted this decision was "unprecedented."

The Court has reviewed the declaration of Timothy J. Heaphy which specifically addresses the reliability of the January 6th Report.  Mr. Heaphy was the chief investigative counsel for the Select Committee.  Mr. Heaphy was a former U.S. Attorney with significant experience.  The investigative staff included 20 lawyers which Mr. Heaphy notes included many Republicans.  Importantly, the staffing decisions did not include any inquiry into political affiliation.   The investigation started in the Summer of 2021 and concluded approximately 18 months later.  The Committee and its investigative staff interviewed or deposed more than 1,000 witnesses, collected and reviewed over 1 million documents, reviewed hundreds of hours of video footage, and reviewed 60 federal and state court rulings related to the 2020 election.  Former President Trump was subpoenaed, and he refused to comply with the subpoena. The overwhelming majority of witnesses who the Select Committee interviewed or deposed were Trump administration officials and Republicans.  The findings of the Committee

were unanimous, which is why there was not a minority report.  This includes the two Republicans who sat on the Select Committee.

Applying the *Barry* factors, the Court conditionally[1] holds that the first three factors weigh strongly in favor of reliability.  The investigation started approximately six months after the events of January 6, 2021 and ended less than two years after the events took place.  As a result, "the passage of time in no way detracts from the report's reliability." *Id.* at 100.  The investigation was conducted by a well-staffed, highly skilled group of lawyers (including a Republican U.S. Attorney) and led by a former U.S. Attorney.  There was a hearing conducted over ten days and 70 witnesses testified—all who testified under oath.  The Select Committee had large volumes of records that it independently evaluated when crafting its final report.

The Court agrees with Intervenor Trump that the January 6th Report would have further reliability had there been greater Republican participation.  However, the fact that the congressional Republicans chose not to seat the three Republican members that Speaker Pelosi was agreeable to seating or to nominate a new slate of potential members and instead chose to not participate is not a valid reason to reject the January 6th Report in total.  Further, while Intervenor Trump has put forth evidence that the members of the Select Committee had animus towards President Trump, he has not put forth evidence that the Select Committee disregarded evidence that contradicted their findings or that they refused to hear or consider exculpatory evidence.  And while

---

[1] The ruling is conditional because Intervenors have not had the opportunity to cross-examine Mr. Heaphy which the Court intends to allow them to do should they so choose.  The Court also has not heard from Rep. Nehls who is a will call witness for Intervenor Trump.

Intervenor Trump argues that "1,000 partisan, biased witness examinations still produce a partisan, biased report," the Court disagrees.  Unless there is evidence that the Select Committee and its staff coerced witness testimony, refused to hear testimony they did not want to hear, or disregarded exculpatory evidence, the Court cannot find that the results of the investigation are necessarily unreliable simply based on the composition of the Select Committee.

To be clear, the Court's ruling that the January 6th Report is conditionally admissible under C.R.E. 803(8) does not mean that the entire report will be introduced into evidence.  As the U.S. Supreme Court recognized in *Beech Aircraft Corp.*, there are other safeguards in the rules of evidence to provide trial courts "with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them."  488 U.S. at 167-68.  There is a significant limitation on the admissibility of certain portions of the January 6th Report because they are hearsay.  The Court does not intend to admit any out-of-court statements that do not meet an exception to the hearsay rule.

### 2.  Compilation of Findings Contained in the January 6th Report

First, Intervenor Trump objects to Exhibit 78 on the basis of authentication under C.R.E. 901.  However, he provides no argument as to what the authentication issue is with the findings.  Because the January 6th Report is properly authenticated*, People v. Vasquez*, 155 P.3d 588, 594 (Colo. App. 2006), the Court rejects the argument that the compilation which is comprised of excerpts of the January 6th Report verbatim suffers from a lack of authentication.

The Court originally ordered Intervenor Trump to make evidentiary objections to the evidence contained in the anti-SLAPP response when he replied in further support of the anti-SLAPP Motion on October 6, 2023. Intervenor Trump failed to do so. The Court then ordered Trump to make evidentiary objections to the evidence contained in the anti-SLAPP response by October 13, 2023. Intervenor Trump failed to do that claiming that because the Court denied the anti-SLAPP motion, he did not need to respond to the evidentiary issues raised in the anti-SLAPP motion. The Court then ordered that Intervenor Trump needed to make objections to the anti-SLAPP evidentiary issues by October 17, 2023. On October 17, 2023, Intervenor Trump objected to the findings based on hearsay but did not advise the Court and Petitioners exactly what findings contain hearsay. The Court will address the few specific findings that Intervenor Trump has identified. **To the extent Intervenor Trump has additional objections to the findings, he should identify which ones and the basis by October 28, 2023.**

### Findings #54 and #176

Finding #54 appears to contain statements of the crowd at the Ellipse on January 6, 2021. Finding #176 is a joint statement of election security officials regarding the security of the election. The Court holds these statements are inadmissible and do not meet any of the exceptions to the hearsay rule.

### Findings #111 and #254

Findings #111 and #254 include statements of Intervenor Trump. They are admissible as a statement of a party opponent. C.R.E. 801(d)(2).

**Findings #75 and #196**

Findings #75 and #196 relate to Intervenor Trump's attempts to pressure State officials to change the election results at a state level.  Intervenor Trump claims that they are not relevant under C.R.E. 402, that they are prejudicial under C.R.E. 403, and that they are incomplete under C.R.E. 1002.  The Court holds that they are relevant under C.R.E. 402, that their purported prejudice does not outweigh their usefulness, and that Intervenor Trump may offer any additional testimony on the subject if the statements are incomplete.  In addition, President Trump's statements to Sen. Corman are admissible as a statement of a party opponent.  C.R.E. 801(d)(2).

**Findings #50 and #229**

Finding #50 includes statements of Intervenor Trump's lawyers.  Petitioners argue they are admissible under C.R.E. 801(d)(2) because they are statements made by an agent of a party during the existence of a relationship.  The Court disagrees.  These are not statements made on Intervenor Trump's behalf but rather statements made to Intervenor Trump.  They are, however, admissible because they are not being offered for the truth of the matter asserted but rather for the effect on the listener—in this case Trump.[2]

Finding #229 contains inadmissible hearsay and will not be admitted.

**Findings #88 and #103**

Findings #88 and #103 are admissible pursuant to C.R.E. 803(8)(A).

---

[2] The Court is conditionally rejecting many exhibits that are being offered for their effect on the listener--Intervenor Trump.  The reason is that at this time the Court has no evidence that Intervenor Trump heard or read the statements.  To the extent that the Petitioners can provide credible evidence that Intervenor Trump heard a news report or read a newspaper article, the Court will revisit those rulings during trial.

### 3.  Video Exhibits[3]

The Court holds the videos that were used or referenced in the January 6th Report and hearings are authenticated *vis a vis* the January 6th Report.

Exhibits 88-96, 110, and 119 are videos of the January 6, 2021 events and are not hearsay.  Exhibit 122 includes inadmissible hearsay and the Court will only admit the portion of the video that is footage at the Capitol.  Exhibit 109 is replete with hearsay and will not be admitted unless the Petitioners want to offer certain segments that do not contain hearsay or meet a hearsay exception.

Exhibits 80, 81, 117, and 120 will be admitted pursuant to C.R.E. 803(3).

### 4.  Transcribed Interviews Before the January 6th Committee

The Court does not intend to admit any transcribed interviews under the residual hearsay exception.  *People v. Shifrin*, 342 P.3d 506, 518 (Colo. App. 2014) ("[The residual hearsay exception pursuant to C.R.E. 807] is 'to be used only rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'" (quoting *United States v. Turner*, 718 F.3d 226, 233 (3d Cir. 2013)).

---

[3] Intervenor Trump objects to many of the exhibits as either irrelevant under C.R.E. 402 or prejudicial under C.R.E. 403.  The Court intends to let all Parties put forth their case and does not intend to fly speck whether certain exhibits are relevant.  All the Parties and their lawyers are highly sophisticated, and the Court is of the opinion that if a Party believes an exhibit is helpful in proving its case it should be allowed to present the exhibit unless otherwise inadmissible under the Rules of Evidence.  Similarly, excluding evidence in a bench trial under C.R.E. 403 is not necessary. *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("we hold that in the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial. Under the Federal Rules of Evidence, admissibility of evidence is favored unless the probative value of the evidence is so low as to warrant exclusion when prejudice is a factor. Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences" (internal citation omitted))

### 5.  Chart Compiling Defendant Statements by Select Committee

The Court will not allow the hearsay statements contained in Exhibit 25 into evidence.

### 6.  Declarations and Prior Trial Testimony

The Court has considered Mr. Heaphy's declaration in determining whether to allow portions of the January 6th Report into evidence.  If the Intervenors would like to cross-examine him on the declaration, the Court will order the Petitioners to make him available via Webex.

### 7.  Videos, Pictures, and Other Evidence

The following exhibits will be admitted: 1-6, 8-21, 47, 48, 50-67, 69, 72, 99-100, 123-124 (Trump statements only), 125, 127, 133-134, 143, 150, 153, and 155.

The following exhibits will be excluded: 37, 40-44, 70, 71, 101, 111, 112, 113, 114, 121, 126, 129, 130, 135, 136, 137, 138, 139, 140, 141, 147, 151, 152, and 154.

Exhibit 8 will be allowed as a demonstrative exhibit only.

The Court requests that Petitioners advise it on the basis that they are offering Exhibit 131.

### 8.  Various Social Media Posts

Exhibit 73 will be excluded.

Exhibits 74, 103, 108, and 148 will be admitted if offered.

### 9.  News Articles and Releases

Exhibits 34, 36, 41, 77, and 98 will be excluded.

### 10.    Government Agency and Staff Reports

Pursuant to C.R.E. 803(8), Exhibits 22, 23, 28, 29, 33, and 35 will be admitted unless Intervenor Trump provides evidence that there are circumstances which would indicate that these exhibits lack trustworthiness.

**CONCLUSION**

The Court believes that it has addressed all the exhibits to which Intervenor Trump objects. To the extent it has not, the Parties should alert the Court as to any objections that are still pending. In addition, the Petitioners, Secretary of State Griswold, and Colorado Republican State Central Committee should advise the Court of any objections they have to exhibits by October 28, 2023.

Pursuant to the foregoing, the Court GRANTS IN PART and DENIES IN PART, Intervenor Trump's Motion *in limine* to Exclude Petitioners' Anticipated Exhibits.

DATED: October 27, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: October 27, 2023 1:07 PM<br>CASE NUMBER: 2023CV32577 |

DATE FILED: October 27, 2023 1:07 PM
CASE NUMBER: 2023CV32577

| | |
|---|---|
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br>**Respondents:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State, and DONALD J. TRUMP<br><br>**and**<br><br>**Intervenors:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |

## ORDER RE: DONALD J. TRUMP'S MOTION IN LIMINE TO EXCLUDE PETITIONERS' ANTICIPATED EXHIBITS

This matter comes before the Court on Donald J. Trump's Motion *in limine* to Exclude Petitioners' Anticipated Exhibits, filed October 17, 2023. Petitioners' Response to Intervenor Trump's Motion *in limine* was filed October 20, 2023. The Court, having considered the matter, FINDS and ORDERS as follows:

This matter is set for a five-day Court trial beginning October 30, 2023. In his Motion *in limine*, Intervenor Trump "groups exhibits into categories for purposes of

1

common objections."  The Court addresses Intervenor Trump's categories as well as

specific objections below.

### 1. Final Report, Select Committee to Investigate the January 6th Attack on the United States Capitol

Intervenor Trump argues this Court should not allow Petitioners to present the

Final Report, Select Committee to Investigate the January 6th Attack on the United

States Capitol, HR 117-663, 117th Cong., 2d Sess. (Dec. 22, 2022) ("January 6th Report")

because it is a political document.  Intervenor Trump points to C.R.E. 104(a) and

suggests that this Court should first determine whether the January 6th Report is

reliable enough to be admitted into evidence.

C.R.E. 803(8) excludes from the hearsay rule "factual findings resulting from an

investigation made pursuant to authority granted by law."  C.R.E. 803(8) is nearly

identical to its federal counterpart, F.R.E. 803(8). "Cases interpreting a similar federal

rule of evidence are instructive" in Colorado.  *Leiting v. Mutha*, 58 P.3d 1049, 1052

(Colo. App. 2002). As such, federal law is instructive when interpreting C.R.E. 803(8)

here.

Intervenor Trump primarily relies on *Barry v. Tr. of Int'l Ass'n Full-Time

Salaried Officers & Emps. of Outside Local Unions & Dist. Counsel's (Iron Workers)

Pension Plan*, 467 F.Supp.2d 91 (D.D.C. 2006).  There, the Court examined two

congressional reports regarding whether there was corporate malfeasance and possible

director misconduct related to a pension.  *Id*. at 94-95.  The Court held that the Senate

Report was admissible but that the House Report was not.  *Id*. at 107.  The Court

distinguished the two reports finding that the Senate Report set forth the investigative

steps taken by the Committee and its staff. *Id.* at 99-101. These activities included reviewing all the documents used in an earlier report, interviews with key figures, and a public hearing. *Id.* at 99. The Court contrasted that to the House report which was a thirteen-page document that was prepared hastily and borrowed almost exclusively from a prior report. *Id.* at 101. It also criticized the "tentative legal conclusions without appreciable analysis." *Id.*

Citing to *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988) and the Federal Advisory Committee Notes to C.R.E. 803(8)'s federal analogue, the Court in *Barry* noted that the Rule assumes admissibility in the first instance. *Barry*, 467 F.Supp.2d at 96. "Hence, the party challenging the admissibility of a public or agency report . . . bears the burden of demonstrating that the report is not trustworthy." *Barry*, 467 F.Supp.2d at 96. The Court then examined four factors first articulated in *Beech Aircraft Corp.*, 488 U.S. at 167 n. 11 which are meant to assist courts in assessing a report's trustworthiness: "(1) the timeliness of the investigation; (2) the special skill or expertise of the investigating official; (3) whether a hearing was held and the level at which it was conducted; and (4) possible motivation problems." *Barry*, 467 F.Supp.2d at 97. The Court in *Barry* further instructed that when examining the factors, a court must focus on whether the report was prepared in a reliable manner instead of whether the Court agrees with the conclusions. 467 F.Supp.2d at 97 (citing *Moss v. Ole S. Real Estate, Inc.*, 933 F.2d 1300, 1306-07 (5th Cir. 1991)).

In addition to the four factors, *Barry* instructs that "Congressional reports are not entitled to an additional presumption of trustworthiness or reliability–beyond the

one already established in the Advisory Committee Notes—simply by virtue of having been produced by Congress." *Id.* at 98.  Further, courts should look to whether members of both parties joined in the report.  *Id.*

The question for this Court is whether Intervenor Trump has overcome the presumptive admissibility of the January 6th Report. Intervenor Trump's main arguments against the admissibility of the January 6th Report are: (1) all nine members of the committee held a "deep personal animus towards President Trump;" and (2) there was a lack of involvement of the minority party and therefore a lack of opportunity for effective dissent.

Petitioners respond that the composition of the committee was a result of two things: (1) Senate Republicans' refusal to vote for an independent and bipartisan commission; and (2) Republicans' decision to boycott the Select Committee altogether when Speaker of the House Nancy Pelosi refused to seat two of the five choices Republicans put forth to sit on the Committee.

Both Intervenor Trump's arguments and the Petitioners' response focus mainly on the fourth factor articulated in *Barry*—possible motivation problems.  In support of the motivation problems, Intervenor Trump provides the declaration of U.S. Rep. Troy Edwin Nehls.  In that declaration, Rep. Nehls describes the Select Committee as a "kangaroo court."  He complains that the makeup of the committee was always supposed to be 8 Democrats to 5 Republicans. The Petitioners, in turn, point out that one of the 8 Democrat-nominated members of the committee was Former U.S. Rep. Elizabeth Cheney who, prior to January 6, 2021, served as the chair of the House

Republican Conference—the third highest position in House Republican Leadership. Therefore, had the Republicans chosen to participate, the Committee would have been 7 Democrats and 6 Republicans.  Rep. Nehls consistently refers to Former Reps. Cheney and Kinzinger as "nominal" Republicans even though they were duly elected Republicans—Rep. Kinzinger being elected six times and Rep. Cheney being elected three times.  The Court, however, is cognizant of the fact that Speaker Pelosi rejected two of the five recommended Republicans for the Committee that the Minority Leader put forth and that Speaker Pelosi admitted this decision was "unprecedented."

The Court has reviewed the declaration of Timothy J. Heaphy which specifically addresses the reliability of the January 6th Report.  Mr. Heaphy was the chief investigative counsel for the Select Committee.  Mr. Heaphy was a former U.S. Attorney with significant experience.  The investigative staff included 20 lawyers which Mr. Heaphy notes included many Republicans.  Importantly, the staffing decisions did not include any inquiry into political affiliation.   The investigation started in the Summer of 2021 and concluded approximately 18 months later.  The Committee and its investigative staff interviewed or deposed more than 1,000 witnesses, collected and reviewed over 1 million documents, reviewed hundreds of hours of video footage, and reviewed 60 federal and state court rulings related to the 2020 election.  Former President Trump was subpoenaed, and he refused to comply with the subpoena. The overwhelming majority of witnesses who the Select Committee interviewed or deposed were Trump administration officials and Republicans.  The findings of the Committee

were unanimous, which is why there was not a minority report.  This includes the two Republicans who sat on the Select Committee.

Applying the *Barry* factors, the Court conditionally[1] holds that the first three factors weigh strongly in favor of reliability.  The investigation started approximately six months after the events of January 6, 2021 and ended less than two years after the events took place.  As a result, "the passage of time in no way detracts from the report's reliability." *Id.* at 100.  The investigation was conducted by a well-staffed, highly skilled group of lawyers (including a Republican U.S. Attorney) and led by a former U.S. Attorney.  There was a hearing conducted over ten days and 70 witnesses testified—all who testified under oath.  The Select Committee had large volumes of records that it independently evaluated when crafting its final report.

The Court agrees with Intervenor Trump that the January 6th Report would have further reliability had there been greater Republican participation.  However, the fact that the congressional Republicans chose not to seat the three Republican members that Speaker Pelosi was agreeable to seating or to nominate a new slate of potential members and instead chose to not participate is not a valid reason to reject the January 6th Report in total.  Further, while Intervenor Trump has put forth evidence that the members of the Select Committee had animus towards President Trump, he has not put forth evidence that the Select Committee disregarded evidence that contradicted their findings or that they refused to hear or consider exculpatory evidence.  And while

---

[1] The ruling is conditional because Intervenors have not had the opportunity to cross-examine Mr. Heaphy which the Court intends to allow them to do should they so choose.  The Court also has not heard from Rep. Nehls who is a will call witness for Intervenor Trump.

Intervenor Trump argues that "1,000 partisan, biased witness examinations still produce a partisan, biased report," the Court disagrees.  Unless there is evidence that the Select Committee and its staff coerced witness testimony, refused to hear testimony they did not want to hear, or disregarded exculpatory evidence, the Court cannot find that the results of the investigation are necessarily unreliable simply based on the composition of the Select Committee.

To be clear, the Court's ruling that the January 6th Report is conditionally admissible under C.R.E. 803(8) does not mean that the entire report will be introduced into evidence.  As the U.S. Supreme Court recognized in *Beech Aircraft Corp.*, there are other safeguards in the rules of evidence to provide trial courts "with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them."  488 U.S. at 167-68.  There is a significant limitation on the admissibility of certain portions of the January 6th Report because they are hearsay.  The Court does not intend to admit any out-of-court statements that do not meet an exception to the hearsay rule.

### 2.  Compilation of Findings Contained in the January 6th Report

First, Intervenor Trump objects to Exhibit 78 on the basis of authentication under C.R.E. 901.  However, he provides no argument as to what the authentication issue is with the findings.  Because the January 6th Report is properly authenticated, *People v. Vasquez*, 155 P.3d 588, 594 (Colo. App. 2006), the Court rejects the argument that the compilation which is comprised of excerpts of the January 6th Report verbatim suffers from a lack of authentication.

7

The Court originally ordered Intervenor Trump to make evidentiary objections to the evidence contained in the anti-SLAPP response when he replied in further support of the anti-SLAPP Motion on October 6, 2023.  Intervenor Trump failed to do so.  The Court then ordered Trump to make evidentiary objections to the evidence contained in the anti-SLAPP response by October 13, 2023. Intervenor Trump failed to do that claiming that because the Court denied the anti-SLAPP motion, he did not need to respond to the evidentiary issues raised in the anti-SLAPP motion.  The Court then ordered that Intervenor Trump needed to make objections to the anti-SLAPP evidentiary issues by October 17, 2023.  On October 17, 2023, Intervenor Trump objected to the findings based on hearsay but did not advise the Court and Petitioners exactly what findings contain hearsay. The Court will address the few specific findings that Intervenor Trump has identified. **To the extent Intervenor Trump has additional objections to the findings, he should identify which ones and the basis by October 28, 2023.**

### Findings #54 and #176

Finding #54 appears to contain statements of the crowd at the Ellipse on January 6, 2021.  Finding #176 is a joint statement of election security officials regarding the security of the election.  The Court holds these statements are inadmissible and do not meet any of the exceptions to the hearsay rule.

### Findings #111 and #254

Findings #111 and #254 include statements of Intervenor Trump. They are admissible as a statement of a party opponent.  C.R.E. 801(d)(2).

**Findings #75 and #196**

Findings #75 and #196 relate to Intervenor Trump's attempts to pressure State officials to change the election results at a state level.  Intervenor Trump claims that they are not relevant under C.R.E. 402, that they are prejudicial under C.R.E. 403, and that they are incomplete under C.R.E. 1002.  The Court holds that they are relevant under C.R.E. 402, that their purported prejudice does not outweigh their usefulness, and that Intervenor Trump may offer any additional testimony on the subject if the statements are incomplete.  In addition, President Trump's statements to Sen. Corman are admissible as a statement of a party opponent.  C.R.E. 801(d)(2).

**Findings #50 and #229**

Finding #50 includes statements of Intervenor Trump's lawyers.  Petitioners argue they are admissible under C.R.E. 801(d)(2) because they are statements made by an agent of a party during the existence of a relationship.  The Court disagrees.  These are not statements made on Intervenor Trump's behalf but rather statements made to Intervenor Trump.  They are, however, admissible because they are not being offered for the truth of the matter asserted but rather for the effect on the listener—in this case Trump.[2]

Finding #229 contains inadmissible hearsay and will not be admitted.

**Findings #88 and #103**

Findings #88 and #103 are admissible pursuant to C.R.E. 803(8)(A).

---

[2] The Court is conditionally rejecting many exhibits that are being offered for their effect on the listener--Intervenor Trump.  The reason is that at this time the Court has no evidence that Intervenor Trump heard or read the statements.  To the extent that the Petitioners can provide credible evidence that Intervenor Trump heard a news report or read a newspaper article, the Court will revisit those rulings during trial.

### 3. Video Exhibits[3]

The Court holds the videos that were used or referenced in the January 6th Report and hearings are authenticated *vis a vis* the January 6th Report.

Exhibits 88-96, 110, and 119 are videos of the January 6, 2021 events and are not hearsay. Exhibit 122 includes inadmissible hearsay and the Court will only admit the portion of the video that is footage at the Capitol. Exhibit 109 is replete with hearsay and will not be admitted unless the Petitioners want to offer certain segments that do not contain hearsay or meet a hearsay exception.

Exhibits 80, 81, 117, and 120 will be admitted pursuant to C.R.E. 803(3).

### 4. Transcribed Interviews Before the January 6th Committee

The Court does not intend to admit any transcribed interviews under the residual hearsay exception. *People v. Shifrin*, 342 P.3d 506, 518 (Colo. App. 2014) ("[The residual hearsay exception pursuant to C.R.E. 807] is 'to be used only rarely, and in exceptional circumstances and applies only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present.'" (quoting *United States v. Turner*, 718 F.3d 226, 233 (3d Cir. 2013)).

---

[3] Intervenor Trump objects to many of the exhibits as either irrelevant under C.R.E. 402 or prejudicial under C.R.E. 403. The Court intends to let all Parties put forth their case and does not intend to fly speck whether certain exhibits are relevant. All the Parties and their lawyers are highly sophisticated, and the Court is of the opinion that if a Party believes an exhibit is helpful in proving its case it should be allowed to present the exhibit unless otherwise inadmissible under the Rules of Evidence. Similarly, excluding evidence in a bench trial under C.R.E. 403 is not necessary. *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("we hold that in the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial. Under the Federal Rules of Evidence, admissibility of evidence is favored unless the probative value of the evidence is so low as to warrant exclusion when prejudice is a factor. Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences" (internal citation omitted))

### 5. Chart Compiling Defendant Statements by Select Committee

The Court will not allow the hearsay statements contained in Exhibit 25 into evidence.

### 6. Declarations and Prior Trial Testimony

The Court has considered Mr. Heaphy's declaration in determining whether to allow portions of the January 6th Report into evidence. If the Intervenors would like to cross-examine him on the declaration, the Court will order the Petitioners to make him available via Webex.

### 7. Videos, Pictures, and Other Evidence

The following exhibits will be admitted: 1-6, 8-21, 47, 48, 50-67, 69, 72, 99-100, 123-124 (Trump statements only), 125, 127, 133-134, 143, 150, 153, and 155.

The following exhibits will be excluded: 37, 40-44, 70, 71, 101, 111, 112, 113, 114, 121, 126, 129, 130, 135, 136, 137, 138, 139, 140, 141, 147, 151, 152, and 154.

Exhibit 8 will be allowed as a demonstrative exhibit only.

The Court requests that Petitioners advise it on the basis that they are offering Exhibit 131.

### 8. Various Social Media Posts

Exhibit 73 will be excluded.

Exhibits 74, 103, 108, and 148 will be admitted if offered.

### 9. News Articles and Releases

Exhibits 34, 36, 41, 77, and 98 will be excluded.

### 10. Government Agency and Staff Reports

Pursuant to C.R.E. 803(8), Exhibits 22, 23, 28, 29, 33, and 35 will be admitted unless Intervenor Trump provides evidence that there are circumstances which would indicate that these exhibits lack trustworthiness.

**CONCLUSION**

The Court believes that it has addressed all the exhibits to which Intervenor Trump objects. To the extent it has not, the Parties should alert the Court as to any objections that are still pending. In addition, the Petitioners, Secretary of State Griswold, and Colorado Republican State Central Committee should advise the Court of any objections they have to exhibits by October 28, 2023.

Pursuant to the foregoing, the Court GRANTS IN PART and DENIES IN PART, Intervenor Trump's Motion *in limine* to Exclude Petitioners' Anticipated Exhibits.

DATED: October 27, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

| | |
|---|---|
| **DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: October 28, 2023 4:03 PM<br>CASE NUMBER: 2023CV32577 |
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>**v.**<br><br>**Respondent:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State<br><br>**and**<br><br>**Intervenors:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |

### ORDER RE: DONALD J. TRUMP'S BRIEF REGARDING STANDARD OF PROOF IN THIS PROCEEDING

This matter comes before the Court on Donald J. Trump's Brief Regarding Standard of Proof in This Proceeding, filed on October 25, 2023. Petitioners' Response to the Brief was filed on October 27, 2023. The Court, having considered the matter, FINDS and ORDERS as follows:

Intervenor Trump argues in his Brief that even though C.R.S. § 1-4-1204(4) specifies that "[t]he party filing the challenge has the burden to sustain the challenge by a preponderance of the evidence," as a matter of due process, this Court should apply the higher standard of clear and convincing evidence.

Intervenor Trump cites *Santosky v. Kramer,* 455 U.S. 745, 754 (1982) for the test to determine whether a standard of proof in a particular proceeding satisfies due

1

process. The factors are: (1) "the private interests affected by the proceeding;" (2) "the risk of error created by the State's chosen procedure;" and (3) "the countervailing governmental interest supporting use of the challenged procedure." *Id.* The Colorado Supreme Court has also adopted this framework. *People in Interest of A.M.D.*, 648 P.2d 625, 636 (Colo. 1982).

Intervenor Trump argues that applying the *Santosky* test, this Court must apply a clear and convincing standard. First, he argues that the private interests at stake are significant because they implicate the "First and Fourteenth Amendment constitutional rights related to freedom of association." Intervenor Trump points out that the Colorado Supreme Court recognized in *Colorado Libertarian Party v. Sec'y of State of Colorado*, 817 P.2d 998, 1002 (Colo. 1991) that ballot access restrictions burden two fundamental rights: "'the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.'"[1] (quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)).

Petitioners respond citing the same cases and argue that under *Santosky,* the threshold inquiry is "the individual interests at stake" and that a heightened standard is only required when a "fundamental liberty interest" is implicated. 455 U.S. at 753-56. Petitioners then point out that many Courts, including Colorado, have held that "candidacy for a public office has not been recognized as a fundamental right." *Colorado Libertarian Party*, 817 P.2d at 1002; *see also Carver v. Dennis*, 104 F.3d 847, 850-51 (6th Cir. 1997); *Supreme v. Kansas State Elections Bd.*, No. 18-CV-1182-EFM, 2018 WL 3329864, *5-6, n. 27 (D. Kan. July 6, 2018).

Applying the government interest factor, Intervenor Trump argues the government's interest is served in using a higher standard of proof because the government has no interest in keeping qualified candidates off the ballot and a higher standard of proof would help ensure that does not happen. Petitioners respond that this argument puts the cart before the horse because it assumes that Intervenor Trump is qualified. The real governmental interest, according to Petitioners, is the right of the citizens of Colorado to cast a meaningful ballot—i.e., one for candidates who are constitutionally qualified. The Petitioners also urge the Court to discard Intervenor Trump's repeated references to his popularity because the fact that his supporters want to vote for him does not trump the public interest in only having qualified candidates on the ballot.

Finally, Intervenor Trump argues the risk of erroneous deprivation of his and Colorado voters' rights is heightened due to expedited procedures under C.R.S. § 1-1-113.

---

[1] The right of qualified voters "to cast their votes effectively" cuts against a central theme of Intervenor Trump's position in this case which is that the Congress should decide whether he is qualified after the election has taken place and a hundred million voters have already cast their votes.

This has been a repeated mantra of Intervenor Trump.[2]  The Petitioners respond that this is not like the cases described in *Addington v. Texas*, 441 U.S. 418, 427 (1979) or *Santosky*, 455 U.S. at 753 where the risk of error is high because the Defendant was at risk of indefinite solitary confinement based on mental illness or parents were at risk of their parental rights being terminated.   According to Petitioners, the injury to Intervenor Trump of not being on a ballot is no greater than that of the public's interest in ensuring that only constitutionally qualified candidates are on the ballot.  Petitioners point out that the United States Supreme Court has held that when both parties have "an extremely important, but nevertheless relatively equal, interest in the outcome. . . . it is appropriate that each share roughly equally the risk of an inaccurate factual determination." *Rivera v. Minnich,* 483 U.S. 574, 581 (1987).

Considering all the above and the fact that Intervenor Trump does not point to a single case holding that a heightened standard of proof is required in a ballot access challenge, the Court holds that under *Santosky,* the Court need not look beyond the fact that Intervenor Trump has failed to identify a fundamental liberty interest.  While Intervenor Trump clearly has an interest in being on Colorado's ballot, that interest does not rise to the level of a fundamental liberty interest.  *Colorado Libertarian Party*, 817 P.2d at 1002.  As a result, the Court need not analyze the issue further.

The Court, therefore, will apply the burden of proof prescribed in C.R.S. § 1-4-1204(4).

DATED: October 28, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

---

[2] The Court notes that at no point during these proceedings has Intervenor Trump articulated what discovery he would need to protect his interests further.  Intervenor Trump ignores that while the Court declined to order expert depositions because it held that it would strictly construe C.R.C.P. 26(a)(2) and only allow opinions that were adequately disclosed, it never ruled that it would not consider fact depositions.  To the contrary, the Court specifically advised the Parties that after witnesses were disclosed the Court would consider requests for fact depositions.  *See* September 22, 2023 Minute Order.

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

</td><td>

DATE FILED: October 28, 2023 5:25 PM
CASE NUMBER: 2023CV32577

</td></tr>
</table>

| | |
|---|---|
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>v.<br><br>**Respondent:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State<br><br>**and**<br><br>**Intervenors:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |

**OMNIBUS RULING ON PENDING 702 MOTIONS**

This matter comes before the Court on Colorado Republican State Central Committee's Rule 702 Motion to Exclude the Testimony of Professor Gerard N. Magliocca, filed October 16, 2023; Donald J. Trump's Motion to Exclude the Proffered Expert Testimony of William Banks, filed October 18, 2023; and Donald J. Trump's Motion to Exclude the Proffered Expert Testimony of Peter Simi, filed October 18, 2023. Having considered the parties' briefing, the relevant legal authorities cited, and being

otherwise familiar with the record in this case, the Court FINDS and ORDERS as
follows:

**APPLICABLE LAW**

C.R.E. 702 governs a trial court's determination as to the admissibility of
scientific or other expert testimony. *People v. Shreck*, 22 P.3d 68, 72 (Colo. 2001).
C.R.E. 702 provides that "[i]f scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the evidence or to determine a fact in issue, a
witness qualified as an expert by knowledge, skill, experience, training, or education,
may testify thereto in the form of an opinion or otherwise."  In determining the
admissibility of expert testimony, the Court must employ a *Shreck* analysis, determining
(1) whether the scientific principles underlying the testimony are reasonably reliable; (2)
whether the expert is qualified to offer opinions on such matters; (3) whether the expert
testimony will be helpful to the trier of fact; and (4) whether the proffered evidence
satisfies C.R.E. 403. 22 P.3d at 82-83. "This inquiry should be broad in nature and
consider the totality of the circumstances of each specific case." *People v. Rector*, 248
P.3d 1196, 1200 (Colo. 2011).

A court's relevancy inquiry focuses on the usefulness of the expert testimony to
the trier of fact. *Shreck*, 22 P.3d at 77. "An expert opinion is helpful to the trier of fact if
it embraces a relevant matter outside the understanding of the typical juror," *Huntoon
v. TCI Cablevision of Colorado, Inc.*, 969 P.2d 681, 690 (Colo. 1998), and "will assist the
fact finder to either understand other evidence or to determine a fact in issue." *People v.
Ramirez*, 155 P.3d 371, 379 (Colo. 2007). "Usefulness thus hinges on whether there is a

logical relation between the proffered testimony and the factual issues involved in the case." *Id.*

"The determination of whether a witness is qualified to testify as an expert witness is committed to the discretion of the trial court." *Tatum v. Basin Res., Inc.*, 141 P.3d 863, 868 (Colo. App. 2005). Where an expert possesses experienced-based specialized knowledge that is not dependent on a scientific explanation, a trial court must find that the testimony would be useful to the tier of fact and that the witness is qualified to render the proposed expert opinion. *Id.*

While C.R.E. 702 applies in bench trials, "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial." *Attorney Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009). Rather, "[i]n a bench trial . . . 'there is a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions.'" *People v. Hall*, 496 P.3d 804, 813 (Colo. 2021) (quoting *People v. Fulton*, 754 P.2d 398, 400 (Colo. App. 1987)). Thus, "a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation." *Tyson Foods*, 565 F.3d at 780.

**ANALYSIS**

**A. Gerard Magliocca**

Professor Magliocca intends to testify to "the history and background to the adoption of Section Three of the 14th Amendment, as well as the historical application of that provision to bar from office those who have engaged in insurrection." Professor

3

Magliocca also intends to testify to "how the events of January 6, 2021 compare to insurrections that would have served as the historical examples informing the drafters of Section Three of the Fourteenth Amendment."

Colorado Republican State Central Committee ("CRSCC") objects to Professor Magliocca's proposed testimony on the basis that it would "usurp the role and responsibility of this Court to determine what the law is" concerning Section 3 of the Fourteenth Amendment.

Petitioners respond that "Professor Magliocca will opine on the 'history and background' of Section 3 of the Fourteenth Amendment, the 'historical application of that provision' and 'how the events of January 6, 2021, compare to the insurrections that would have served as the historical examples informing the drafters of' Section 3."

CRSCC argues that experts are not permitted to offer testimony on legal issues and that Professor Magliocca seeks primarily to offer legal conclusions as to the meaning of Section 3 of the Fourteenth Amendment. CRSCC states:

> This Court may be the first court in the country to address whether a president can be disqualified under the Fourteenth Amendment. But experts do not solve that problem; the solution is found through the Court's review of the cases and other authorities provided by the parties, just as the Court would do to engage the most mundane of legal questions.

Petitioners point out that courts holding bench trials in Colorado and elsewhere have considered testimony by experts in constitutional history.

The Court interprets CRSCC's motion to be challenging the whether "the testimony will be useful to the [trier of fact]" factor in the *Shreck* analysis. 22 P.3d at 79. As stated above, "[a]n expert opinion is helpful to the trier of fact if it embraces a

relevant matter outside the understanding of the typical juror," *Huntoon*, 969 P.2d at

690, and "will assist the fact finder to either understand other evidence or to determine

a fact in issue." *Ramirez*, 155 P.3d at 379.  As the Court noted in the very first hearing in

this case, the Court believes that it will be helpful to hear from constitutional experts

that have studied the formation and application of Section 3 of the Fourteenth

Amendment.[1]  While the Court has no intention of letting any expert usurp its role to

apply the facts to the law, that does not mean it needs to preclude an expert who has

spent twenty years studying a constitutional provision for which there is scant case law

providing an interpretation.

As Justice Thomas wrote in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,

142 S.Ct. 2111, 2130 n. 6,

> The job of judges is not to resolve historical questions in the abstract;
> it is to resolve *legal* questions presented in particular cases or
> controversies. That "legal inquiry is a refined subset" of a broader
> "historical inquiry," and it relies on "various evidentiary principles
> and default rules" to resolve uncertainties. . . . Courts are thus
> entitled to decide a case based on the historical record compiled by
> the parties.

(emphasis in original) (quoting W. Baude & S. Sachs, *Originalism and the Law of the*

*Past*, 37 L. & HIST. REV. 809, 810-11 (2019)). In this case, that includes retained

historical experts.  As the Chief District Court Judge for the District of Idaho stated, "it

is not the Court's duty to 'sift the historical materials for evidence to [make its ruling].'"

---

[1] The Court rejects the suggestion that Professor Magliocca's testimony is "a work-around of the Court's order" that it does not intend to consider *amicus* briefing.  First, the Court advised the Parties at the first hearing that it thought expert testimony on the constitutional history of Section 3 of the Fourteenth Amendment would be helpful.  Second, the Court has allowed unlimited briefing in this case giving the Parties ample ability to put forth whatever arguments they think would be helpful to the Court in resolving the difficult issues in front of it.

*United States v. Yates*, No. 1:21-CR-00116-DCN, 2023 WL 5016971, *3 (D. Idaho August 7, 2023) (quoting *Bruen*, 142 S.Ct. at 2150). Here, the Petitions bear the burden of persuasion. If they want to use an expert to assist the Court in better understanding the historical issues to help it resolve legal questions, then the Court welcomes that "tool in [its] toolbelt." *Id.* at *4.

To be clear, simply because the Court intends to allow Professor Magliocca to opine does not mean that it intends to accept Professor Magliocca's opinions. The Court is very cognizant that there are other highly qualified experts who have reached contrary opinions.

## B. William Banks

Professor Banks intends to testify about the "authorities that Donald J. Trump, as President and Commander in Chief, had at his disposal to quell the attack on the United States Capitol that took place on January 6, 2021."

Intervenor Trump objects to Professor Banks's proposed testimony on the basis that his testimony will not assist the trier of fact in this case. Specifically, Intervenor Trump argues that the central issue in this case is whether the events of January 6, 2021 constituted an "insurrection" pursuant to the meaning of that word as used in Section 3 of the Fourteenth Amendment, and if so, whether Intervenor Trump "engaged" in the insurrection. Intervenor Trump argues that Professor Banks's testimony is outside the scope of this issue and will be unhelpful to the Court and should therefore be excluded.

The Court disagrees that there is no relevance to Professor Banks's testimony. One of the questions before the Court is whether Intervenor Trump engaged in an

6

insurrection and one of the Petitioners' arguments is that his lack of action constitutes

engagement. While the Court has not decided at this point as to whether inaction can

constitute engagement, Professor Banks's proposed testimony goes straight to the heart

of whether he in fact could have done something to prevent the attack on the Capitol.

Intervenor Trump further argues that the Court does not need expert testimony

because it can merely look at the laws regarding presidential authority and does not

need Professor Banks to advise it on that subject. The Court disagrees. Professor Banks

is an expert on national security law and has written extensively about the role of the

United States military in responding to domestic crises. The Court finds that testimony

on what actions Intervenor Trump could have taken in his role as chief executive and

commander in chief will be helpful to it in determining whether he, in fact, failed to act.

Intervenor Trump specifically objects to Professor Banks's conclusion that

"Trump could have told the violent mob to leave the Capitol at any point while the

violent attack was ongoing." The Court agrees with Intervenor Trump that this

testimony is outside the expertise of Professor Banks and will exclude it.

Finally, the Court rejects Intervenor Trump's arguments that Professor Banks's

testimony is more prejudicial than probative. Excluding evidence in a bench trial under

C.R.E. 403 is not necessary. *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("we

hold that in the context of a bench trial, evidence should not be excluded under 403 on

the ground that it is unfairly prejudicial. Under the Federal Rules of Evidence,

admissibility of evidence is favored unless the probative value of the evidence is so low

as to warrant exclusion when prejudice is a factor. Rule 403 was designed to keep

evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences" (internal citation omitted)); *Tyson Foods*, 565 F.3d at 780 ("a judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation").

## C. Peter Simi

Professor Simi has "expertise in political extremism" and intends to apply this expertise to "the events preceding and surrounding the attack on the United States Capitol on January 6, 2021."

Intervenor Trump objects to Professor Simi's proposed testimony and argues that Professor Simi's methodology is not reliable because the materials on which Professor Simi relies upon as the basis for his opinion are inappropriate and unreliable. Specifically, Intervenor Trump argues that most of the materials Professor Simi relies upon are "wholly unrelated to any fact at issue in this case" and that the only materials that are related to the facts of this case (the January 6th Report and opinion pieces about Intervenor Trump) are "highly biased, unreliable sources."

Petitioners respond by citing to *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) for the proposition that "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." The Court agrees. To the extent that Professor Simi relied on unreliable materials, that is a subject for cross-examination.

Intervenor Trump further argues that Professor Simi's testimony is not helpful to the trier of fact.

The Court disagrees with the notion that an expert on extremism has no useful testimony to offer the Court.  Professor Simi specializes in interpreting extremist language—a subject that is clearly outside the scope of the typical trier of fact, including the Court.   Further, this type of testimony is specifically contemplated as appropriate expert testimony.  The Advisory Committee notes to C.R.E. 702's federal counterpart, F.R.E. 702 specifically notes that:

> when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. The method used by the agent is the application of extensive experience to analyze the meaning of the conversations. So long as the principles and methods are reliable and applied reliably to the facts of the case, this type of testimony should be admitted.

Finally, citing C.R.E. 404(b), Intervenor Trump argues that Professor Simi improperly discusses Intervenor Trump speaking well of supporters who have engaged in criminal behavior or are "otherwise unsavory" and that he does so to imply that Intervenor Trump has similar unsavory characteristics or that he is supportive of his supporters' crimes.   As such, Intervenor Trump requests that the Court exclude the expert testimony under C.R.E. 404(b).  The Court cannot rule on this objection until it hears Professor Simi's testimony and the purpose for which it is offered.

Finally, the Court rejects Intervenor Trump's arguments that Professor Simi's testimony is more prejudicial than probative for the same reason it rejected those arguments as they related to Professor Banks.

**CONCLUSION**

For all the reasons stated above, the Court DENIES CRSCC's Rule 702 Motion to Exclude the Testimony of Professor Gerard N. Magliocca, GRANTS IN PART and DENIES IN PART Donald J. Trump's Motion to Exclude the Proffered Expert Testimony of William Banks, and DENIES Donald J. Trump's Motion to Exclude the Proffered Expert Testimony of Peter Simi.

DATED: October 28, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**

1437 Bannock Street
Denver, CO 80202

</td><td>

DATE FILED: October 29, 2023 4:33 PM
CASE NUMBER: 2023CV32577

</td></tr>
</table>

| | |
|---|---|
| **Petitioners:**<br>NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN<br><br>v.<br><br>**Respondent:**<br>JENA GRISWOLD, in her official capacity as Colorado Secretary of State<br><br>**and**<br><br>**Intervenors:**<br>COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP | **Δ COURT USE ONLY Δ**<br><br>Case No.: 2023CV32577<br><br>Division: 209 |

---

**ORDER RE: INTERVENOR TRUMP'S OBJECTIONS TO SPECIFIC FINDINGS CONTAINED IN JANUARY 6TH REPORT**

This matter comes before the Court on Intervenor Trump's Objections to Specific Findings Contained in January 6th Report, filed on October 28, 2023. The Court, having considered the matter, FINDS and ORDERS as follows:

After reviewing Exhibit 78 and Intervenor Trump's objections, the Court holds that the following Findings will be excluded pursuant to the Colorado Rules of

1

Evidence:[1] 1, 37, 38, 43, 44, 46-49, 50 (paragraphs 3-4), 52, 54, 56 (paragraphs 4-5), 66-70, 73, 76, 79, 80, 82 (everything but first paragraph), 84, 86-88, 90-103, 106, 110, 116, 117, 124 (second paragraph), 125, 132 (starting from "At 2:38. . ."), 141, 142, 144, 145, 150 (last paragraph), 155-157, 159 (second paragraph), 175 (starting from "Outside experts. . ."), 176, 177, 179 (second paragraph), 181, 194, 200 (starting from "When. . ."), 201, 202 (starting from "Afterward . . ."), 206, 207, 213-221, 226, 228-234, 236 (starting from "During. . ."), 238 (starting from "While. . ."), 242-244, 255-258, 266, 277, 283-287, 291-296, 298, 300, 301, 303-305, 306 (starting from "The Select. . ."), 307 (starting from "In a December. . ."), 308 (fourth and fifth sentences), 318, 336, 337, 339, 340, 341 (starting from "Christopher Kuehne. . ."), 342 (starting from "The Select Committee . . ."),  345, 346 (from "which he said" to "your hairs"), 347 (exclude all but first two sentences of first paragraph, the third paragraph, the first four sentences and last sentence of fourth paragraph, and the fifth paragraph), 350, 351 (except first two sentences), 354, 359 (second sentence), 360 (starting from "Jensen later told. . ."), 362, 364 (starting from "Timothy Hale-Cusanelli. . ."), 367 (second paragraph after "Walter told. . ."), 376 (starting from "Officer David Millard. . ."); 383 (starting from "Trump called us. . ."); 384 (second paragraph), 402-406, and 408.

The Court wishes to make clear that although it is overruling the remaining objections to findings made by Intervenor Trump, this does not necessarily mean that it is accepting the conclusions in these findings as true. As with any evidence, the Court, as trier of fact, is not required to accept any evidence as true if other direct evidence or

---

[1] These rulings are conditional. To the extent that the Petitioners can provide credible evidence that any of these findings would fall into a hearsay exception, the Court will revisit those rulings during trial.

reasonable inferences from the cumulative evidence would contradict or weaken the credibility of this evidence. *See United Fin. Credit v. Colorado Collection Agency Bd.*, 892 P.2d 446, 449 (Colo. App. 1995) ("The trier of fact is not bound to accept the testimony of a witness even though it is not contradicted by other direct evidence. Reasonable inferences from circumstances tending to weaken such testimony may be considered."); *D.R. Horton, Inc.-Denver v. Bischof & Coffman Constr., LLC*, 217 P.3d 1262, 1274 (holding that the trier of fact may reject expert opinions even if uncontroverted). To the extent the parties believe the Court has egregiously or inadvertently erred in its ruling here, they can still argue for admissibility or inadmissibility in their proposed findings of fact, conclusions of law.

DATED: October 29, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

<table>
<tr><td>

**DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO**
1437 Bannock Street
Denver, CO 80202

</td><td>

DATE FILED: October 29, 2023 4:33 PM
CASE NUMBER: 2023CV32577

</td></tr>
</table>

**Petitioners:**
NORMA ANDERSON, MICHELLE PRIOLA, CLAUDINE CMARADA, KRISTA KAFER, KATHI WRIGHT, and CHRISTOPHER CASTILIAN

v.

**Respondent:**
JENA GRISWOLD, in her official capacity as Colorado Secretary of State

**and**

**Intervenors:**
COLORADO REPUBLICAN STATE CENTRAL COMMITTEE and DONALD J. TRUMP

**∆ COURT USE ONLY ∆**

Case No.: 2023CV32577

Division: 209

**ORDER RE: INTERVENOR TRUMP'S OBJECTIONS TO SPECIFIC FINDINGS CONTAINED IN JANUARY 6TH REPORT**

This matter comes before the Court on Intervenor Trump's Objections to Specific Findings Contained in January 6th Report, filed on October 28, 2023. The Court, having considered the matter, FINDS and ORDERS as follows:

After reviewing Exhibit 78 and Intervenor Trump's objections, the Court holds that the following Findings will be excluded pursuant to the Colorado Rules of

1

Evidence:[1] 1, 37, 38, 43, 44, 46-49, 50 (paragraphs 3-4), 52, 54, 56 (paragraphs 4-5), 66-70, 73, 76, 79, 80, 82 (everything but first paragraph), 84, 86-88, 90-103, 106, 110, 116, 117, 124 (second paragraph), 125, 132 (starting from "At 2:38. . ."), 141, 142, 144, 145, 150 (last paragraph), 155-157, 159 (second paragraph), 175 (starting from "Outside experts. . ."), 176, 177, 179 (second paragraph), 181, 194, 200 (starting from "When. . ."), 201, 202 (starting from "Afterward . . ."), 206, 207, 213-221, 226, 228-234, 236 (starting from "During. . ."), 238 (starting from "While. . ."), 242-244, 255-258, 266, 277, 283-287, 291-296, 298, 300, 301, 303-305, 306 (starting from "The Select. . ."), 307 (starting from "In a December. . ."), 308 (fourth and fifth sentences), 318, 336, 337, 339, 340, 341 (starting from "Christopher Kuehne. . ."), 342 (starting from "The Select Committee . . ."),  345, 346 (from "which he said" to "your hairs"), 347 (exclude all but first two sentences of first paragraph, the third paragraph, the first four sentences and last sentence of fourth paragraph, and the fifth paragraph), 350, 351 (except first two sentences), 354, 359 (second sentence), 360 (starting from "Jensen later told. . ."), 362, 364 (starting from "Timothy Hale-Cusanelli. . ."), 367 (second paragraph after "Walter told. . ."), 376 (starting from "Officer David Millard. . ."); 383 (starting from "Trump called us. . ."); 384 (second paragraph), 402-406, and 408.

 The Court wishes to make clear that although it is overruling the remaining objections to findings made by Intervenor Trump, this does not necessarily mean that it is accepting the conclusions in these findings as true. As with any evidence, the Court, as trier of fact, is not required to accept any evidence as true if other direct evidence or

---

[1] These rulings are conditional. To the extent that the Petitioners can provide credible evidence that any of these findings would fall into a hearsay exception, the Court will revisit those rulings during trial.

reasonable inferences from the cumulative evidence would contradict or weaken the credibility of this evidence. *See United Fin. Credit v. Colorado Collection Agency Bd.*, 892 P.2d 446, 449 (Colo. App. 1995) ("The trier of fact is not bound to accept the testimony of a witness even though it is not contradicted by other direct evidence. Reasonable inferences from circumstances tending to weaken such testimony may be considered."); *D.R. Horton, Inc.-Denver v. Bischof & Coffman Constr., LLC*, 217 P.3d 1262, 1274 (holding that the trier of fact may reject expert opinions even if uncontroverted). To the extent the parties believe the Court has egregiously or inadvertently erred in its ruling here, they can still argue for admissibility or inadmissibility in their proposed findings of fact, conclusions of law.

DATED: October 29, 2023.

BY THE COURT:

Sarah B. Wallace
District Court Judge

## Minute Orders

**Case Number:** 2023CV032577

**Case Type:** Injunctive Relief

**Case Caption:** Anderson, Norma et al v. Jena Griswold In Her Official Capacity et al

**Division:** 209

**Judicial Officer:** Sarah Block Wallace

**Court Location:** Denver County - District

**Appellate Case Number:** 2023SA279 - Supreme Court

---

Order Date: 10/30/2023

JUDGE SARAH B. WALLACE. CTRM 209. COURT REPORTER: SHELLY DITTMER. CTRL DAY 1. ATP SEAN GRIMSLEY, ERIC OLSON, MARIO NICOLAIS, MARTHA TIERNEY, NIKHEL SUS, AND JASON MURRAY APPEAR IN PERSON. ATD FOR GRISWOLD, GRANT SULLIVAN AND JENNIFER SULLIVAN; FOR TRUMP, SCOTT GESSLER, GEOFFREY BLUE, JUSTIN NORTH, JONATHAN SHAW, CHIRSTOPHER HALBOHN, MARK MEUSER, AND JACOB ROTH; FOR CRSCC, MICHAEL MELITO, ROBERT KITSMILLER, JANE RASKIN, NORMAN MOELKER, AND BENJAMIN SISNEY APPEAR IN PERSON. PARTIES WILL FILE STIPULATIONS WITH THE COURT. SEQUESTRATION ORDER TO ISSUE. PETITIONERS INTEND TO FILE 702 MOTION FOR ONE OF INTERVENOR TRUMPS EXPERTS. COURT ADDRESSES PRELIMINARY MATTERS CONCERNING EXHIBITS. OPENING STATEMENTS. PETITIONERS FIRST WITNESS, D.H., IS SWORN IN AND TESTIFIES; DIRECT. EXHIBITS 10-20 ARE ADMITTED. D.H. CONTINUES TESTIMONY; CROSS; REDIRECT. PETITIONERS SECOND WITNESS, E.S., IS SWORN IN AND TESTIFIES; DIRECT. EXHIBITS 148 AND 68 ARE ADMITTED. ***COURT RECESSES AND RECONVENES*** E.S. CONTINUES TESTIMONY; DIRECT; CROSS. EXHIBIT 1066 IS ADMITTED. E.S. CONTINUES TESTIMONY; REDIRECT. PETITIONERS THIRD WITNESS, W.P., IS SWORN IN AND TESTIFIES; DIRECT. EXHIBIT 163 IS ADMITTED. W.P. CONTINUES TESTIMONY; CROSS; REDIRECT. COURT PERMITS INTERVENOR TRUMP TO BRING IN A RESPONSIVE EXPERT TO TESTIFY THE WEEK OF 11/06/2023; PETITIONERS CAN HAVE THEIR EXPERT PROVIDE A REBUTTAL THAT WEEK AS WELL. EXHIBITS 133, 94, 105, 1, 92, 26, 78 (FINDINGS 119, 315, 55, 120, 24, 134, 331), 47, 126, 73, 99, 100, 49, 6, 74, 109 ARE ADMITTED. COURT DEFERS RULING ON SPECIFIC INTENT ISSUE AND THE ISSUES IN INTERVENOR TRUMPS PENDING MOTION TO DISMISS UNTIL IT ISSUES ITS FINAL RULING. /CAS

**Minute Orders**

**Case Number:** 2023CV032577

**Case Type:** Injunctive Relief

**Case Caption:** Anderson, Norma et al v. Jena Griswold In Her
Official Capacity et al

**Division:** 209

**Judicial Officer:** Sarah Block Wallace

**Court Location:** Denver County - District

**Appellate Case Number:** 2023SA279 - Supreme Court

---

Order Date: 10/31/2023

JUDGE SARAH B. WALLACE. CTRM 209. COURT REPORTER: JENNIFER MELIUS. CTRL DAY 2. ATP ERIC OLSON, SEAN GRIMSLEY, MARIO NICOLAIS, NIKHEL SUS, MARTHA TIERNEY, AND JASON MURRAY APPEAR IN PERSON. ATD FOR GRISWOLD, MICHAEL KOTLARCZYK AND JENNIFER SULLIVAN; FOR TRUMP, SCOTT GESSLER, GEOFFREY BLUE, JUSTIN NORTH, JACOB ROTH, AND CHRISTOPHER HALBOHN; FOR CRSCC, ROBERT KITSMILLER, MICHAEL MELITO, NATHAN MOELKER, JANE RASKIN, AND BENJAMIN SISNEY APPEAR IN PERSON. PETITIONERS FOURTH WITNESS, P.S., IS SWORN IN AND TESTIFIES; DIRECT. P.S. IS ADMITTED AS AN EXPERT IN POLITICAL EXTREMISM. EXHIBITS 61, 53, 56, 50, 48, 123, 21 ARE ADMITTED. P.S. CONTINUES TESTIMONY; CROSS. EXHIBIT 1059 IS ADMITTED. ***COURT RECESSES AND RECONVENES*** ***COURT HOLDS IN CAMERA CONFERENCE*** P.S. CONTINUES TESTIMONY; CROSS. EXHIBITS 1046-48, 1054, AND 1074 ARE ADMITTED. P.S. CONTINUES TESTIMONY; REDIRECT. EXHIBITS 51, 52, AND 57 ARE ADMITTED. P.S. CONTINUES TESTIMONY; RECROSS; REDIRECT. PETITIONERS FIFTH WITNESS, W.B., IS SWORN IN AND TESTIFIES; DIRECT. W.B. IS ADMITTED AS AN EXPERT IN NATIONAL SECURITY AND THE PRESIDENTIAL POWERS TO RESPOND TO A DOMESTIC ATTACK. EXHIBIT 1027 IS ADMITTED. W.B. CONTINUES TESTIMONY; CROSS. EXHIBITS 1031, 1045, 148, 156, 22 ARE ADMITTED. W.B. CONTINUES TESTIMONY; REDIRECT. /CAS